# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* PATRICK LUPINETTI, STATE OF CALIFORNIA *ex rel.* PATRICK LUPINETTI, STATE OF COLORADO *ex rel.* PATRICK LUPINETTI, STATE OF CONNECTICUT *ex rel.* PATRICK LUPINETTI, STATE OF DELAWARE *ex rel.* PATRICK LUPINETTI, DISTRICT OF COLUMBIA *ex rel.* PATRICK LUPINETTI, STATE OF FLORIDA *ex rel.* PATRICK LUPINETTI, STATE OF GEORGIA *ex rel.* PATRICK LUPINETTI, STATE OF HAWAII *ex rel.* PATRICK LUPINETTI, STATE OF ILLINOIS *ex rel.* PATRICK LUPINETTI, STATE OF INDIANA *ex rel.* PATRICK LUPINETTI, STATE OF IOWA *ex rel.* PATRICK LUPINETTI, STATE OF LOUISIANA *ex rel.* PATRICK LUPINETTI, COMMONWEALTH OF MASSACHUSETTS    *ex rel.* PATRICK LUPINETTI, STATE OF MICHIGAN *ex rel.* PATRICK LUPINETTI, STATE OF MINNESOTA *ex rel.* PATRICK LUPINETTI, STATE OF MONTANA *ex rel.* PATRICK LUPINETTI, STATE OF NEVADA *ex rel.* PATRICK LUPINETTI, STATE OF NEW JERSEY *ex rel.* PATRICK LUPINETTI, STATE OF NEW MEXICO *ex rel.* PATRICK LUPINETTI, STATE OF NEW YORK *ex rel.* PATRICK LUPINETTI, STATE OF NORTH CAROLINA *ex rel.* PATRICK LUPINETTI, STATE OF OKLAHOMA *ex rel.* PATRICK LUPINETTI, STATE OF RHODE ISLAND *ex rel.* PATRICK LUPINETTI, STATE OF TENNESSEE *ex rel.* PATRICK LUPINETTI, STATE OF TEXAS *ex rel.* PATRICK LUPINETTI, STATE OF VERMONT *ex rel.* PATRICK LUPINETTI, COMMONWEALTH OF VIRGINIA    *ex rel.* PATRICK LUPINETTI, STATE OF WASHINTON *ex rel.* PATRICK LUPINETTI, STATE OF WISCONSIN *ex rel.* PATRICK LUPINETTI, and PATRICK LUPINETTI, individually, <br><br>                 Plaintiffs, <br><br>     v. <br><br> EXELTIS USA, INC., AVION PHARMACEUTICALS, LLC, MISSION PHARMACAL COMPANY, VERTICAL PHARMACEUTICALS, LLC, and WOMEN'S CHOICE PHARMACEUTICALS LLC <br><br>                 Defendants. | Case No. 19-cv-00825 <br><br><br><br><br><br> HON. THOMAS M. DURKIN <br><br> JURY TRIAL DEMANDED <br><br> FALSE CLAIMS ACT <br><br> AMENDED COMPLAINT |

## FALSE CLAIMS ACT COMPLAINT

The United States of America *ex rel.* Patrick Lupinetti ("Relator"), the States of California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Louisiana, Michigan, Minnesota, Montana, Nevada, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Rhode Island, Tennessee, Texas, Vermont, Washington, and Wisconsin, *ex rel.* Patrick Lupinetti, the Commonwealths of Massachusetts and Virginia, *ex rel.* Patrick Lupinetti, and the District of Columbia *ex rel.* Patrick Lupinetti, (collectively, the "Plaintiff States") and Patrick Lupinetti individually (collectively, "Plaintiffs") state as follows for their complaint against Exeltis USA, Inc. ("Exeltis"), Avion Pharmaceuticals, LLC ("Avion"), Mission Pharmacal Company ("Mission"), Vertical Pharmaceuticals, LLC ("Vertical"), and Women's Choice Pharmaceuticals, LLC ("Women's Choice") (collectively, "Defendants"):

## INTRODUCTION

1.      State and federal false claims acts ("False Claims Acts") provide the government with its primary means of recovery from frauds against the public fisc. "*Qui tam*" provisions encourage private citizens with information about fraud (known as "relators"), like Mr. Lupinetti, to sue on the government's behalf.

2.      Relator Lupinetti has decades of experience identifying and combatting healthcare fraud. He was employed as an Assistant Attorney General in the New York Medicaid Fraud Control Unit from 1986 through 2008, the last eleven years of which he served as the Director of its Special Projects Division. In 2008, Relator Lupinetti was hired by First Databank, Inc. as a Senior Vice President. First Databank publishes a comprehensive database of descriptive and clinical drug information. These databases are critical to government healthcare programs, such as Medicaid, to determine whether and how much to pay for a drug.

3.     While at First Databank, Relator discovered that the Defendants – who are all pharmaceutical companies that manufacture prenatal vitamins – blatantly mislabeled and misrepresented their products as "Rx" or prescription only in order to defraud federal and state healthcare programs. In fact, Defendants' vitamins are not "Rx" or prescription only drugs. They are not regulated as prescription drugs, they are not tested as prescription drugs, and they are not approved by the Food and Drug Administration ("FDA") as prescription drugs. Defendants' products are not drugs at all – they are dietary supplements and may not bear the "Rx" symbol.

4.     The reason Defendants misrepresent their products as "Rx" or prescription only is to guarantee eligibility for Medicaid reimbursement. Federal law requires state Medicaid programs to cover prenatal vitamins when they are prescribed by a healthcare provider, but states may exclude, or limit coverage, for over-the-counter ("OTC") prenatal vitamins.[1] *See infra* 42 U.S.C. 1396r–8(d)(2). Defendants' false prescription-only status ensures Defendants' products will be covered under all state Medicaid programs.

5.     Defendants' so-called prescription-only status also causes the government to pay substantially higher sums for Defendants' products compared to OTC prenatal vitamins. For example, Defendant Avion's Prenate Mini can cost over $7 per pill. Comparable OTC prenatal vitamins cost between $0.07 and $0.45 per pill. This huge price differential costs government healthcare programs tens of millions of dollars a year.

6.     This action seeks to hold Defendants liable for causing the submission of false claims and making knowingly false statements and material omissions about their products that

---

[1] "Over-the-counter" or OTC generally refers to any product that may be sold without a prescription.

have caused, and continue to cause, government healthcare programs to pay exorbitantly high rates for Defendants' prenatal vitamins.

## JURISDICTION AND VENUE

7.     On behalf of the United States and the Plaintiff States (collectively, the "government"), Relator Lupinetti seeks to recover treble damages and civil penalties against Defendants arising from false claims and false statements made, used, or caused to be made by Defendants to the government, as well as other violations of the federal False Claims Act, 31 U.S.C. § 3729 *et seq.*, and the false claims acts of the respective Plaintiff States.

8.     This Court has jurisdiction over the subject matter of this action arising under the laws of the United States pursuant to: (i) 31 U.S.C. § 3732, which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. § 3729 and 3730; (ii) 28 U.S.C. § 1331, which confers federal subject matter jurisdiction; and, (iii) 28 U.S.C. § 1345, because the United States is a Plaintiff.

9.     This Court has personal jurisdiction over the Defendants pursuant to 31 U.S.C. § 3732(a), because that section authorizes nationwide service of process and because Defendants have minimum contacts with the United States. Moreover, Defendants can be found in, reside, or transact or have transacted business in the Northern District of Illinois.

10.     Jurisdiction over the state law claims alleged herein is proper under 31 U.S.C. § 3732(b). This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

11.     This action is not based upon prior public disclosures of allegations or transactions in a criminal, civil, or administrative hearing, lawsuit or investigation, or in a Government Accounting Office or Auditor General's report, hearing, audit, or investigation, or from the news media. To the extent there has been a public disclosure, Relator is an original source under 31

U.S.C. § 3730(e)(4) and similar state statutes. The facts and information set forth herein are based upon Relator's personal observation and investigation. Relator has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the government before filing this *qui tam* action.

12.     Relator has provided the Attorney General of the United States, the United States Attorney for the Northern District of Illinois, and the Attorneys General of the named Plaintiff States, a written disclosure of substantially all material evidence and information he possesses, in accordance with the provisions of 31 U.S.C. §3730(b)(2) and relevant state statutes.

13.     Venue is proper in this District under 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391.

## PARTIES

14.     From 1986 to 2008, Relator Lupinetti served in the New York Attorney General's Office. During this time, he held various supervisory roles, including the Director of the Special Projects Division in the New York Medicaid Fraud Control Unit.

15.     From 2008 to 2020, Relator Lupinetti worked at First Databank as a Senior Vice President. Mr. Lupinetti discovered Defendants' scheme while working at First Databank. Mr. Lupinetti's position provided him access to comprehensive commercial, clinical and pricing data for OTC prenatal vitamins and Defendants' so-called "prescription" prenatal vitamins. Mr. Lupinetti's position also allowed him to review Defendants' submissions to First Databank and communicate with pharmacists, government agencies, and prenatal vitamin manufacturers, including several of the Defendants, to determine what standards, if any, would legitimately entitle manufacturers to identify their products as "prescription" prenatal vitamins.

16.     Mr. Lupinetti retired from First Databank in August 2020. He currently resides in California.

17. Defendants are some of the largest manufacturers of prenatal vitamins in the United States. The Plaintiff States and federal government have paid hundreds of millions of dollars for Defendants' falsely labeled prescription only prenatal products.

18. In 2019 alone, the Medicaid program paid nearly $60 million for Defendants' falsely labeled prenatal vitamin products. The following table reflects Medicaid reimbursement amounts for each Defendant's prenatal vitamin products.[2]

**2019 State Drug Utilization Database (SDUD) National Medicaid Reimbursements**

| Defendants | 2019 Medicaid Amount Reimbursed |
| --- | --- |
| Exeltis USA, Inc. | $31,223,079 |
| Mission Pharmacal Company | $17,464,434 |
| Avion Pharmaceuticals, LLC | $7,619,090 |
| Women's Choice Pharmaceuticals LLC | $1,478,924 |
| Vertical Pharmaceuticals, LLC | $1,454,091 |
| **Total** | **$59,239,617** |

19. Defendant Exeltis USA, Inc. (formerly Everett Laboratories), is a New Jersey corporation with its principal place of business at 180 Park Ave., Suite 101, Florham Park, New Jersey 07932. Since at least 2009 to the present, Defendant Exeltis has manufactured and sold falsely labeled prescription only prenatal vitamins, including but not limited to: Vitafol Ultra, Select-OB, Vitafol Gummies, and Vitafol One. The relevant products in this action include all of Exeltis' prenatal vitamin products falsely labeled prescription only, Rx, or Rx only. Exhibit A lists many, but not all products involved in this action.

---

[2] The Medicaid reimbursement amount is based on Defendants' products that are identified as a prescription only prenatal vitamin in the CMS Medicaid Drug Rebate Program.

20.     Defendant Avion Pharmaceuticals, LLC, is a Delaware corporation with its principal place of business at 1880 McFarland Parkway, Suite 110-B, Alpharetta, Georgia 30005. Since at least 2012 to the present, Defendant Avion has manufactured and sold falsely labeled prescription only prenatal vitamins, including but not limited to: Prenate Mini, Prenate DHA, and Prenate Pixie. The relevant products in this action include all of Avion's prenatal vitamin products falsely labeled prescription only, Rx, or Rx only. Exhibit A lists many, but not all products involved in this action.

21.     Defendant Mission Pharmacal Company, is a Texas corporation with its principal place of business at 10999 IH-10 West, Suite 1000, San Antonio, Texas 78230. Since at least 2009 to the present, Defendant Mission has manufactured and sold falsely labeled prescription only prenatal vitamins, including but not limited to: CitraNatal, CitraNatal 90 DHA, CitraNatal Assure, and CitraNatal B-Calm. The relevant products in this action include all of Mission's prenatal vitamin products falsely labeled prescription only, Rx, or Rx only. Exhibit A lists many, but not all products involved in this action.

22.     Defendant Vertical Pharmaceuticals, LLC, is a New Jersey corporation with its principal place of business at 400 Crossing Blvd. Bridgewater, New Jersey 08807. Since at least 2009 to the present, Defendant Vertical has manufactured and sold falsely labeled prescription only prenatal vitamins, including but not limited to: OB Complete, OB Complete One, and Corvite Fe. The relevant products in this action include all of Vertical's prenatal vitamin products falsely labeled prescription only, Rx, or Rx only. Exhibit A lists many, but not all products involved in this action.

23.     Defendant Women's Choice Pharmaceuticals LLC, is a Nevada corporation with its principal place of business at 850 Cassatt Road, Suite 210, Berwyn, Pennsylvania 19312. Since

at least 2011 to the present, Defendant Women's Choice has manufactured and sold falsely labeled prescription only prenatal vitamins, including but not limited to: Nestabs, Nestabs One, and Nestabs DHA. The relevant products in this action include all of Women's Choice prenatal vitamin products falsely labeled prescription only, Rx, or Rx only. Exhibit A lists many, but not all products involved in this action.

## THE STATUTORY FRAMEWORK

### A. The Federal and State False Claims Acts

24.     The Federal False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.,* has been the Government's primary fraud fighting tool since the Civil War era. It prohibits any person from knowingly making a false or fraudulent claim against the Government for property or money. The FCA is intended to reach all types of fraud, without qualification, that might result in financial loss to the Government. Among its provisions, the FCA mandates that any person who:

> (A) Knowingly presents or causes to be presented, a false or fraudulent claim for payment or approval;
>
> (B) Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;
> . . . .
>
> is liable to the United States Government for a civil penalty of not less than $5,500 and not more than $11,000, [ . . . ] plus 3 times the amount of damages which the Government sustains because of the act of that person.

31 U.S.C. § 3729(a)(1).[3]

---

[3] The civil penalties are adjusted for inflation, and are currently not less than $10,957 and not more than $21,916.  82 Fed. Reg. 9131 (Feb. 3, 2017).

25.     The FCA defines "knowing" and "knowingly" as either: a) having actual knowledge, b) acting with deliberate ignorance, or c) acting with reckless disregard. 31 USC § 3729(b)(1). Proof of specific intent to defraud is not required. *Id*.

26.     The FCA defines "material" as having "a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 USC § 3729(b)(4).

27.     The Plaintiff States have enacted false claims acts that substantially track the foregoing provisions of the federal FCA. The attached Appendix lists the Plaintiff States' False Claims Acts.

**B. The Medicaid Program**

28.     Medicaid is a public assistance program providing for payment of medical expenses primarily for the poor and disabled. 42 U.S.C. § 1396 *et seq*. Funding for Medicaid is shared between the federal government and state governments. The Centers for Medicare and Medicaid Services ("CMS") is an agency of the Department of Health and Human Services that directly administers the Medicare and Medicaid programs.

29.     Each state has a single state agency responsible for administering the Medicaid program. For example, the Illinois Medicaid program is administered by the Illinois Department of Healthcare and Family Services.

30.     Under federal law, state Medicaid programs may exclude or limit coverage for vitamins; however, states must cover prenatal vitamins that are lawfully prescribed by a healthcare provider:

> The following drugs or classes of drugs, or their medical uses, may be excluded from coverage or otherwise restricted:
>
> … (E) Prescription vitamins and mineral products, **except prenatal vitamins** and fluoride preparations.

42 U.S.C. § 1396r-8(d)(2)(E) (emphasis added).

9

31.     Because the Defendants falsely claimed that their products were prescription only, they were guaranteed to be covered under every state's Medicaid program.

32.     Medicaid regulations also require that government funded healthcare services "be provided economically and only when, and to the extent, medically necessary." 42 U.S.C. § 1320c-5(a).

33.     False claims for payment under the Medicaid program are actionable under federal and state False Claims Acts.

## DEFENDANTS' FRAUDULENT CONDUCT

34.     Since at least 2009 to the present, five Defendant pharmaceutical companies have generated huge profits at the taxpayers' expense by misrepresenting that their prenatal vitamin products are prescription only, "Rx" or "Rx Only."

35.     In fact, Defendants' products are neither approved nor regulated as prescription drugs. Prenatal vitamins are regulated by the FDA as dietary supplements and cannot factually or legally be described as a prescription only drug.

36.     Nonetheless, Defendants have: (1) improperly used the "Rx" or "Rx Only" marking on their products, websites, and other marketing material; (2) improperly used National Drug Codes (NDC) to make it appear as if their products are approved prescription products; and (3) misrepresented their products' prescription status to CMS, state healthcare programs, and to First Databank and other drug compendia companies.

37.     Because of these misrepresentations, government health care programs paid hundreds of millions of dollars for Defendants' falsely labeled prescription only prenatal vitamins.

38.     Defendants' scheme violates federal and state False Claims Acts.

I.    **Defendants False Use of "Rx" and "Rx Only" Violates the False Claims Act.**

39.    FDA regulations strictly control what drug products can legally bear "Rx Only" markings. Dietary supplements, including Defendants' vitamins, cannot legally bear an "Rx Only" marking.

40.    The use of "Rx" or "Rx Only" is limited to drugs that have been approved as prescription only by the FDA or that are not safe for use except under a physician's supervision. 21 USC § 353. A product that misuses or improperly applies the "Rx" symbol "shall be deemed to be misbranded." *Id.*

41.    Defendants' prenatal vitamins are not approved as prescription drugs, nor are they (or vitamins generally) regulated as drugs. Prenatal vitamins are regulated as dietary supplements under the FDA's authority to regulate food. *See* 21 USC § 321(ff) (defining "dietary supplement").

42.    Because a prenatal vitamin is not a drug, or approved by the FDA as a prescription drug, it cannot factually or legally bear the "Rx" or "Rx Only" symbol.

43.    The FDA has taken action against manufacturers that illegally use the "Rx" marking. For example, when a prescription drug called MiraLax switched from prescription only to over-the-counter status, the FDA ruled that generic manufacturers could not continue to label their MiraLax equivalent products as "Rx Only":

> Under the act, a drug to which the prescription provisions of the act do not apply (i.e., an OTC drug) shall be deemed to be misbranded if at any time prior to dispensing the label of the product bears the "Rx only" symbol. Because the PEG 3350 generic drug products are labeled as Rx only, they are misbranded and may not be legally marketed.

Docket No. FDA-2008-N-0549.

44.    Defendants have similarly misbranded, and therefore illegally marketed their products by using "Rx," and "Rx Only" markings on their packaging labels, marketing materials, and websites.

45.     The below marketing material is typical from Defendant Exeltis. It states: "Get there with **Vitafol® Prescription Prenatal Vitamins**."

**Exeltis Vitafol Marketing Material:**



46.     Defendants' product labels also improperly use the "Rx" marking. Exhibit B includes representative examples of false "Rx" and "Rx Only" markings from each Defendant, including the below:

**Exeltis Vitafol Ultra Label:**



**Avion Prenate Mini Label:**



**Mission CitraNatal 90 DHA Label:**[4]



---

[4] Certain of Defendant Mission's prenatal products, such as CitraNatal 90 DHA, combine dietary supplement ingredients with the active drug ingredient docusate sodium (used as a stool softener). The combination of a drug and dietary supplement renders the entire product a drug and subject to FDA approval. *See* 21 U.S.C. § 321(g). In "Warning Letters" to various pharmaceutical companies, the FDA has forbidden manufacturers from marketing these combination products as dietary supplements or as drugs absent FDA approval, as Mission does. *See*, *e.g.*, FDA Warning Letter to Bayer HealthCare, dated October 27, 2008; and FDA Warning Letter to Procter and Gamble, dated October 29, 2009.

**Vertical OB Complete Label:**



**Women's Choice Nestabs Label:**



47.     Because of the Defendants' false statements and misuse of the "Rx" marking in just the five products identified above, the government paid more than $31 million in 2019. The average reimbursement was approximately $3.50 a pill – many multiple times more than what a comparable OTC prenatal vitamin costs. Since 2009, the government has paid exorbitant amounts for Defendants' falsely marked prescription only prenatal vitamins.

48.     Defendants' objectively false statements and misrepresentations concerning "Rx" status are actionable under federal and state False Claims Acts.

**II.     Defendants False Use of National Drug Codes (NDCs) Violates the False Claims Act.**

49.     An NDC is used to identify a drug – it is not to be used on non-drug products, such as Defendants' dietary supplements. FDA regulations state: "A product may be deemed to be misbranded if an NDC is used" on "products that are not subject to parts 207, 607 of this chapter, or 1271 of this chapter, **such as dietary supplements** and medical devices." 21 C.F.R. § 207.37 (effective November 29, 2016) (emphasis supplied). The FDA has repeatedly emphasized that the assignment of an NDC number to non-drug products is prohibited.

50.     Because Defendants' products are dietary supplements, not drugs, Defendants are not permitted to display an NDC on their products. To do so is to "misbrand" their products.

51.     Furthermore, FDA regulations forbid the use of an NDC to "denote or imply FDA approval of a drug." 21 C.F.R. § 207.37. Defendants are doing just that – fraudulently using NDC numbers and "Rx" markings to make it appear as if their products are FDA approved. By applying fraudulent NDC numbers and "Rx" markings to their products, Defendants can guarantee that their products are eligible for reimbursement under government healthcare programs.

52.     Exhibit B includes representative examples from each Defendant showing the misuse of NDC numbers. For example, Defendant Mission improperly displays an NDC number on its prenatal vitamin CitraNatal B-Calm, above the "Rx Only" marking:

**Mission CitraNatal B-Calm:**



53.     Defendants' misuse of NDC numbers and Rx markings also violates FDA regulations that prohibit "misleading" labels on foods and dietary supplements. 21 U.S.C § 343 ("A food shall be deemed to be misbranded … [if] its labeling is false or misleading in any particular").

54.     Defendants' fraudulent use of NDC numbers and false implication of FDA approval is actionable under federal and state False Claims Acts.

**III.    Defendants False Statements to CMS and State Health Care Programs Violate the False Claims Act.**

55.     Defendants each misrepresented the prescription status of their products to CMS and state health care programs.

56.     Drug manufacturers must enter into a drug rebate agreement with CMS to participate in the Medicaid program. Under these agreements, drug manufacturers must provide certified product information and drug pricing on an ongoing basis. 42 C.F.R. § 414.804(a)(7) (reports must be certified by either the manufacturer's Chief Executive Officer, Chief Financial Officer, or an individual who has delegated authority to sign for, and who reports directly to, the CEO or CFO).

57.     Amongst other things, Defendants must report the "Drug Type" of each of their products to CMS. The "Drug Type" identifies whether a drug is available by prescription or over-the-counter. The value is represented by a "Drug Type Indicator," as defined in CMS's data dictionary:

> Drug Type Indicator: This field identifies a drug as prescription (Rx) or Over-the-Counter (OTC). Valid values: 1 = Rx; 2 = OTC

58.     This product information informs CMS and state Medicaid programs as to drug coverage under the Medicaid program.

59.     Defendants consistently misrepresented to CMS that their prenatal vitamins were "1 = Rx," meaning that they require a prescription. In this way, Defendants systematically misrepresent their products' prescription status to CMS and state governments. This effectively guarantees that Defendants' products will be paid for under the Medicaid program, which largely relies on automated systems to determine drug reimbursement.

60.     Since at least 2009 to the present, Defendants have misrepresented to CMS the "Drug Type" indicator for their so-called prescription only prenatal vitamins.

61.     CMS also requires manufacturers to report an "Approval Date" for their products, which is defined as "The NDC or monograph approval date." Defendants' products do not have an NDC or monograph approval date because their products are not approved by the FDA.

Nonetheless, since at least 2009 to the present, the Defendants have reported false and misleading dates to CMS in this field for each of their so-called prescription only prenatal vitamins.[5]

62.     Defendants have also made material misrepresentations to state Medicaid programs. For example, in Texas, drug manufacturers are required to provide product information and a certification statement to the Texas Vendor Drug Program for their products to be eligible for Medicaid reimbursement. 1 Tex. Admin. Code § 354.1921. The certification is called the "Texas Drug Code Index Certification of Information" (Form 1326). It requires Defendants to state whether their products are "Legend (Prescription)" or "Over the Counter," and whether their drug is listed on the CMS rebate file. It includes the following certification: "After having made a diligent inquiry, I certify that the information submitted is correct and that this product is not now in violation of either federal or state law."

63.     Defendants' misrepresentations and improper use of "Rx" markings and NDC numbers render Defendants' certifications to federal and state Medicaid programs false.

64.     These false statements and false certifications to CMS and state Medicaid programs are actionable under federal and state False Claims Acts.

---

[5] In some instances, CMS instructed prenatal vitamin manufacturers to use a proxy date of September 30, 1990 for the FDA approval date. Defendants did not uniformly use this proxy date. Exeltis, Mission, and Women's Choice used the proxy date for some of their products. The majority of products identified in Exhibit A do not use the proxy date.

**IV.     Defendants False Statements to First Databank and Other Drug Compendia Companies Violate the False Claims Act.**

65.     The Defendants also lied to First Databank and other drug compendia companies to have their products identified as prescription drugs in the industry standard drug databases.[6]

66.     Medicaid and other government healthcare programs rely on drug compendia companies for obtaining drug information, electronically processing claims, and automatically calculating reimbursement amounts. For example, Texas requires all drugs to have a listing on First Databank and Medi-Span to be eligible for Medicaid reimbursement.

67.     First Databank operates one of the largest and most comprehensive drug databases in the world. In developing its drug database, First Databank generally relies on the good-faith representations of drug manufacturers. When a manufacturer represents that its product requires a prescription, First Databank historically accepted that representation and published that information in its database. On information and belief, the same is true for the other major drug compendia companies.

68.     Defendants took advantage of First Databank's procedures and submitted false and misleading information so that their products would be identified as "prescription" products eligible for Medicaid reimbursement. Defendants' misrepresentations were submitted to First Databank on written forms and in communications with First Databank employees.

69.     On information and belief, Defendants submitted similar false and misleading information to other drug compendia companies.

---

[6] Other drug compendia companies include Medi-Span (provided by Wolters Kluwer) and the Gold Standard Drug Database (provided by Elsevier).

70.     Because of Relator Lupinetti's experience as a supervisor in the New York Medicaid Fraud Control Unit, he understood how Defendants' false statements to First Databank and other drug compendia companies fraudulently impacted the Medicaid program.

71.     Mr. Lupinetti reported his findings internally at First Databank. As a result of Mr. Lupinetti's efforts, in 2017 First Databank announced that it would no longer classify Defendants' products as "prescription" products in its published database. Nonetheless, Defendants continued to misrepresent their products as prescription only and pressured First Databank to reverse course.[7]

72.     Defendants false statements to First Databank and other drug compendia companies are directly linked to government reimbursement and actionable under federal and state False Claims Acts.

## V.     Defendants' False Statements and Misrepresentations Caused the Submission of False Claims.

73.     Defendants' scheme was not simply to spread misinformation about their products, it was designed to cause the submission of false claims for falsely labeled prescription products to third party payers, including government healthcare programs. Defendants' scheme succeeded in causing the submission of tens of thousands of false claims worth hundreds of millions of dollars.

74.     As Defendants know, a product labeled "Rx Only" will trigger computerized and automated claims processing systems to regard these vitamins as products for which Medicaid reimbursement was mandatory.

75.     Additionally, such labeling naturally caused doctors and pharmacists to believe that Defendants' products were somehow different, even though they provided no material benefit not

---

[7] Defendants Exeltis, Mission, and other prenatal vitamin manufacturers even sued First Databank to enjoin it from changing how their products were classified. These lawsuits against First Databank were summarily rejected by the courts.

available in OTC vitamins. The Defendants' products are in no clinical sense "better" than OTC vitamins – they merely cost more. This is confirmed by numerous clinical authorities, such as the Centers for Disease Control and Prevention, the World Health Organization, and the American College of Obstetricians and Gynecologists, which identify the requirements for prenatal vitamins. Virtually all OTC prenatal vitamins satisfy these requirements.

76.     Labeling a product "Rx Only" will also cause practitioners to believe they need to issue a prescription for it, even if no such prescription is legally or medically necessary.

77.     Defendants' salespeople tout Defendants' products to healthcare providers and provide free samples and other incentives to encourage the prescribing of their "prescription" prenatal products. This strategy to induce prescriptions guarantees that Defendants' products will be prescribed and eligible for Medicaid reimbursement.

78.     Defendants' scheme also makes it more likely that pharmacists will dispense their prenatal products when a customer presents a prescription for prenatal vitamins. Because of Defendants' false "Rx Only" labeling, pharmacists reasonably presume that these products are to be stored behind the counter with the FDA approved prescription drugs, as opposed to on the shelves with OTC prenatal vitamins. Consequently, when a pharmacist receives a prescription for a prenatal vitamin, he or she will dispense Defendants' "Rx Only" prenatal vitamins from behind the counter and not the OTC prenatal vitamins, which are available at a fraction of the cost.

79.     As intended, the natural and foreseeable result of Defendants' scheme is to ensure that Defendants' false "Rx" only products will be prescribed, dispensed, and paid for by government healthcare programs.

## VI. Defendants' False Statements and Misrepresentations Are Material to Government Claims for Reimbursement.

80. Defendants' false statements and misrepresentations have "a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property," and are thus material under the FCA. *See* 31 USC 3729(b)(4).

81. As described above, "prescription" prenatal vitamins are always covered under Medicaid regulations, whereas OTC prenatal vitamins are not. 42 U.S.C. § 1396r-8(d)(2)(E). Consequently, Defendants' misrepresentations concerning its prescription status are material to government payers that base their payment decision on prescription status.

82. Had government healthcare programs known that Defendants systematically misrepresent the prescription status of their products, government programs that base their payment decision on prescription status would not have paid for Defendants' products.

83. Moreover, the FDA has clearly established that manufacturers cannot market a product with "Rx" or "Rx Only" markings if the product is not a prescription only drug. If such "drug products are labeled as Rx only, they are misbranded and may not be legally marketed." Docket No. FDA-2008-N-0549.

84. The FDA has similarly forbidden the marketing of dietary supplements that combine vitamins and drug ingredients, as Defendant Mission does with its prenatal vitamins that contain docusate sodium. *See* fn 4, *supra*. In a public statement from FDA Commissioner Scott Gottlieb, dated December 20, 2018, the Commissioner emphasized this very point: "Under the

FD&C Act, it's illegal to introduce drug ingredients like these into the food supply, or to market them as dietary supplements. This is a requirement that we apply across the board…."[8]

85.     The FDA's position on the use of "Rx" and "Rx Only" markings shows that Defendants' misuse of "Rx" and "Rx Only" is material.

86.     Similarly, Defendants' misrepresentations to CMS, state Medicaid programs, First Databank and other drug compendia companies are material to the government's payment decision. To adjudicate claims, government healthcare programs rely on drug descriptive attributes. The First Databank "Class" value, which identifies products as prescription or non-prescription, is one such attribute. Defendants have misrepresented these attributes to CMS, state Medicaid programs, and drug compendia databases. Accordingly, these false statements are material to, and undermine, the adjudication process.

87.     When Mr. Lupinetti alerted First Databank that Defendants misrepresented their prescription status, First Databank took swift action to correct the Defendants' false statements. This response – by one of the industry's leading providers of drug information – demonstrates the importance and materiality of Defendants' false representations.

88.     Finally, the government paid substantially more for Defendants' so-called prescription prenatal vitamins than comparable OTC prenatal vitamins. Because prescription drugs must "be provided economically and only when and to the extent, medically necessary," 42 U.S.C. § 1320c-5(a), Defendants misrepresentations that caused the government to overpay for prenatal vitamins are material.

---

[8] Available here:  https://www.fda.gov/news-events/press-announcements/statement-fda-commissioner-scott-gottlieb-md-signing-agriculture-improvement-act-and-agencys

89.     For example, Avion manufacturers a range of "Rx Only" prenatal vitamins that can cost over $7 a pill. In comparison, OTC prenatal vitamins typically cost between $0.07 and $0.45 a pill. Such a substantial reimbursement disparity – *up to one-hundred times more for Defendants' product* – must be material to government programs that require Medicaid items to be provided economically.

90.     To illustrate, in 2017 Florida purchased over $3.3 million worth of Defendant Avion's Prenate Mini, with an average price of $5.70 a pill. Had Florida instead purchased a similar OTC prenatal vitamin at the average cost of $0.25 a pill, it would have spent under $150,000 and saved over $3.2 million.

91.     Because Defendants' are the largest manufacturers of "prescription" prenatal products, their products make up the lion's share of government reimbursement for prenatal products. Accordingly, Defendants' false representations and reimbursement disparities have a substantial and material impact on total Medicaid expenditures for prenatal vitamins.

92.     For 2019, the State Drug Utilization Database shows total Medicaid payments of nearly $60 million for Defendants' prenatal products. The largest amounts paid are for prenatal vitamins from Exeltis ($31.2 million), Mission ($17.4 million), and Avion ($7.6 million).

93.     The following table identifies average price per pill in 2019 for Defendants' products compared to OTC prenatal vitamins.[9]

---

[9] Even taking into account pharmacy dispensing fees and manufacturer rebates, Defendants' false "Rx Only" products cost the government substantially more than OTC prenatal vitamins.

**2019 SDUD Prenatal Vitamin Price Comparisons**

| Defendants | "Rx" Only | 2019 Medicaid Amount Reimbursed | Average Price per Unit |
|---|---|---|---|
| Exeltis | Yes | $31,223,079 | $3.34 |
| Mission | Yes | $17,464,434 | $2.28 |
| Avion | Yes | $7,619,090 | $7.40 |
| Women's Choice | Yes | $1,478,924 | $2.04 |
| Vertical | Yes | $1,454,091 | $5.17 |
| **Total** | - | **$59,239,617** | **$3.11** |
| *OTC Prenatal Vitamins[10]* | *No* | - | *$0.07 - $0.45* |

## VII.    Defendants Knowingly Violated the False Claims Act.

94.    Defendants acted knowingly, as defined by the FCA, with respect to the false statements and submission of false claims described above.

95.    Defendants are sophisticated pharmaceutical companies with knowledge of the regulations governing prenatal vitamins. Defendants know that their products are regulated as dietary supplements and not drugs, and Defendants know that their products have not been approved by the FDA as prescription only.

96.    This is no mere oversight or mistake. For years, Defendants have deliberately misrepresented the prescription status of their products to gain a financial advantage. Defendants have profited by millions of dollars at the taxpayers' expense because of the misrepresentations described above.

97.    Defendants also know that government healthcare programs purchase their products, that government reimbursement is tied to Defendants' false prescription only status, and

---

[10] Prices available here: https://www.target.com/c/prenatal-vitamins-supplements-health/-/N-y1yu5

that false claims and false statements involving government payment are actionable under federal and state False Claims Acts.

98.     Defendants' knowledge is underscored by the events following First Databanks announcement that it would no longer classify Defendants' prenatal vitamins as a "prescription only" product. Certain of the Defendants immediately pressured First Databank to reverse course and emphasized the need to be "prescription only" to facilitate reimbursement from government healthcare programs. The decision to be "prescription only" was not based on law or science, it was based on Defendants' bottom line.

99.     Because of Defendants' scheme, government healthcare programs paid millions of dollars in false claims for Defendants' prenatal vitamins. These false claims are the direct result of Defendants' knowingly false and misleading statements.

## COUNT I

### Violation of the Federal False Claims Act

100.     The allegations contained in the foregoing paragraphs are alleged as though fully set forth in this paragraph.

101.     Because of the acts and omissions described above, Defendants are liable for treble damages and penalties under the False Claims Act of the United States, 31 U.S.C. § 3729 *et seq*.

102.     Through the acts and omissions described above, Defendants knowingly presented or caused to be presented false or fraudulent claims for payment or approval within the meaning of 31 U.S.C. § 3729(a)(1)(A).

103.     Through the acts and omissions described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim, within the meaning of 31 U.S.C. § 3729(a)(1)(B).

104.    Defendants' acts and omissions were made knowingly, as defined in 31 U.S.C. § 3729(b)(1).

105.    Defendants' acts and omissions were material, as defined in 31 U.S.C. § 3729(b)(1).

106.    The United States, unaware of the false and fraudulent nature of Defendants' acts and omissions, paid and continues to pay claims that would not be paid but for Defendants' acts and omissions.

107.    Because of the Defendants' acts and omissions, the United States has sustained damages, and continues to sustain damages, in substantial amount to be determined at trial.

108.    The United States is additionally entitled to the maximum civil penalty for each and every violation of the False Claims Act.

## COUNT II

### California False Claims Act

109.    The allegations alleged in the foregoing paragraphs are alleged as though fully set forth in this paragraph.

110.    Because of the acts and omissions described above, Defendants are liable for treble damages and penalties under the California False Claims Act (Cal. Gov't Code § 12650 *et seq.*).

111.    The term "State" as used in this Count shall have the meaning as defined in the California False Claims Act, including the State of California, any agency of State government, county, municipality and other entities (Cal. Gov't Code § 12650(b)(6)).

112.    Through the acts and omissions described above, Defendants knowingly presented or caused to be presented false or fraudulent claims for payment or approval within the meaning of the California False Claims Act (Cal. Gov't Code § 12651(a)(1)).

113. Through the acts and omissions described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim, within the meaning of California False Claims Act (Cal. Gov't Code § 12651(a)(2)).

114. Defendants' acts and omissions were made knowingly, as defined in the California False Claims Act (Cal. Gov't Code § 12650(b)(3)(A-C)).

115. Defendants' acts and omissions were material, as defined in the California False Claims Act (Cal. Gov't Code § 12650(b)(4)).

116. The State, unaware of the false and fraudulent nature of Defendants' acts and omissions, paid and continues to pay claims that would not be paid but for Defendants' acts and omissions.

117. Because of the Defendants' acts and omissions, the State has sustained damages, and continues to sustain damages, in substantial amount to be determined at trial.

118. The State is additionally entitled to the maximum civil penalty for each and every violation of the False Claims Act.

## COUNT III

### California Insurance Frauds Prevention Act

119. The allegations alleged in the foregoing paragraphs are alleged as though fully set forth in this paragraph.

120. The California Insurance Frauds Prevention Act, Cal. Ins. Code §§ 1871 *et seq.* ("CIFPA"), is designed to combat fraud committed against private insurance companies. The CIFPA allows individuals to bring an action on behalf of the state against individuals or companies that are defrauding private insurance companies.

121. Through the various schemes, described above, Defendants violated the CIFPA, making or causing fraudulent health care claims to be made to California private insurers and

defrauding private insurers out of overpayments. By doing so, Defendants substantially increased private insurer's costs and in turn increased the costs of their participants' coverage.

122.     Because of the acts and omissions described above, Defendants are liable for the greater of a fine not to exceed $150,000 or double the value of fraud, in addition to restitution, and other damages and penalties under the California Insurance Frauds Prevention Act (Cal. Ins. Code § 1871.4(b).

## COUNT IV

### Colorado Medicaid False Claims Act

123.     The allegations alleged in the foregoing paragraphs are alleged as though fully set forth in this paragraph.

124.     Because of the acts and omissions described above, Defendants are liable for treble damages and penalties under the Colorado Medicaid False Claims Act (Colo. Rev. Stat. Ann. §25.5-4–303.5 *et seq.*).

125.     The term "State" as used in this Count shall have the meaning as used in the Colorado Medicaid False Claims Act, including the State of Colorado, any officer, employee, or agent of the state, or any contractor, grantee, or other recipient of monies or property designated to be spent or used on behalf of the State of Colorado or to advance a program or interest therewith (Colo. Rev. Stat. Ann. §25.5-4–304(1)(a)(I-II)).

126.     Through the acts and omissions described above, Defendants knowingly presented or caused to be presented false or fraudulent claims for payment or approval within the meaning of the Colorado Medicaid False Claims Act (Colo. Rev. Stat. Ann. §25.5-4–303.5(a)).

127.     Through the acts and omissions described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent

claim, within the meaning of Colorado Medicaid False Claims Act (Colo. Rev. Stat. Ann. §25.5-4–305(1)(b)).

128.    Defendants' acts and omissions were made knowingly, as defined in the Colorado Medicaid False Claims Act (Colo. Rev. Stat. Ann. §25.5-4–304(3)(a-b)).

129.    Defendants' acts and omissions were material, as defined in the Colorado Medicaid False Claims Act (Colo. Rev. Stat. Ann. §25.5-4–304(4)).

130.    The State, unaware of the false and fraudulent nature of Defendants' acts and omissions, paid and continues to pay claims that would not be paid but for Defendants' acts and omissions.

131.    Because of the Defendants' acts and omissions, the State has sustained damages, and continues to sustain damages, in substantial amount to be determined at trial.

132.    The State is additionally entitled to the maximum civil penalty for each and every violation of the False Claims Act.

## COUNT V

### Connecticut False Claims Act

133.    The allegations alleged in the foregoing paragraphs are alleged as though fully set forth in this paragraph.

134.    Because of the acts and omissions described above, Defendants are liable for treble damages and penalties under the Connecticut False Claims Act (Conn. Gen. Stat. § 4-274 *et seq.*).

135.    The term "State" as used in this Count shall have the meaning as defined in the Connecticut False Claims Act, including the State of Connecticut, any agency of State government, county, municipality and other entities (Conn. Gen. Stat. § 4-274(5)).

136.    Through the acts and omissions described above, Defendants knowingly presented or caused to be presented false or fraudulent claims for payment or approval within the meaning of the Connecticut False Claims Act (Conn. Gen. Stat. § 4-275(a)(1)).

137.    Through the acts and omissions described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim, within the meaning of Connecticut False Claims Act (Conn. Gen. Stat. § 4-275(a)(2)).

138.    Defendants' acts and omissions were made knowingly, as defined in the Connecticut False Claims Act (Conn. Gen. Stat. § 4-274(1)(A-C)).

139.    Defendants' acts and omissions were material, as defined in the Connecticut False Claims Act (Conn. Gen. Stat. § 4-274(6)).

140.    The State, unaware of the false and fraudulent nature of Defendants' acts and omissions, paid and continues to pay claims that would not be paid but for Defendants' acts and omissions.

141.    Because of the Defendants' acts and omissions, the State has sustained damages, and continues to sustain damages, in substantial amount to be determined at trial.

142.    The State is additionally entitled to the maximum civil penalty for each and every violation of the False Claims Act.

## COUNT VI

### Delaware False Claims and Reporting Act

143.    The allegations alleged in the foregoing paragraphs are alleged as though fully set forth in this paragraph.

144.    Because of the acts and omissions described above, Defendants are liable for treble damages and penalties under the Delaware False Claims and Reporting Act (6 Del. Code Ann. § 1201 *et seq.*).

145.    The term "State" as used in this Count shall have the meaning as defined in the Delaware False Claims and Reporting Act, including the State of Delaware, any agency of State government, county, municipality and other entities (6 Del. Code Ann. § 1202(2)).

146.    Through the acts and omissions described above, Defendants knowingly presented or caused to be presented false or fraudulent claims for payment or approval within the meaning of the Delaware False Claims and Reporting Act (6 Del. Code Ann. § 1201(a)(1).

147.    Through the acts and omissions described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim, within the meaning of Delaware False Claims and Reporting Act (6 Del. Code Ann. § 1201(a)(2).

148.    Defendants' acts and omissions were made knowingly, as defined in the Delaware False Claims and Reporting Act (6 Del. Code Ann. § 1202(3)(a-c)).

149.    Defendants' acts and omissions were material, as defined in the Delaware False Claims and Reporting Act (6 Del. Code Ann. § 1202(4)).

150.    The State, unaware of the false and fraudulent nature of Defendants' acts and omissions, paid and continues to pay claims that would not be paid but for Defendants' acts and omissions.

151.    Because of the Defendants' acts and omissions, the State has sustained damages, and continues to sustain damages, in substantial amount to be determined at trial.

152.    The State is additionally entitled to the maximum civil penalty for each and every violation of the False Claims and Reporting Act.

## COUNT VII

**District of Columbia False Claims Act**

153.     The allegations alleged in the foregoing paragraphs are alleged as though fully set forth in this paragraph.

154.     Because of the acts and omissions described above, Defendants are liable for treble damages and penalties under the District of Columbia False Claims Act (D.C. Code § 2-381.01 *et seq.*).

155.     The term "State" as used in this Count shall have the meaning as used in the District of Columbia False Claims Act, including the District of Columbia, any of its officers, employees, or agents, or a contractor, grantee, or other recipient of monies or property to be spent or used on behalf of the District of Columbia or to advance any program or interest therewith (D.C. Code § 2-381.01(1)).

156.     Through the acts and omissions described above, Defendants knowingly presented or caused to be presented false or fraudulent claims for payment or approval within the meaning of the District of Columbia False Claims Act (D.C. Code § 2-381.02(a)(1)).

157.     Through the acts and omissions described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim, within the meaning of District of Columbia False Claims Act (D.C. Code § 2-381.02(a)(2)).

158.     Defendants' acts and omissions were made knowingly, as defined in the District of Columbia False Claims Act (D.C. Code § 2-381.01(7)(A-B)).

159.     Defendants' acts and omissions were material, as defined in the District of Columbia False Claims Act (D.C. Code § 2-381.01(8)).

160.    The State, unaware of the false and fraudulent nature of Defendants' acts and omissions, paid and continues to pay claims that would not be paid but for Defendants' acts and omissions.

161.    Because of the Defendants' acts and omissions, the State has sustained damages, and continues to sustain damages, in substantial amount to be determined at trial.

162.    The State is additionally entitled to the maximum civil penalty for each and every violation of the False Claims Act.

### COUNT VIII

**Florida False Claims Act**

163.    The allegations alleged in the foregoing paragraphs are alleged as though fully set forth in this paragraph.

164.    Because of the acts and omissions described above, Defendants are liable for treble damages and penalties under the Florida False Claims Act (Fla. Stat. §§ 68.081 *et seq.*).

165.    The term "State" as used in this Count shall have the meaning as defined in the Florida False Claims Act, including the State of Florida, any agency of State government, county, municipality and other entities (Fla. Stat. § 68.082(1)(d)).

166.    Through the acts and omissions described above, Defendants knowingly presented or caused to be presented false or fraudulent claims for payment or approval within the meaning of the Florida False Claims Act (Fla. Stat. § 68.082(2)(a)).

167.    Through the acts and omissions described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim, within the meaning of Florida False Claims Act (Fla. Stat. § 68.082(2)(b)).

168.    Defendants' acts and omissions were made knowingly, as defined in the Florida False Claims Act (Fla. Stat. § 68.082(2)(c)(1-3)).

169. Defendants' acts and omissions were material, as defined in the Florida False Claims Act (Fla. Stat. § 68.082(1)(d)).

170. The State, unaware of the false and fraudulent nature of Defendants' acts and omissions, paid and continues to pay claims that would not be paid but for Defendants' acts and omissions.

171. Because of the Defendants' acts and omissions, the State has sustained damages, and continues to sustain damages, in substantial amount to be determined at trial.

172. The State is additionally entitled to the maximum civil penalty for each and every violation of the False Claims Act.

**COUNT IX**

**Georgia Taxpayer Protection False Claims Act**

173. The allegations alleged in the foregoing paragraphs are alleged as though fully set forth in this paragraph.

174. Because of the acts and omissions described above, Defendants are liable for treble damages and penalties under the Georgia Taxpayer Protection False Claims Act (Ga. Code Ann. § 23-3-120 *et seq.*).

175. The term "State" as used in this Count shall have the meaning as defined in the Georgia Taxpayer Protection False Claims Act, including the State of Georgia, any agency of State government, county, municipality and other entities (Ga. Code Ann. § 23-3-120)(6)).

176. Through the acts and omissions described above, Defendants knowingly presented or caused to be presented false or fraudulent claims for payment or approval within the meaning of the Georgia Taxpayer Protection False Claims Act (Ga. Code Ann. § 23-3-121(a)(1)).

177. Through the acts and omissions described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent

claim, within the meaning of Georgia Taxpayer Protection False Claims Act (Ga. Code Ann. § 23-3-121(a)(2)).

178. Defendants' acts and omissions were made knowingly, as defined in the Georgia Taxpayer Protection False Claims Act (Ga. Code Ann. § 23-3-120(2)(A-C)).

179. Defendants' acts and omissions were material, as defined in the Georgia Taxpayer Protection False Claims Act (Ga. Code Ann. § 23-3-120(4).

180. The State, unaware of the false and fraudulent nature of Defendants' acts and omissions, paid and continues to pay claims that would not be paid but for Defendants' acts and omissions.

181. Because of the Defendants' acts and omissions, the State has sustained damages, and continues to sustain damages, in substantial amount to be determined at trial.

182. The State is additionally entitled to the maximum civil penalty for each and every violation of the False Claims Act.

## COUNT X

### Georgia's State False Medicaid Claims Act

183. The allegations alleged in the foregoing paragraphs are alleged as though fully set forth in this paragraph.

184. Because of the acts and omissions described above, Defendants are liable for treble damages and penalties under Georgia's State False Medicaid Claims Act (Ga. Code Ann. § 49-4-168 *et seq.*).

185. The term "State" as used in this Count shall have the meaning as used in Georgia's State False Medicaid Claims Act, including the State of Georgia, any officer, employee, fiscal intermediary, grantee, agent, or contractor of the Georgia Medicaid program, or any other persons or entities receiving payments from the Georgia Medicaid Program (Ga. Code Ann. § 49-4-168(1)).

186.    Through the acts and omissions described above, Defendants knowingly presented or caused to be presented false or fraudulent claims for payment or approval within the meaning of the Georgia's State False Medicaid Claims Act (Ga. Code Ann. § 49-4-168.1(a)(1)).

187.    Through the acts and omissions described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim, within the meaning of Georgia's State False Medicaid Claims Act (Ga. Code Ann. § 49-4-168.1(a)(2)).

188.    Defendants' acts and omissions were made knowingly, as defined in the Georgia's State False Medicaid Claims Act (Ga. Code Ann. § 49-4-168(2)(A-C)).

189.    Defendants' acts and omissions were material, as defined in the Georgia's State False Medicaid Claims Act (Ga. Code Ann. § 49-4-168(3)).

190.    The State, unaware of the false and fraudulent nature of Defendants' acts and omissions, paid and continues to pay claims that would not be paid but for Defendants' acts and omissions.

191.    Because of the Defendants' acts and omissions, the State has sustained damages, and continues to sustain damages, in substantial amount to be determined at trial.

192.    The State is additionally entitled to the maximum civil penalty for each and every violation of the False Claims Act.

## COUNT XI

### Hawaii False Claims Act – False Claims to the State

193.    The allegations alleged in the foregoing paragraphs are alleged as though fully set forth in this paragraph.

194. Because of the acts and omissions described above, Defendants are liable for treble damages and penalties under Hawaii's False Claims to the State (Haw. Rev. Stat. §§ 661-21 *et seq.*).

195. The term "State" as used in this Count shall have the meaning as used in Hawaii's False Claims to the State, including the State of Hawaii, any agency of State government, and any officer, employee, or agent of the State (Haw. Rev. Stat. § 661-21).

196. Through the acts and omissions described above, Defendants knowingly presented or caused to be presented false or fraudulent claims for payment or approval within the meaning of Hawaii's False Claims to the State (Haw. Rev. Stat. § 661-21(a)(1)).

197. Through the acts and omissions described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim, within the meaning of Hawaii's False Claims to the State (Haw. Rev. Stat. § 661-21(a)(2)).

198. Defendants' acts and omissions were made knowingly, as defined in Hawaii's False Claims to the State (Haw. Rev. Stat. § 661-21(e)(1-3)).

199. Defendants' acts and omissions were material, as defined in Hawaii's False Claims to the State (Haw. Rev. Stat. § 661-21(e)(3)).

200. The State, unaware of the false and fraudulent nature of Defendants' acts and omissions, paid and continues to pay claims that would not be paid but for Defendants' acts and omissions.

201. Because of the Defendants' acts and omissions, the State has sustained damages, and continues to sustain damages, in substantial amount to be determined at trial.

202. The State is additionally entitled to the maximum civil penalty for each and every violation of the False Claims Act.

## COUNT XII

### Illinois False Claims Act

203.     The allegations alleged in the foregoing paragraphs are alleged as though fully set forth in this paragraph.

204.     Because of the acts and omissions described above, Defendants are liable for treble damages and penalties under the Illinois False Claims Act (740 ILCS 175/1 *et seq.*).

205.     The term "State" as used in this Count shall have the meaning as defined in the Illinois False Claims Act, including the State of Illinois, any agency of State government, county, municipality and other entities (740 ILCS 175/2(a)).

206.     Through the acts and omissions described above, Defendants knowingly presented or caused to be presented false or fraudulent claims for payment or approval within the meaning of the Illinois False Claims Act (740 ILCS 175/3(a)(1)(A)).

207.     Through the acts and omissions described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim, within the meaning of Illinois False Claims Act (740 ILCS 175/3(a)(1)(B)).

208.     Defendants' acts and omissions were made knowingly, as defined in the Illinois False Claims Act (740 ILCS 175/3(b)(1)).

209.     Defendants' acts and omissions were material, as defined in the Illinois False Claims Act (740 ILCS 175/3(b)(4)).

210.     The State, unaware of the false and fraudulent nature of Defendants' acts and omissions, paid and continues to pay claims that would not be paid but for Defendants' acts and omissions.

211.     Because of the Defendants' acts and omissions, the State has sustained damages, and continues to sustain damages, in substantial amount to be determined at trial.

212.     The State is additionally entitled to the maximum civil penalty for each and every violation of the False Claims Act.

## COUNT XIII

### Illinois Insurance Frauds Prevention Act

213.     The allegations alleged in the foregoing paragraphs are alleged as though fully set forth in this paragraph.

214.     The Illinois Legislature enacted the Illinois Insurance Claims Frauds Prevention Act, 740 ILCS § 92/1 *et seq.* ("IICFPA"), to combat abusive practices aimed at defrauding private insurance providers. The legislation was enacted specifically to address the social costs of fraud on private insurance providers, noting that the penalties in the IICFPA are "remedial" and intended to achieve the "goals of disgorging unlawful profit, restitution, compensating the State for the costs of investigations and prosecution, and alleviating the social costs of increased insurance rates due to fraud." 740 ILCS § 92/5(c).

215.     Through the various schemes, described above, Defendants violated the IICFPA, making or causing fraudulent health care claims to be made to Illinois private insurers and defrauding private insurers out of overpayments. By doing so, Defendants substantially increased private insurer's costs and in turn increased the costs of their participants' coverage.

216.     Because of the acts and omissions described above, Defendants are liable for the maximum damages and penalties under the Illinois Insurance Claims Frauds Prevention Act (740 ILCS § 92/1 *et seq.*).

## COUNT XIV

### Indiana False Claims and Whistleblower Protection Act

217.    The allegations alleged in the foregoing paragraphs are alleged as though fully set forth in this paragraph.

218.    Because of the acts and omissions described above, Defendants are liable for treble damages and penalties under the Indiana False Claims and Whistleblower Protection Act (Ind. Code §§ 5-11-5.5-1 *et seq.*).

219.    The term "State" as used in this Count shall have the meaning as defined in the Indiana False Claims and Whistleblower Protection Act, including the State of Indiana, any agency of State government, county, municipality and other entities (Ind. Code § 5-11-5.5-1(7)).

220.    Through the acts and omissions described above, Defendants knowingly presented or caused to be presented false or fraudulent claims for payment or approval within the meaning of the Indiana False Claims and Whistleblower Protection Act (Ind. Code § 5-11-5.5-2(b)(1)).

221.    Through the acts and omissions described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim, within the meaning of Indiana False Claims and Whistleblower Protection Act (Ind. Code § 5-11-5.5-2(b)(2)).

222.    Defendants' acts and omissions were made knowingly, as defined in the Indiana False Claims and Whistleblower Protection Act (Ind. Code § 5-11-5.5-1(4)).

223.    Defendants' acts and omissions were material, as defined in the Indiana False Claims and Whistleblower Protection Act (Ind. Code § 5-11-5.7-1(b)(5)).

224.    The State, unaware of the false and fraudulent nature of Defendants' acts and omissions, paid and continues to pay claims that would not be paid but for Defendants' acts and omissions.

225.    Because of the Defendants' acts and omissions, the State has sustained damages, and continues to sustain damages, in substantial amount to be determined at trial.

226.    The State is additionally entitled to the maximum civil penalty for each and every violation of the False Claims Act.

## COUNT XV

### Indiana Medicaid False Claims and Whistleblower Protection Act

227.    The allegations alleged in the foregoing paragraphs are alleged as though fully set forth in this paragraph.

228.    Because of the acts and omissions described above, Defendants are liable for treble damages and penalties under the Indiana Medicaid False Claims and Whistleblower Protection Act (Ind. Code §§ 5-11-5.7 *et seq.*).

229.    The term "State" as used in this Count shall have the meaning as defined in the Indiana Medicaid False Claims and Whistleblower Protection Act, including the State of Indiana, any agency of State government, county, municipality and other entities (Ind. Code § 5-11-5.7-1(b)(9)).

230.    Through the acts and omissions described above, Defendants knowingly presented or caused to be presented false or fraudulent claims for payment or approval within the meaning of the Indiana Medicaid False Claims and Whistleblower Protection Act (Ind. Code § 5-11-5.7-1(b)(1)(A)).

231.    Through the acts and omissions described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim, within the meaning of Indiana Medicaid False Claims and Whistleblower Protection Act (Ind. Code § 5-11-5.7-1(b)(1)(B)).

232.    Defendants' acts and omissions were made knowingly, as defined in the Indiana Medicaid False Claims and Whistleblower Protection Act (Ind. Code § 5-11-5.7-1(b)(4)(A-C)).

233.    Defendants' acts and omissions were material, as defined in the Indiana Medicaid False Claims and Whistleblower Protection Act (Ind. Code § 5-11-5.7-1(b)(5)).

234.    The State, unaware of the false and fraudulent nature of Defendants' acts and omissions, paid and continues to pay claims that would not be paid but for Defendants' acts and omissions.

235.    Because of the Defendants' acts and omissions, the State has sustained damages, and continues to sustain damages, in substantial amount to be determined at trial.

236.    The State is additionally entitled to the maximum civil penalty for each and every violation of the False Claims Act.

## COUNT XVI

### Iowa False Claims Act

237.    The allegations alleged in the foregoing paragraphs are alleged as though fully set forth in this paragraph.

238.    Because of the acts and omissions described above, Defendants are liable for treble damages and penalties under the Iowa False Claims Act (Iowa Code §§ 685.1 *et seq.*).

239.    The term "State" as used in this Count shall have the meaning as defined in the Iowa False Claims Act, including the State of Iowa, any agency of State government, county, municipality and other entities (Iowa Code § 685.1(15)).

240.    Through the acts and omissions described above, Defendants knowingly presented or caused to be presented false or fraudulent claims for payment or approval within the meaning of the Iowa False Claims Act (Iowa Code § 685.2(1)(a)).

241. Through the acts and omissions described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim, within the meaning of Iowa False Claims Act (Iowa Code § 685.2(1)(b)).

242. Defendants' acts and omissions were made knowingly, as defined in the Iowa False Claims Act (Iowa Code § 685.1(7)(a-b)).

243. Defendants' acts and omissions were material, as defined in the Iowa False Claims Act (Iowa Code § 685.1(8)).

244. The State, unaware of the false and fraudulent nature of Defendants' acts and omissions, paid and continues to pay claims that would not be paid but for Defendants' acts and omissions.

245. Because of the Defendants' acts and omissions, the State has sustained damages, and continues to sustain damages, in substantial amount to be determined at trial.

246. The State is additionally entitled to the maximum civil penalty for each and every violation of the False Claims Act.

## COUNT XVII

### Louisiana Medical Assistance Programs Integrity Law

247. The allegations alleged in the foregoing paragraphs are alleged as though fully set forth in this paragraph.

248. Because of the acts and omissions described above, Defendants are liable for treble damages and penalties under the Louisiana Medical Assistance Programs Integrity Law (La. Rev. Stat. Ann. §§ 46:437.1 – 46:440.3)

249. The term "State" as used in this Count shall have the meaning as used in the Louisiana Medical Assistance Programs Integrity Law, including the State of Louisiana, any officer, employee, agent, or Louisiana Department of Health, or any contractor, grantee, or other

recipient of money or property to be spent or used in any manner in any program administered by the Louisiana Department of Health (La. Rev. Stat. Ann. § 46:437.3(5)).

250.     Through the acts and omissions described above, Defendants knowingly presented or caused to be presented false or fraudulent claims for payment or approval within the meaning of the Louisiana Medical Assistance Programs Integrity Law (La. Rev. Stat. Ann. § 46:438.3(A)).

251.     Through the acts and omissions described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim, within the meaning of Louisiana Medical Assistance Programs Integrity Law (La. Rev. Stat. Ann. § 46:438.3(B)).

252.     Defendants' acts and omissions were made knowingly, as defined in the Louisiana Medical Assistance Programs Integrity Law (La. Rev. Stat. Ann. § 46:437.3(11)).

253.     Defendants' acts and omissions were material, as defined in the Louisiana Medical Assistance Programs Integrity Law (La. Rev. Stat. Ann. § 46:437.3(13)).

254.     The State, unaware of the false and fraudulent nature of Defendants' acts and omissions, paid and continues to pay claims that would not be paid but for Defendants' acts and omissions.

255.     Because of the Defendants' acts and omissions, the State has sustained damages, and continues to sustain damages, in substantial amount to be determined at trial.

256.     The State is additionally entitled to the maximum civil penalty for each and every violation of the Louisiana Medical Assistance Programs Integrity Law.

## COUNT XVIII

### Massachusetts False Claims Act

257.     The allegations alleged in the foregoing paragraphs are alleged as though fully set forth in this paragraph.

258.    Because of the acts and omissions described above, Defendants are liable for treble damages and penalties under the Massachusetts False Claims Act (Mass. Gen. Laws ch. 12 §§ 5A *et seq.*).

259.    The term "Commonwealth" as used in this Count shall have the meaning as used in the Massachusetts False Claims Act, including the Commonwealth of Massachusetts, any officer, employee, agent, or other representative of the common wealth or a political subdivision thereof, or any contractor, subcontractor, grantee or other person, to whom money or property is to be spent or used on of or to advance a program or interest of the Commonwealth of Massachusetts or a political subdivision thereof (Mass. Gen. Laws ch. 12 § 5A).

260.    Through the acts and omissions described above, Defendants knowingly presented or caused to be presented false or fraudulent claims for payment or approval within the meaning of the Massachusetts False Claims Act (Mass. Gen. Laws ch. 12 § 5B(a)(1)).

261.    Through the acts and omissions described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim, within the meaning of Massachusetts False Claims Act (Mass. Gen. Laws ch. 12 § 5B(a)(2).

262.    Defendants' acts and omissions were made knowingly, as defined in the Massachusetts False Claims Act (Mass. Gen. Laws ch. 12 § 5A).

263.    Defendants' acts and omissions were material, as defined in the Massachusetts False Claims Act (Mass. Gen. Laws ch. 12 § 5A).

264.    The Commonwealth, unaware of the false and fraudulent nature of Defendants' acts and omissions, paid and continues to pay claims that would not be paid but for Defendants' acts and omissions.

265.    Because of the Defendants' acts and omissions, the Commonwealth has sustained damages, and continues to sustain damages, in substantial amount to be determined at trial.

266.    The Commonwealth is additionally entitled to the maximum civil penalty for each and every violation of the False Claims Act.

## COUNT XIX

### Michigan Medicaid False Claim Act

267.    The allegations alleged in the foregoing paragraphs are alleged as though fully set forth in this paragraph.

268.    Because of the acts and omissions described above, Defendants are liable for treble damages and penalties under the Michigan Medicaid False Claim Act (Mich. Comp. Laws §§ 400.601 *et seq.*).

269.    The term "State" as used in this Count shall have the meaning as used in the Michigan Medicaid False Claim Act, including the State of Michigan, any employee or officer of the State of Michigan, and other entities, including the  Michigan department of community health (Mich. Comp. Laws § 400.602).

270.    Through the acts and omissions described above, Defendants knowingly presented or caused to be presented false or fraudulent claims for payment or approval within the meaning of the Michigan Medicaid False Claim Act (Mich. Comp. Laws § 400.607(1)).

271.    Through the acts and omissions described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim, within the meaning of Michigan Medicaid False Claim Act (Mich. Comp. Laws § 400.607(2)).

272.    Defendants' acts and omissions were made knowingly, as defined in the Michigan Medicaid False Claim Act (Mich. Comp. Laws § 400.602(f)).

273.    Defendants' acts and omissions were material, as used in the Michigan Medicaid False Claim Act.

274.    The State, unaware of the false and fraudulent nature of Defendants' acts and omissions, paid and continues to pay claims that would not be paid but for Defendants' acts and omissions.

275.    Because of the Defendants' acts and omissions, the State has sustained damages, and continues to sustain damages, in substantial amount to be determined at trial.

276.    The State is additionally entitled to the maximum civil penalty for each and every violation of the Medicaid False Claim Act.

<u>**COUNT XX**</u>

**Minnesota False Claims Act**

277.    The allegations alleged in the foregoing paragraphs are alleged as though fully set forth in this paragraph.

278.    Because of the acts and omissions described above, Defendants are liable for treble damages and penalties under the Minnesota False Claims Act (Minn. Stat. §§ 15C.01 *et seq.*).

279.    The term "State" as used in this Count shall have the meaning as defined in the Minnesota False Claims Act, including the State of Minnesota, any agency of State government, county, municipality and other entities (Minn. Stat. § 15C.01(8)).

280.    Through the acts and omissions described above, Defendants knowingly presented or caused to be presented false or fraudulent claims for payment or approval within the meaning of the Minnesota False Claims Act (Minn. Stat. § 15C.02(a)(1)).

281.    Through the acts and omissions described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim, within the meaning of Minnesota False Claims Act (Minn. Stat. § 15C.02(a)(2)).

282.    Defendants' acts and omissions were made knowingly, as defined in the Minnesota False Claims Act (Minn. Stat. § 15C.01(3)(1-3)).

283.    Defendants' acts and omissions were material, as defined in the Minnesota False Claims Act (Minn. Stat. § 15C.01(3a)).

284.    The State, unaware of the false and fraudulent nature of Defendants' acts and omissions, paid and continues to pay claims that would not be paid but for Defendants' acts and omissions.

285.    Because of the Defendants' acts and omissions, the State has sustained damages, and continues to sustain damages, in substantial amount to be determined at trial.

286.    The State is additionally entitled to the maximum civil penalty for each and every violation of the False Claims Act.

## COUNT XXI

### Montana False Claims Act

287.    The allegations alleged in the foregoing paragraphs are alleged as though fully set forth in this paragraph.

288.    Because of the acts and omissions described above, Defendants are liable for treble damages and penalties under the Montana False Claims Act (Mont. Code Ann. §§ 17-8-401 *et seq.*).

289.    The term "State" as used in this Count shall have the meaning as defined in the Montana False Claims Act, including the State of Montana, any agency of State government, county, municipality and other entities (Mont. Code Ann. § 17-8-402(3)(a-c)).

290.    Through the acts and omissions described above, Defendants knowingly presented or caused to be presented false or fraudulent claims for payment or approval within the meaning of the Montana False Claims Act (Mont. Code Ann. § 17-8-403(1)(a)).

291.    Through the acts and omissions described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim, within the meaning of Montana False Claims Act (Mont. Code Ann. § 17-8-403(1)(b)).

292.    Defendants' acts and omissions were made knowingly, as defined in the Montana False Claims Act (Mont. Code Ann. § 17-8-402(4)(a)-(b)).

293.    Defendants' acts and omissions were material, as defined in the Montana False Claims Act (Mont. Code Ann. § 17-8-402(5)).

294.    The State, unaware of the false and fraudulent nature of Defendants' acts and omissions, paid and continues to pay claims that would not be paid but for Defendants' acts and omissions.

295.    Because of the Defendants' acts and omissions, the State has sustained damages, and continues to sustain damages, in substantial amount to be determined at trial.

296.    The State is additionally entitled to the maximum civil penalty for each and every violation of the False Claims Act.

## COUNT XXII

### Nevada False Claims Act

297.    The allegations alleged in the foregoing paragraphs are alleged as though fully set forth in this paragraph.

298.    Because of the acts and omissions described above, Defendants are liable for treble damages and penalties under the Nevada False Claims Act (Nev. Rev. Stat. Ann. §§ 357.010 *et seq.*).

299.    The term "State" as used in this Count shall have the meaning as used in the Nevada False Claims Act, including the State of Nevada, any officer, employee or agent of the State of Nevada or any political subdivision thereof, or any contractor, grantee or other recipient of money,

property or services to be spent or used on behalf of the State of Nevada or a political subdivision thereof (Nev. Rev. Stat. Ann. § 357.020).

300.    Through the acts and omissions described above, Defendants knowingly presented or caused to be presented false or fraudulent claims for payment or approval within the meaning of the Nevada False Claims Act (Nev. Rev. Stat. Ann. § 357.040(1)(a)).

301.    Through the acts and omissions described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim, within the meaning of Nevada False Claims Act (Nev. Rev. Stat. Ann. § 357.040(1)(b)).

302.    Defendants' acts and omissions were made knowingly, as defined in the Nevada False Claims Act (Nev. Rev. Stat. Ann. § 357.040(2)(a)-(c)).

303.    Defendants' acts and omissions were material, as defined in the Nevada False Claims Act (Nev. Rev. Stat. Ann. § 357.022).

304.    The State, unaware of the false and fraudulent nature of Defendants' acts and omissions, paid and continues to pay claims that would not be paid but for Defendants' acts and omissions.

305.    Because of the Defendants' acts and omissions, the State has sustained damages, and continues to sustain damages, in substantial amount to be determined at trial.

306.    The State is additionally entitled to the maximum civil penalty for each and every violation of the False Claims Act.

## COUNT XXIII

### New Jersey False Claims Act

307.    The allegations alleged in the foregoing paragraphs are alleged as though fully set forth in this paragraph.

308.    Because of the acts and omissions described above, Defendants are liable for treble damages and penalties under the New Jersey False Claims Act (N.J. Stat. Ann. §§ 2A:32C-1 *et seq.*).

309.    The term "State" as used in this Count shall have the meaning as defined in the New Jersey False Claims Act, including the State of New Jersey, any agency of State government, county, municipality and other entities (N.J. Stat. Ann. § 2A:32C-2(2.A)).

310.    Through the acts and omissions described above, Defendants knowingly presented or caused to be presented false or fraudulent claims for payment or approval within the meaning of the New Jersey False Claims Act (N.J. Stat. Ann. § 2A:32C-3((3.A)(a)).

311.    Through the acts and omissions described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim, within the meaning of New Jersey False Claims Act (N.J. Stat. Ann. § 2A:32C-3(3.A)(b)).

312.    Defendants' acts and omissions were made knowingly, as defined in the New Jersey False Claims Act (N.J. Stat. Ann. § 2A:32C-2((2.A)(1-3)).

313.    Defendants' acts and omissions were material, as used in the New Jersey False Claims Act.

314.    The State, unaware of the false and fraudulent nature of Defendants' acts and omissions, paid and continues to pay claims that would not be paid but for Defendants' acts and omissions.

315.    Because of the Defendants' acts and omissions, the State has sustained damages, and continues to sustain damages, in substantial amount to be determined at trial.

316.    The State is additionally entitled to the maximum civil penalty for each and every violation of the False Claims Act.

## COUNT XXIV

### New Mexico Medicaid False Claims Act

317.     The allegations alleged in the foregoing paragraphs are alleged as though fully set forth in this paragraph.

318.     Because of the acts and omissions described above, Defendants are liable for treble damages and penalties under the New Mexico Medicaid False Claims Act (N.M. Stat. Ann. §§ 27-14-1 *et seq.*).

319.     The term "Department" as used in this Count shall have the meaning as defined in the New Mexico Medicaid False Claims Act, including the State of New Mexico and the Human Services Department, (N.M. Stat. Ann. § 27-14-3(B)).

320.     Through the acts and omissions described above, Defendants knowingly presented or caused to be presented false or fraudulent claims for payment or approval within the meaning of the New Mexico Medicaid False Claims Act (N.M. Stat. Ann. § 27-14-4(A-B)).

321.     Through the acts and omissions described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim, within the meaning of New Mexico Medicaid False Claims Act (N.M. Stat. Ann. § 27-14-4(C)).

322.     Defendants' acts and omissions were made knowingly, as used in the New Mexico Medicaid False Claims Act.

323.     Defendants' acts and omissions were material, as used in the New Mexico Medicaid False Claims Act.

324.     The Department, unaware of the false and fraudulent nature of Defendants' acts and omissions, paid and continues to pay claims that would not be paid but for Defendants' acts and omissions.

325.    Because of the Defendants' acts and omissions, the Department has sustained damages, and continues to sustain damages, in substantial amount to be determined at trial.

326.    The Department is additionally entitled to the maximum civil penalty for each and every violation of the New Mexico Medicaid False Claims Act.

## COUNT XXV

### New Mexico Fraud Against Taxpayers Act

327.    The allegations alleged in the foregoing paragraphs are alleged as though fully set forth in this paragraph.

328.    Because of the acts and omissions described above, Defendants are liable for treble damages and penalties under the New Mexico Fraud Against Taxpayers Act (N.M. Stat. Ann. §§ 44-9-1 *et seq.*).

329.    The term "State" as used in this Count shall have the meaning as defined in the New Mexico Fraud Against Taxpayers Act, including the State of New Mexico, any agency of State government, county, municipality and other entities (N.M. Stat. Ann. § 44-9-2(E)).

330.    Through the acts and omissions described above, Defendants knowingly presented or caused to be presented false or fraudulent claims for payment or approval within the meaning of the New Mexico Fraud Against Taxpayers Act (N.M. Stat. Ann. § 44-9-3(A)(1)).

331.    Through the acts and omissions described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim, within the meaning of New Mexico Fraud Against Taxpayers Act (N.M. Stat. Ann. § 44-9-3(A)(2)).

332.    Defendants' acts and omissions were made knowingly, as defined in the New Mexico Fraud Against Taxpayers Act (N.M. Stat. Ann. § 44-9-2(C)(1-3)).

333.    Defendants' acts and omissions were material, as used  in the New Mexico Fraud Against Taxpayers Act.

334.    The State, unaware of the false and fraudulent nature of Defendants' acts and omissions, paid and continues to pay claims that would not be paid but for Defendants' acts and omissions.

335.    Because of the Defendants' acts and omissions, the State has sustained damages, and continues to sustain damages, in substantial amount to be determined at trial.

336.    The State is additionally entitled to the maximum civil penalty for each and every violation of the False Claims Act.

## COUNT XXVI

### New York False Claims Act

337.    The allegations alleged in the foregoing paragraphs are alleged as though fully set forth in this paragraph.

338.    Because of the acts and omissions described above, Defendants are liable for treble damages and penalties under the New York False Claims Act (N.Y. State Fin. Law §§187-194).

339.    The term "State" as used in this Count shall have the meaning as defined in the New York False Claims Act, including the State of New York, any agency of State government, county, municipality and other entities (N.Y. State Fin. Law §188(7)).

340.    Through the acts and omissions described above, Defendants knowingly presented or caused to be presented false or fraudulent claims for payment or approval within the meaning of the New York False Claims Act (N.Y. State Fin. Law §189(1)(a)).

341.    Through the acts and omissions described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim, within the meaning of New York False Claims Act (N.Y. State Fin. Law §189(1)(b)).

342.    Defendants' acts and omissions were made knowingly, as defined in the New York False Claims Act (N.Y. State Fin. Law §188(a)-(c)).

343.    Defendants' acts and omissions were material, as defined in the New York False Claims Act (N.Y. State Fin. Law §188(5)).

344.    The State, unaware of the false and fraudulent nature of Defendants' acts and omissions, paid and continues to pay claims that would not be paid but for Defendants' acts and omissions.

345.    Because of the Defendants' acts and omissions, the State has sustained damages, and continues to sustain damages, in substantial amount to be determined at trial.

346.    The State is additionally entitled to the maximum civil penalty for each and every violation of the False Claims Act.

## COUNT XXVII

### North Carolina False Claims Act

347.    The allegations alleged in the foregoing paragraphs are alleged as though fully set forth in this paragraph.

348.    Because of the acts and omissions described above, Defendants are liable for treble damages and penalties under the North Carolina False Claims Act (N.C. Gen. Stat. §§ 1-605 *et seq.*).

349.    The term "State" as used in this Count shall have the meaning as used in the North Carolina False Claims Act, including the State of North Carolina, any officer, employee, or agent of the State of North Carolina, or any contractor, grantee, or other recipient of money or property to be spent or used on behalf of the State of North Carolina or to advance a program or interest therewith. (N.C. Gen. Stat. § 1-606(2)).

350.     Through the acts and omissions described above, Defendants knowingly presented or caused to be presented false or fraudulent claims for payment or approval within the meaning of the North Carolina False Claims Act (N.C. Gen. Stat. § 1-607(a)(1)).

351.     Through the acts and omissions described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim, within the meaning of North Carolina False Claims Act (N.C. Gen. Stat. § 1-607(a)(2)).

352.     Defendants' acts and omissions were made knowingly, as defined in the North Carolina False Claims Act (N.C. Gen. Stat. § 1-606(4)(a-c)).

353.     Defendants' acts and omissions were material, as defined in the North Carolina False Claims Act (N.C. Gen. Stat. § 1-606(6)).

354.     The State, unaware of the false and fraudulent nature of Defendants' acts and omissions, paid and continues to pay claims that would not be paid but for Defendants' acts and omissions.

355.     Because of the Defendants' acts and omissions, the State has sustained damages, and continues to sustain damages, in substantial amount to be determined at trial.

356.     The State is additionally entitled to the maximum civil penalty for each and every violation of the False Claims Act.

## COUNT XXVIII

### Oklahoma False Claims Act

357.     The allegations alleged in the foregoing paragraphs are alleged as though fully set forth in this paragraph.

358.     Because of the acts and omissions described above, Defendants are liable for treble damages and penalties under the Oklahoma Medicaid False Claims Act (63 Okl. Stat. § 5053 *et seq.*).

359.     The term "State" as used in this Count shall have the meaning as defined in the Oklahoma Medicaid False Claims Act, including the State of Oklahoma, any agency of State government, county, municipality and other entities (63 Okl. Stat. § 5053).

360.     Through the acts and omissions described above, Defendants knowingly presented or caused to be presented false or fraudulent claims for payment or approval within the meaning of the Oklahoma Medicaid False Claims Act (63 Okl. Stat. § 5053.1(B)(1)).

361.     Through the acts and omissions described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim, within the meaning of Oklahoma Medicaid False Claims Act (63 Okl. Stat. § 5053.1(B)(2)).

362.     Defendants' acts and omissions were made knowingly, as defined in the Oklahoma Medicaid False Claims Act (63 Okl. Stat. § 5053.1(A)(2)(a)-(c)).

363.     Defendants' acts and omissions were material, as defined in the Oklahoma Medicaid False Claims Act (63 Okl. Stat. § 5053.1(A)(3)).

364.     The State, unaware of the false and fraudulent nature of Defendants' acts and omissions, paid and continues to pay claims that would not be paid but for Defendants' acts and omissions.

365.     Because of the Defendants' acts and omissions, the State has sustained damages, and continues to sustain damages, in substantial amount to be determined at trial.

366.     The State is additionally entitled to the maximum civil penalty for each and every violation of the False Claims Act.

## COUNT XXIX

### Rhode Island – State False Claims Act

367.     The allegations alleged in the foregoing paragraphs are alleged as though fully set forth in this paragraph.

368.    Because of the acts and omissions described above, Defendants are liable for treble damages and penalties under Rhode Island's State False Claims Act (R.I. Gen. Laws §§ 9-1.1 *et seq.*).

369.    The term "State" as used in this Count shall have the meaning as defined in Rhode Island's State False Claims Act, including the State of Rhode Island, any agency of State government, county, municipality and other entities (R.I. Gen. Laws § 9-1.1-2(a)).

370.    Through the acts and omissions described above, Defendants knowingly presented or caused to be presented false or fraudulent claims for payment or approval within the meaning of Rhode Island's State False Claims Act (R.I. Gen. Laws § 9-1.1-3(a)(1)).

371.    Through the acts and omissions described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim, within the meaning of Rhode Island's State False Claims Act (R.I. Gen. Laws § 9-1.1-3(a)(2)).

372.    Defendants' acts and omissions were made knowingly, as defined in Rhode Island's State False Claims Act (R.I. Gen. Laws § 9-1.1-3(b)(1)-(3)).

373.    Defendants' acts and omissions were material, as defined in Rhode Island's State False Claims Act (R.I. Gen. Laws § 9-1.1-3(b)(4)).

374.    The State, unaware of the false and fraudulent nature of Defendants' acts and omissions, paid and continues to pay claims that would not be paid but for Defendants' acts and omissions.

375.    Because of the Defendants' acts and omissions, the State has sustained damages, and continues to sustain damages, in substantial amount to be determined at trial.

376. The State is additionally entitled to the maximum civil penalty for each and every violation of the State False Claims Act.

## COUNT XXX

### Tennessee False Claims Act

377. The allegations alleged in the foregoing paragraphs are alleged as though fully set forth in this paragraph.

378. Because of the acts and omissions described above, Defendants are liable for treble damages and penalties under the Tennessee False Claims Act (Tenn. Code Ann. §§ 4-18-101 *et seq.*).

379. The term "State" as used in this Count shall have the meaning as used in the Tennessee False Claims Act, including the State of Tennessee, any employee, officer, or agent of the State of Tennessee or of any political subdivision thereof, or any contractor, grantee, or other recipient of money, property, or services requested or demanded issued from, or provided by, the state or any political subdivision thereof. (Tenn. Code Ann. § 4-18-102(1)).

380. Through the acts and omissions described above, Defendants knowingly presented or caused to be presented false or fraudulent claims for payment or approval within the meaning of the Tennessee False Claims Act (Tenn. Code Ann. § 4-18-103(a)(1)).

381. Through the acts and omissions described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim, within the meaning of Tennessee False Claims Act (Tenn. Code Ann. § 4-18-103(a)(2)).

382. Defendants' acts and omissions were made knowingly, as defined in the Tennessee False Claims Act (Tenn. Code Ann. § 4-18-102(2)(A)-(C)).

383. Defendants' acts and omissions were material, as used in the Tennessee False Claims Act.

384.     The State, unaware of the false and fraudulent nature of Defendants' acts and omissions, paid and continues to pay claims that would not be paid but for Defendants' acts and omissions.

385.     Because of the Defendants' acts and omissions, the State has sustained damages, and continues to sustain damages, in substantial amount to be determined at trial.

386.     The State is additionally entitled to the maximum civil penalty for each and every violation of the False Claims Act.

## COUNT XXXI

### Tennessee Medicaid False Claims Act

387.     The allegations alleged in the foregoing paragraphs are alleged as though fully set forth in this paragraph.

388.     Because of the acts and omissions described above, Defendants are liable for treble damages and penalties under the Tennessee Medicaid False Claims Act (Tenn. Code Ann. §§ 71-5-181 *et seq.*).

389.     The term "State" as used in this Count shall have the meaning as used in the Tennessee Medicaid False Claims Act, including the State of Tennessee, any employee, officer, or agent of the State of Tennessee, or any contractor, grantee, or other recipient of money or property that is to be spent or used on behalf or to advance a program or interest of the State of Tennessee. (Tenn. Code Ann. § 71-5-182(c)).

390.     Through the acts and omissions described above, Defendants knowingly presented or caused to be presented false or fraudulent claims for payment or approval within the meaning of the Tennessee Medicaid False Claims Act (Tenn. Code Ann. § 71-5-182(a)(1)(A)).

391.     Through the acts and omissions described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent

claim, within the meaning of Tennessee Medicaid False Claims Act (Tenn. Code Ann. § 71-5-182(a)(1)(B)).

392.    Defendants' acts and omissions were made knowingly, as defined in the Tennessee Medicaid False Claims Act (Tenn. Code Ann. § 71-5-182(b)(1)-(3)).

393.    Defendants' acts and omissions were material, as defined in the Tennessee Medicaid False Claims Act (Tenn. Code Ann. § 71-5-182(e)).

394.    The State, unaware of the false and fraudulent nature of Defendants' acts and omissions, paid and continues to pay claims that would not be paid but for Defendants' acts and omissions.

395.    Because of the Defendants' acts and omissions, the State has sustained damages, and continues to sustain damages, in substantial amount to be determined at trial.

396.    The State is additionally entitled to the maximum civil penalty for each and every violation of the False Claims Act.

## COUNT XXXII

### Texas Medical Assistance Program, Damages and Penalties

397.    The allegations alleged in the foregoing paragraphs are alleged as though fully set forth in this paragraph.

398.    Because of the acts and omissions described above, Defendants are liable for treble damages and penalties under Texas' Medical Assistance Program, Damages and Penalties (Tex. Hum. Res. Code Ann. § 32.039).

399.    The term "State" as used in this Count shall have the meaning as used in the Texas' Medical Assistance Program, Damages and Penalties law, including the State of Texas, any agency of State government, county, municipality and other entities.

400.     Through the acts and omissions described above, Defendants knowingly presented or caused to be presented false or fraudulent claims for payment or approval within the meaning of Texas' Medical Assistance Program, Damages and Penalties (Tex. Hum. Res. Code Ann. § 32.039 (b)(1)).

401.     Through the acts and omissions described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim, within the meaning of Texas' Medical Assistance Program, Damages and Penalties (Tex. Hum. Res. Code Ann. § 32.039).

402.     Defendants' acts and omissions were made knowingly, as defined in Texas' Medical Assistance Program, Damages and Penalties (Tex. Hum. Res. Code Ann. § 32.039(a)(4)).

403.     Defendants' acts and omissions were material, as used in Texas' Medical Assistance Program, Damages and Penalties.

404.     The State, unaware of the false and fraudulent nature of Defendants' acts and omissions, paid and continues to pay claims that would not be paid but for Defendants' acts and omissions.

405.     Because of the Defendants' acts and omissions, the State has sustained damages, and continues to sustain damages, in substantial amount to be determined at trial.

406.     The State is additionally entitled to the maximum civil penalty for each and every violation of the Texas Medical Assistance Program.

## COUNT XXXIII

### Texas Award for Reporting Medicaid Fraud, Abuse, or Overcharges

407.     The allegations alleged in the foregoing paragraphs are alleged as though fully set forth in this paragraph.

63

408.    Because of the acts and omissions described above, Defendants are liable for treble damages and penalties under Texas' Award for Reporting Medicaid Fraud, Abuse, or Overcharges (Tex. Gov. Code Ann. § 531.101).

409.    The term "State" as used in this Count shall have the meaning as used in the Texas' Award for Reporting Medicaid Fraud, Abuse, or Overcharges, including the State of Texas, any agency of State government, county, municipality and other entities.

410.    Through the acts and omissions described above, Relator is reporting activity that constitutes fraud or abuse of funds in Medicaid and reports overcharges in Medicaid within the meaning of Texas' Award for Reporting Medicaid Fraud, Abuse, or Overcharges (Tex. Gov. Code. Ann. § 531.1011).

411.    The State, unaware of the activities constituting the fraud or abuse, and continues to pay claims that would not be paid but for Defendants' acts and omissions. (Tex. Gov. Code. Ann. § 531.101(a)).

412.    Relator is entitled an award under Tex. Gov. Code. Ann. § 531.101(b), because of the Defendants' acts and omissions which have caused the State to sustain damages, and the State continues to sustain damages, in substantial amount to be determined at trial.

## COUNT XXXIV

### Texas Medicaid Fraud Prevention Act

413.    The allegations alleged in the foregoing paragraphs are alleged as though fully set forth in this paragraph.

414.    Because of the acts and omissions described above, Defendants are liable for treble damages and penalties under Texas' Medicaid Fraud Prevention (including actions by private persons) (Tex. Hum. Res. Code Ann. §§ 36.001 *et seq.*).

64

415.     The term "State" as used in this Count shall have the meaning as used in the Texas' Medicaid Fraud Prevention Act, including the State of Texas, any agency of State government, county, municipality and other entities.

416.     Through the acts and omissions described above, Defendants knowingly presented or caused to be presented false or fraudulent claims for payment or approval within the meaning of Texas' Medicaid Fraud Prevention (including actions by private persons) (Tex. Hum. Res. Code Ann. § 36.002(6)).

417.     Through the acts and omissions described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim, within the meaning of Texas' Medicaid Fraud Prevention (including actions by private persons) (Tex. Hum. Res. Code Ann. § 36.002(7)).

418.     Defendants' acts and omissions were made knowingly, as defined in Texas' Medicaid Fraud Prevention (including actions by private persons) (Tex. Hum. Res. Code Ann. § 36.0011(a)-(b)).

419.     Defendants' acts and omissions were material, as defined in Texas' Medicaid Fraud Prevention (including actions by private persons) (Tex. Hum. Res. Code Ann. § 36.001(5-a)).

420.     The State, unaware of the false and fraudulent nature of Defendants' acts and omissions, paid and continues to pay claims that would not be paid but for Defendants' acts and omissions.

421.     Because of the Defendants' acts and omissions, the State has sustained damages, and continues to sustain damages, in substantial amount to be determined at trial.

422.     The State is additionally entitled to the maximum civil penalty for each and every violation of the False Claims Act.

## COUNT XXXV

### Vermont False Claims Act

423.    The allegations alleged in the foregoing paragraphs are alleged as though fully set forth in this paragraph.

424.    Because of the acts and omissions described above, Defendants are liable for treble damages and penalties under the Vermont False Claims Act (32 Vt. Stat. Ann. §§ 630 *et seq.*).

425.    The term "State" as used in this Count shall have the meaning as defined in the Vermont False Claims Act, including the State of Vermont, any agency of State government, county, municipality and other entities (32 Vt. Stat. Ann. § 630(8)).

426.    Through the acts and omissions described above, Defendants knowingly presented or caused to be presented false or fraudulent claims for payment or approval within the meaning of the Vermont False Claims Act (32 Vt. Stat. Ann. § 631(a)(1)).

427.    Through the acts and omissions described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim, within the meaning of Vermont False Claims Act (32 Vt. Stat. Ann. § 631(a)(2)).

428.    Defendants' acts and omissions were made knowingly, as defined in the Vermont False Claims Act (32 Vt. Stat. Ann. § 630(2)(A)-(B)).

429.    Defendants' acts and omissions were material, as defined in the Vermont False Claims Act (32 Vt. Stat. Ann. § 630(3)).

430.    The State, unaware of the false and fraudulent nature of Defendants' acts and omissions, paid and continues to pay claims that would not be paid but for Defendants' acts and omissions.

431.    Because of the Defendants' acts and omissions, the State has sustained damages, and continues to sustain damages, in substantial amount to be determined at trial.

432.    The State is additionally entitled to the maximum civil penalty for each and every violation of the False Claims Act.

## COUNT XXXVI

### Virginia Fraud Against Taxpayers Act

433.    The allegations alleged in the foregoing paragraphs are alleged as though fully set forth in this paragraph.

434.    Because of the acts and omissions described above, Defendants are liable for treble damages and penalties under the Virginia Fraud Against Taxpayers Act (Va. Code Ann. § 8.01-216.1 *et seq.*).

435.    The term "Commonwealth" as used in this Count shall have the meaning as defined in the Virginia Fraud Against Taxpayers Act, including the Commonwealth of Virginia, any agency of state government, and any political subdivision of the Commonwealth. (Va. Code Ann. § 8.01-216.2).

436.    Through the acts and omissions described above, Defendants knowingly presented or caused to be presented false or fraudulent claims for payment or approval within the meaning of the Virginia Fraud Against Taxpayers Act (Va. Code Ann. § 8.01-216.3(A)(1)).

437.    Through the acts and omissions described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim, within the meaning of Virginia Fraud Against Taxpayers Act (Va. Code Ann. § 8.01-216.3(A)(2)).

438.    Defendants' acts and omissions were made knowingly, as defined in the Virginia Fraud Against Taxpayers Act (Va. Code Ann. § 8.01-216.3(C)(i)-(iii)).

439.    Defendants' acts and omissions were material, as defined in the Virginia Fraud Against Taxpayers Act (Va. Code Ann. § 8.01-216.2).

440.    The Commonwealth, unaware of the false and fraudulent nature of Defendants' acts and omissions, paid and continues to pay claims that would not be paid but for Defendants' acts and omissions.

441.    Because of the Defendants' acts and omissions, the Commonwealth has sustained damages, and continues to sustain damages, in substantial amount to be determined at trial.

442.    The Commonwealth is additionally entitled to the maximum civil penalty for each and every violation of the Fraud Against Taxpayers Act.

## COUNT XXXVII

### Washington State Medical Fraud False Claims Act

443.    The allegations alleged in the foregoing paragraphs are alleged as though fully set forth in this paragraph.

444.    Because of the acts and omissions described above, Defendants are liable for treble damages and penalties under the Washington State Medical Fraud False Claims Act (RCW § 74.66.005 *et seq.*).

445.    The term "State" as used in this Count shall have the meaning as used in the Washington State Medical Fraud False Claims Act, including the State of Washington, any officer, employee, or agent of a government entity of the State of Washington, or to any contractor, grantee, or other recipient of money or property to be spent or used on a government of the State of Washington's behalf or to advance a program or interest thereof.

446.    Through the acts and omissions described above, Defendants knowingly presented or caused to be presented false or fraudulent claims for payment or approval within the meaning of the Washington State Medical Fraud False Claims Act (RCW § 74.66.020(1)(a)).

447.    Through the acts and omissions described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent

claim, within the meaning of Washington State Medical Fraud False Claims Act (RCW § 74.66.020(1)(b)).

448.     Defendants' acts and omissions were made knowingly, as defined in the Washington State Medical Fraud False Claims Act (RCW § 74.66.010(7)(a)-(b)).

449.     Defendants' acts and omissions were material, as defined in the Washington State Medical Fraud False Claims Act (RCW § 74.66.010(8)).

450.     The State, unaware of the false and fraudulent nature of Defendants' acts and omissions, paid and continues to pay claims that would not be paid but for Defendants' acts and omissions.

451.     Because of the Defendants' acts and omissions, the State has sustained damages, and continues to sustain damages, in substantial amount to be determined at trial.

452.     The State is additionally entitled to the maximum civil penalty for each and every violation of the False Claims Act.

## COUNT XXXVIII

### Wisconsin False Claims Act (Repealed July 14, 2015)

453.     The allegations alleged in the foregoing paragraphs are alleged as though fully set forth in this paragraph.

454.     Because of the acts and omissions described above, Defendants are liable for treble damages and penalties for violations of the Wisconsin False Claims Act that occurred before July 14, 2015. (Wis. Stat. Ann. § 20.931, repealed July 14, 2015).

455.     Under Wisconsin law, the repeal of a statute "shall not remit, defeat or impair any civil or criminal liability for offenses committed, penalties or forfeitures incurred or rights of action accrued under such statute before the repeal thereof…." (Wis. Stat. Ann. § 990.04).

456.     The term "State" as used in this Count shall have the meaning as used in the Wisconsin False Claims Act, including the State of Wisconsin, any agency of State government, county, municipality and other entities.

457.     Through the acts and omissions described above, Defendants knowingly presented or caused to be presented false or fraudulent claims for payment or approval within the meaning of the Wisconsin False Claims Act. (Wis. Stat. Ann. § 20.931(2)(a), repealed July 14, 2015).

458.     Through the acts and omissions described above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim, within the meaning of Wisconsin False Claims Act. (Wis. Stat. Ann. § 20.931(2)(b), repealed July 14, 2015).

459.     Defendants' acts and omissions were made knowingly, as defined in the Wisconsin False Claims Act. (Wis. Stat. Ann. § 20.931(1)(d), repealed July 14, 2015).

460.     The State, unaware of the false and fraudulent nature of Defendants' acts and omissions, paid and continues to pay claims that would not be paid but for Defendants' acts and omissions.

461.     Because of the Defendants' acts and omissions, the State has sustained damages, and continues to sustain damages, in substantial amount to be determined at trial.

462.     The State is additionally entitled to the maximum civil penalty for each and every violation of the False Claims Act.

### PRAYER

WHEREFORE, Relator prays for judgment against Defendants as follows:

463.     That Defendants cease and desist from violating 31 U.S.C. § 3729 *et seq*. and the analogous state laws cited above;

464.    That this Court enter judgment against Defendants in an amount equal to three times the amount of damages the United States and the named plaintiff states have sustained because of Defendants' actions, plus the maximum civil penalties provided for each violation of 31 U.S.C. § 3729 *et seq.*, and the analogous state laws cited above;

465.    That Relator be awarded the maximum amount relators share allowed pursuant to 31 U.S.C. § 3730(d) and the analogous state laws cited above;

466.    That Relator be awarded all costs of this action, including attorney's fees and expenses pursuant to 31 U.S.C. §3730(d) and analogous state laws cited above;

467.    That the United States and plaintiff states be awarded their costs and all other relief provided by law;

468.    For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

469.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands a jury trial.

Dated: April 1, 2021                    BEHN & WYETZNER, CHARTERED

                                        /s/ Linda Wyetzner
                                        Linda Wyetzner
                                        lwyetzner@behnwyetzner.com
                                        Daniel Hergott
                                        dhergott@behnwyetzner.com
                                        Behn & Wyetzner, Chartered
                                        17 N. State Street, Suite 1600
                                        Chicago, IL 60602
                                        312.629.0000 (Ph)
                                        312.237.4162 (Fax)

THE TERRY LAW FIRM, LTD.

/s/ Tim Terry
Tim Terry
tim@theterrylawfirm.com
P.O. Box 2348
Carson City, NV 89702
775-291-9071

SIPRUT PC

/s/ Bruce Howard
Bruce Howard
bhoward@howardlaw.llc
Howard Law, LLC
17 North State Street, Suite 1600
Chicago, IL 60602
312.236.0000
Fax: 312.878.1342

- APPENDIX -
STATE FALSE CLAIMS ACTS

| State | Citation |
|---|---|
| California | California False Claims Act (Cal. Gov't Code §§ 12650–12656) |
| Colorado | Colorado Medicaid False Claims Act (Colo. Rev. Stat. Ann. §25.5-4–305-25.5-4-310) |
| Connecticut | Connecticut False Claims Act (Conn. Gen. Stat. §§ 4-274 – 4-289) |
| Delaware | Delaware False Claims and Reporting Act (6 Del. Code Ann. §§ 1201-1211) |
| District of Columbia | District of Columbia False Claim Act (D.C. Code §§ 2-381.01–2-381.10) |
| Florida | Florida False Claims Act (Fla. Stat. §§ 68.081-68.092) |
| Georgia | Georgia Taxpayer Protection False Claims Act (Ga. Code Ann. §§ 23-3-120 to 23-3-127);<br><br>State False Medicaid Claims Act (Ga. Code Ann. §§ 49-4-168—49-4-168.6) |
| Hawaii | Hawaii False Claims Act: False Claims to the State (Haw. Rev. Stat. §§ 661-21–661-29);<br><br>False Claims to the Counties (Haw. Rev. Stat. §§ 46-171–46-179) |
| Illinois | Illinois False Claims Act (740 Ill. Comp. Stat. §§ 175/1-8) |
| Indiana | Indiana False Claims and Whistleblower Protection Act (Ind. Code §§ 5-11-5.5-1–5-11-5.5-18);<br><br>Indiana Medicaid False Claims and Whistleblower Protection Act, Ind. Code §§ 5-11-5.7-1 5-11-5.7-18 |
| Iowa | Iowa False Claims Act (Iowa Code §§ 685.1–685.7) |
| Louisiana | Louisiana Medical Assistance Programs Integrity Law (La. Rev. Stat. Ann. §§ 46:437–46:440) |
| Massachusetts | Massachusetts False Claims Act (Mass. Gen. Laws ch. 12 §§ 5A–5O ) |
| Michigan | Michigan Medicaid False Claims Act, (Mich. Comp. Laws §§ 400.601–400.615) |
| Minnesota | Minnesota False Claims Act, (Minn. Stat. §§ 15C.01–15C.16) |
| Montana | Montana False Claims Act (Mont. Code Ann. §§ 17-8-401—17-8-416) |
| Nevada | Nevada – Submission of False Claims to State or Local Government (Nev. Rev. Stat. Ann. § 357.010–357.250) |
| New Jersey | New Jersey False Claims Act (N.J. Stat. Ann. §§ 2A:32C-1–2A:32C-17) |
| New Mexico | New Mexico Medicaid False Claims Act, N.M. Stat. Ann. §§ 27-14-1–27-14-15 |
| New York | New York False Claims Act (N.Y. State Fin. Law §§187-194) |
| North Carolina | North Carolina False Claims Act (N.C. Gen. Stat. §§ 1-605–1-618) |
| Oklahoma | Oklahoma Medicaid False Claims Act, Okla. Stat. tit. 63 §§ 5053.1–5053.7) |
| Rhode Island | The State False Claims Act (R.I. Gen. Laws §§ 9-1.1–9.1.1-9) |
| Tennessee | Tennessee False Claims Act (Tenn. Code Ann. §§ 4-18-101–108);<br><br>Tennessee Medicaid False Claims Act (Tenn. Code Ann. § 71-5-181–71-5-185) |

| State | Citation |
|---|---|
| Texas | Medical Assistance Program, Damages and Penalties (Tex. Hum. Res. Code Ann. § 32.039);<br><br>Medicaid Fraud Prevention (including actions by private persons), Tex. Hum. Res. Code Ann. §§ 36.001–36.132;<br><br>Award for Reporting Medicaid Fraud, Abuse, or Overcharges (Tex. Gov. Code Ann. §§ 531.101–531.1203) |
| Vermont | Vermont False Claims Act (Vt. Stat. Ann. tit. 32, §§ 630–642) |
| Virginia | Virginia Fraud Against Taxpayers Act (FATA) (Va. Code Ann. §§ 8.01-216.1–8.01-216.19) |
| Washington | Washington State Medicaid Fraud False Claims Act (RCW §§ 74.66.005–74.66.130) |
| Wisconsin | Wis. Stat. § 20.931 *et seq.*, (repealed July 14, 2015) |