# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| United States of America, *ex rel.* Patrick Lupinetti, | |
| Plaintiff, | |
| v. | No. 1:19-cv-00825 |
|  | Judge Thomas M. Durkin |
| Exeltis USA, Inc., *et al.*, | |
| Defendants. | |

### <u>Defendants' Joint Memorandum of Law in Support of Their Motions to Dismiss the First Amended Complaint</u>

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... ii

INTRODUCTION .....................................................................................................................1

BACKGROUND .......................................................................................................................3

     A.    Prenatal Vitamins Are Important. .........................................................................3

     B.    Prescription Prenatal Vitamin Coverage Is Expressly Mandated by Statute and Regulation. .................................................................................................4

     C.    Relator's Allegations. ...........................................................................................6

LEGAL STANDARD .................................................................................................................8

ARGUMENT .............................................................................................................................8

I.     The Public Disclosure Bar Forecloses Relator's Case.......................................................8

II.    Relator Does Not Plausibly Plead The Necessary Elements Under The False Claims Act.............................................................................................................................13

     A.    Relator Fails to Allege Defendants Caused the Submission of Any False Claims. ...............................................................................................................13

          1.    Relator Fails to Plead the Existence of Any Claim Made to the Government............................................................................................13

          2.    The Amended Complaint Alleges No False Statement. ............................16

     B.    The Alleged False Statements Are Not Material Because CMS Has Stated that Prescription Prenatal Vitamins Must Be Covered Regardless of Their FDA Approval Status...........................................................................................17

     C.    Relator Fails Plausibly to Plead Scienter and Impermissibly Lumps All Defendants Together..........................................................................................20

III.    The Court Should Dismiss This Case With Prejudice. .....................................................23

CONCLUSION.........................................................................................................................24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*United States ex rel. Ailabouni v. Advoc. Health & Hosps. Corp.*,
No. 13-CV-1826, 2017 WL 4310640 (N.D. Ill. Sept. 28, 2017) ..............................................23

*United States ex rel. Ambrosecchia v. Paddock Labs., LLC*,
No. 4:12CV2164, 2015 WL 5605281 (E.D. Mo. Sept. 23, 2015), *aff'd*, 855
F.3d 949 (8th Cir. 2017) .............................................................................................................9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................................................................................................................8

*Bellevue v. Universal Health Servs. of Hartgrove, Inc.*,
867 F.3d 712 (7th Cir. 2017) ..............................................................................................8, 23

*United States ex rel. Bellevue v. Universal Health Servs. of Hartgrove Inc.*,
No. 11 C 5314, 2015 WL 5873292 (N.D. Ill. Oct. 5, 2015), *aff'd*, 867 F.3d
712 (7th Cir. 2017) ....................................................................................................................23

*United States ex rel. Berkowitz v. Automation Aids*,
No. 13 C 08185, 2017 WL 4570827 (N.D. Ill. July 12, 2017), *aff'd*, 896 F.3d
834 (7th Cir. 2018) ..............................................................................................................20, 21

*United States ex rel. Bogina v. Medline Indus., Inc.*,
809 F.3d 365 (7th Cir. 2016) ...................................................................................................12

*Cause of Action v. Chi. Transit Auth.*,
815 F.3d 267 (7th Cir. 2016) ...............................................................................................9, 12

*United States ex rel. Conrad v. Abbott Labs., Inc.*,
No. 02-11738, 2013 WL 682740 (D. Mass. Feb. 25, 2013) ...............................................9, 11

*United States ex rel. Crews v. NCS Healthcare of Ill., Inc.*,
460 F.3d 853 (7th Cir. 2006) ...................................................................................................14

*Exeltis USA Inc. v. First Databank, Inc.*,
No. 17-cv-04810, 2021 WL 616377 (N.D. Cal. Feb. 17, 2021) ...............................................12

*United States ex rel. Feingold v. AdminaStar Fed., Inc.*,
324 F.3d 492 (7th Cir. 2003) ...............................................................................................9, 10

*Genendo Pharm. N.V. v. Thompson*,
308 F. Supp. 2d 881 (N.D. Ill. 2003) .........................................................................................6

*Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*,
  559 U.S. 280 (2010), *superseded by statute on other grounds*, 31 U.S.C.
  § 3730(e)(4)(A) (Supp. I 2012) .........................................................................11

*United States ex rel. Green v. Serv. Contract Educ. & Training Tr. Fund*,
  843 F. Supp. 2d 20 (D.D.C. 2012) .....................................................................11

*United States ex rel. Grenadyor v. Ukrainian Vill. Pharm., Inc.*,
  772 F.3d 1102 (7th Cir. 2014) ............................................................................14

*United States ex rel. Gross v. AIDS Rsch. All.-Chi.*,
  415 F.3d 601 (7th Cir. 2005) ...............................................................................8

*United States ex rel. Gudur v. Deloitte Consulting LLP*,
  512 F. Supp. 2d 920 (S.D. Tex. 2007), *aff'd per curiam sub nom. United
  States ex rel. Gudur v. Deloitte & Touche*, No. 07-20414, 2008 WL 3244000
  (5th Cir. Aug. 7, 2008) .......................................................................................21

*United States ex rel. Hubert v. Bd. of Educ. of Chi.*,
  No. 16 C 4336, 2018 WL 6248827 (N.D. Ill. Nov. 29, 2018) .........................22, 23

*United States ex rel. Lamers v. City of Green Bay*,
  168 F.3d 1013 (7th Cir. 1999) ............................................................................21

*United States ex rel. Lisitza v. Par Pharm. Cos.*,
  276 F. Supp. 3d 779 (N.D. Ill. 2017), *appeal dismissed*, No. 17-2915, 2017
  WL 8236042 (7th Cir. Oct. 25, 2017).................................................13, 14, 15, 20

*United States ex rel. Marshall v. Woodward, Inc.*,
  812 F.3d 556 (7th Cir. 2015) ..............................................................................19

*United States ex rel. McGee v. IBM Corp.*,
  81 F. Supp. 3d 643 (N.D. Ill. 2015) ....................................................................12

*United States ex rel. Osheroff v. Humana, Inc.*,
  776 F.3d 805 (11th Cir. 2015) ............................................................................11

*United States ex rel. Petratos v. Genentech, Inc.*,
  141 F. Supp. 3d 311 (D.N.J. 2015), *aff'd on other grounds*, 855 F.3d 481 (3d
  Cir. 2017) ...........................................................................................................23

*United States ex rel. Petratos v. Genentech Inc.*,
  855 F.3d 481 (3d Cir. 2017)................................................................................19

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
  631 F.3d 436 (7th Cir. 2011) ................................................................8, 20, 21, 22

*United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*,
    836 F.3d 770 (7th Cir. 2016) ............................................................................12, 21

*United States ex rel. Prose v. Molina Healthcare of Ill., Inc.*,
    No. 17 C 6638, 2020 WL 3050342 (N.D. Ill. June 8, 2020), *appeal docketed*,
    No. 20-2243 (7th Cir. July 9, 2020)................................................................18, 23

*United States ex rel. Purcell v. MWI Corp.*,
    807 F.3d 281 (D.C. Cir. 2015) .................................................................................21

*United States ex rel. Schagrin v. LDR Indus., LLC*,
    No. 14 C 9125, 2018 WL 6064699 (N.D. Ill. Nov. 20, 2018)..........................20, 22

*Schering-Plough Healthcare Prods., Inc. v. Schwarz Pharma, Inc.*,
    586 F.3d 500 (7th Cir. 2009) ....................................................................................6

*Schindler Elevator Corp. v. United States ex rel. Kirk*,
    563 U.S. 401 (2011)..............................................................................................9, 10

*United States ex rel. Sheet Metal Workers Int'l Ass'n, Loc. Union 20 v. Horning
Invs., LLC*,
    828 F.3d 587 (7th Cir. 2016) ..................................................................................15

*United States ex rel. Springfield Terminal Ry. v. Quinn*,
    14 F.3d 645 (D.C. Cir. 1994)....................................................................................9

*Illinois ex rel. Strakusek v. Omnicare, Inc.*,
    No. 19 C 7247, 2021 WL 308887 (N.D. Ill. Jan. 29, 2021) ...................................22

*United States ex rel. Suarez v. AbbVie Inc.*,
    No. 15 C 8928, 2019 WL 4749967 (N.D. Ill. Sept. 30, 2019)..........................16, 17

*United States ex rel. Thornton v. Pfizer Inc.*,
    No. 16-cv-7142, 2019 WL 1200753 (N.D. Ill. Mar. 14, 2019) ............................14, 15, 18, 19

*United States v. Sanford-Brown, Ltd.*,
    840 F.3d 445 (7th Cir. 2016) .......................................................................15, 17, 18

*United States ex rel. Gray v. UnitedHealthcare Ins. Co.*,
    No. 15-cv-7137, 2018 WL 2933674 (N.D. Ill. June 12, 2018)...................... *passim*

*United States v. Walgreen Co.*,
    417 F. Supp. 3d 1068 (N.D. Ill. 2019) .........................................................4, 15, 22

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
    136 S. Ct. 1989 (2016)...............................................................................14, 18, 20

**Statutes and Regulations**

21 U.S.C. § 331 ................................................................................................6

21 U.S.C. § 337(a) ............................................................................................6

31 U.S.C. § 3729(a)(1) ....................................................................................14

31 U.S.C. § 3729(b)(1)(A) ..............................................................................20

31 U.S.C. § 3730(e)(4) ..........................................................................8, 9, 11

42 U.S.C. § 1396r–8(d)(2) ..................................................................1, 4, 16, 20

42 C.F.R. § 423.100 ........................................................................................20

42 C.F.R. § 447.512(b) ....................................................................................20

81 Fed. Reg. 5170 (Feb. 1, 2016) .......................................................... *passim*

*Folic Acid Preparations, Oral and Parenteral for Therapeutic Use*, 38 Fed. Reg. 20,750 (Aug. 2, 1973) ....................................................................................6

**Rules**

Fed. R. Civ. P. 9(b) ..........................................................................................8

Fed. R. Evid. 201(b) ........................................................................................4

**Other Authorities**

Avion Pharm., LLC, Prenate®, https://prenate.com/ (last visited June 18, 2021) ......................6

John T. Boese & Douglas W. Baruch, *Civil False Claims & Qui Tam Actions* § 6.01 (5th ed., 2021-2 Supp.) ..............................................................23

CMS, *Drug Product Data: Web File Structure and Definitions* (Aug. 2018), https://tinyurl.com/frt7m76a ............................................................................7

CMS, *Drug Products in the Medicaid Drug Rebate Program*, https://tinyurl.com/64naazsz (last visited June 17, 2021) ..............................10

CMS, Release No. 159, *Medicaid Drug Rebate Program Notice* (Dec. 28, 2011), https://tinyurl.com/7w7b48dc .................................................... *passim*

Ctrs. for Disease Control & Prevention (CDC), *Planning for Pregnancy*, https://tinyurl.com/brkw75wc (page last reviewed Apr. 16, 2020) ...................3

Exeltis USA, Inc., *Prescription Products*, VITAFOL®,
https://www.vitafolultra.com/prescription-products/ (last visited June 17,
2021) ....................................................................................................................5

FDA, *Dietary Supplements: Tips for Women*, https://tinyurl.com/ykzyd7r6 (May
29, 2019) ..............................................................................................................3

FDA, *Fortify Your Knowledge About Vitamins*, https://tinyurl.com/2tdesftp (Feb.
21, 2009) ..............................................................................................................3

FDA, *National Drug Code Directory*, https://tinyurl.com/5avxw7h7 (last visited
June 17, 2021) ....................................................................................................10

FDA, *Regulatory Procedures Manual* § 4-1-1 (Revision 08, June 2021),
https://tinyurl.com/4frf82x5 ................................................................................6

FDA, Response to Petition, Docket No. FDA-2009-P-0587 (Feb. 11, 2013),
https://tinyurl.com/2x47svsd ..............................................................................10

Off. of Dietary Supplements, Nat'l Insts. of Health (NIH), *Folate: Fact Sheet for
Consumers*, https://tinyurl.com/zwnmda (updated Mar. 22, 2021) ....................3

Off. of Inspector Gen., U.S. Dep't of Health & Hum. Servs., OEI-03-17-00120,
*One Percent of Drugs with Medicaid Reimbursement Were Not FDA-
Approved* (May 2019), https://tinyurl.com/OIGRep........................................ *passim*

*Products*, MISSION PHARMACAL CO., https://missionpharmacal.com/our-products/
(last visited June 17, 2021) ..................................................................................6

Vertical Pharm., LLC, *Corvite® Fe Iron Supplement Prescribing Information*
(rev. Aug. 2018), http://www.verticalpharma.com/wp-
content/uploads/2019/01/Corvite-FE-PI.pdf........................................................5

Vertical Pharm., LLC, *Products*, OB COMPLETE®,
https://obcomplete.com/product/ (last visited June 17, 2021) ..............................5

## **INTRODUCTION**

In this False Claims Act (FCA) case, Relator Patrick Lupinetti seeks to overrule the judgment of Congress, the Centers for Medicare and Medicaid Services (CMS), and the Food and Drug Administration (FDA).  Relator's complaint alleges that Defendants caused the submission of false claims for prescription prenatal vitamins because those products were not approved drugs under the Food, Drug, and Cosmetic Act (FDCA).  Am. Compl. ¶ 3.  But the federal government has made clear that it is lawful to submit claims for non-FDA-approved prescription prenatal vitamins.  CMS, the allegedly defrauded agency, has repeatedly stated that the federal government will pay for prescription prenatal vitamins regardless of whether they are FDA-approved drugs.

Congress has even required that prescription prenatal vitamins be covered under Medicaid. 42 U.S.C. § 1396r–8(d)(2) (States may "exclude[] from coverage or otherwise restrict[]" "[p]rescription vitamins and mineral products, *except prenatal vitamins*" (emphasis added)). CMS, the payment-authorizing agency, has directly stated that participating States "*must cover prescription prenatal vitamins . . . , regardless of their FDA approval status*."  Off. of Inspector Gen., U.S. Dep't of Health & Hum. Servs., *One Percent of Drugs with Medicaid Reimbursement Were Not FDA-Approved* 1 n.2, 4 n.16 (May 2019) (emphasis added), https://tinyurl.com/OIGRep ("OIG Rep.").  That is why CMS "expect[s]" that "not all" products reimbursed by Medicaid "would be FDA approved," including "prenatal vitamins."  *Id.* App. B at 1.

There is no FCA violation.  Not only have Defendants done exactly what Congress and CMS told them to do (sell prescription prenatal vitamins eligible for Medicaid coverage), but they have done so openly for decades.  Defendants advertise their products as prescription dietary or prenatal supplements and multivitamins (not "prescription only *drugs*").  Am. Compl. ¶¶ 45–46 & Ex. B.  These labels are true and accurate, and the information Relator relies on to allege deceit actually can be found on each of Defendants' product websites.  *Infra* footnote 3.  A number of

Defendants list the products as "unapproved" products with the FDA, and the FDA in turn publishes this information on its website. *Infra* p. 10. CMS also knows that the products are not FDA approved, *see* OIG Rep., *supra*, and yet has said that under the Medicaid statute, "prescription prenatal vitamins . . . qualify as [covered outpatient drugs]," and directed that "states may not restrict or exclude [them] from coverage," 81 Fed. Reg. 5170, 5188 (Feb. 1, 2016). CMS even took a careful look at which prenatal vitamins should be reimbursed by Medicaid and concluded that non-prescription, over-the-counter (OTC) prenatal vitamins were not reimbursable and deleted those products from the Medicaid Drug Rebate Program (MDRP). CMS, Release No. 159, *Medicaid Drug Rebate Program Notice* at 2 (Dec. 28, 2011), https://tinyurl.com/7w7b48dc ("CMS Notice"). Yet CMS continued to reimburse for Defendants' non-FDA approved "<u>prescription</u> prenatal vitamins," and confirmed that they should still be listed in the Medicaid Drug Rebate database of CMS. *Id.*

Express federal policy and practice therefore squarely negate Relator's entire theory. Defendants accurately market their products as prescription prenatal vitamins and properly designate them as "Rx" (as opposed to "OTC" or "over the counter") for their "Drug Type Indicator" in the CMS database. These products also are accurately coded and reported as "Prescription Pre-Natal Vitamin[s]"—a CMS-provided code—for CMS's separately required "Covered Drug Status" category. *See infra* p. 7, 10.

For these reasons, Relator cannot overcome the public disclosure bar, and he further fails to meet the FCA elements of falsity, materiality, and scienter. If Relator's theory prevailed, then *no* prescription prenatal vitamins would be covered under Medicaid, and many women would lose access to these doctor-prescribed vitamins that prevent serious birth defects in infants and other birth complications. Congress, CMS, and the FDA have all worked to ensure that this does not

2

happen, and that Medicaid patients do not lose access to these products.  The Department of Justice and every State named in the amended complaint have declined to intervene, and CMS and all States continue to cover prescription prenatal vitamins to this very day.  This Court should reject Relator's attempt to upend Congress's and CMS's longstanding requirement that prescription prenatal vitamins be covered, regardless of FDA-approval status.  This case should be dismissed with prejudice.

## **BACKGROUND**

### A.    **Prenatal Vitamins Are Important.**

"Defendants are some of the largest manufacturers of prenatal vitamins in the United States," Am Compl. ¶ 17, and their prescription prenatal vitamins contain essential ingredients, including folic acid, that "help prevent major birth defects."  *See* Ctrs. for Disease Control & Prevention (CDC), *Planning for Pregnancy*, https://tinyurl.com/brkw75wc (page last reviewed Apr. 16, 2020); FDA, *Dietary Supplements: Tips for Women*, https://tinyurl.com/ykzyd7r6 (May 29, 2019) ("Folic acid helps prevent birth defects in the baby's brain and spine.").  Prenatal vitamins are generally accepted and promoted as vital to the health of pregnant women and their children.  *See* CDC, *Planning for Pregnancy*, *supra*; FDA, *Fortify Your Knowledge About Vitamins*, https://tinyurl.com/2tdesftp (Feb. 21, 2009) (if you "may become pregnant" or are "in the first trimester of pregnancy, consume adequate synthetic folic acid daily" (emphasis omitted)); Off. of Dietary Supplements, Nat'l Insts. of Health (NIH), *Folate: Fact Sheet for Consumers*, https://tinyurl.com/zwnmda (updated Mar. 22, 2021) ("All women and teen girls who could become pregnant should consume 400 mcg of folic acid daily from supplements, fortified foods, or both in addition to the folate they get from following a healthy eating pattern.").[1]

---

[1]  The Court can take judicial notice of the "agency letters, policy and guidance documents, websites, and other agency data made available to the public . . . by administrative agencies," cited

## B. Prescription Prenatal Vitamin Coverage Is Expressly Mandated by Statute and Regulation.

Recognizing the critical importance of prenatal vitamins to healthy pregnancies, Congress has mandated that all State Medicaid prescription drug programs cover prescription prenatal vitamins.[2] The Medicaid statute permits States to "exclude[] from coverage or otherwise restrict" "[p]rescription vitamins and mineral products, *except prenatal vitamins* and fluoride preparations." 42 U.S.C. § 1396r–8(d)(2) (emphasis added). Consistent with this statutory mandate, CMS has repeatedly stated that "prescription prenatal vitamins . . . qualify as CODs [covered outpatient drugs], [and] states may not restrict or exclude [them] from coverage." 81 Fed. Reg. at 5188. Prescription prenatal vitamins qualify as covered outpatient drugs, regardless of whether they are FDA approved. *See id.* During that rulemaking, CMS responded to comments requesting that it "explain why it may make determinations regarding the COD status of a product when other agencies [like FDA] may make differing statements." *Id.* CMS concluded that "the COD [covered outpatient drug] term is a term used for the purposes of the MDR [Medicaid Drug Rebate] program, and other agencies' statements regarding the term may not be relevant to the MDR [Medicaid Drug Rebate] program." *Id.*

This CMS guidance regarding prescription prenatal vitamins has been consistent. In 2019, the CMS Administrator reiterated that "CMS would expect that not all drugs that received Medicaid reimbursement would be FDA approved" because the Medicaid statute "allows for

---

throughout this brief. *United States ex rel. Gray v. UnitedHealthcare Ins. Co.*, No. 15-cv-7137, 2018 WL 2933674, at *5 n.3 (N.D. Ill. June 12, 2018) (Durkin, J.) (omission in original); *United States v. Walgreen*, 417 F. Supp. 3d 1068, 1100 n.9 (N.D. Ill. 2019) (Blakey, J.) (judicial notice of "government document"); Fed. R. Evid. 201(b).

[2] Congress has expressly provided that, where a State has elected to cover prescription drugs as a Medicaid benefit, the State must cover prescription prenatal vitamins. *See* 42 U.S.C. § 1396a(54). Because every State has elected to cover prescription drugs under their Medicaid program, 42 U.S.C. § 1396r functions as a mandate to cover prescription prenatal vitamins.

reimbursement of certain drugs not approved by FDA." OIG Rep., App. B at 1. "Such excepted products may include prenatal vitamins, fluoride preparations, and alternative treatments available during a drug shortage." *Id.* The accompanying OIG report also plainly stated the policy: "*States must cover prescription prenatal vitamins and fluoride preparations, regardless of their FDA approval status.*" *Id.* at 1 n.2, 4 n.16 (emphasis added).

Consistent with this policy, CMS has expressly differentiated between "prescription prenatal vitamins," which are covered, and "non-prescription (OTC) prenatal vitamins," which are not. In 2011, CMS became "aware of some non-prescription (OTC) products labeled as prenatal vitamins," which were being reimbursed by some States. CMS Notice at 2. In response, CMS determined that these *non-prescription* prenatal vitamins "do not appear to be eligible for coverage under the Medicaid Drug Rebate Program," and therefore "identif[ied] th[ose] products for deletion from the" program. *Id.* But the agency emphasized that "<u>prescription</u> prenatal vitamins continue to meet the definition of a covered outpatient drug and are rebate-eligible." *Id.* CMS also acknowledged that it identified these products by their "NDC number." *Id.* Neither during nor since CMS's review did CMS remove Defendants' products from the Medicaid Drug Rebate Program. To the contrary, CMS and the States have continued to reimburse for these prescription prenatal vitamins, in line with federal law and CMS guidance. *E.g.*, Am. Compl. ¶ 116 ("The State . . . continues to pay claims" to the present).

Consistent with this regulatory backdrop, Defendants' prenatal vitamins are, in fact, available only by prescription, which they openly advertise. *Id.* ¶¶ 45–46.[3] Defendants do not,

---

[3] This information is also available on each defendant's product website: Exeltis's Vitafol products (Exeltis USA, Inc., *Prescription Products*, VITAFOL®, https://www.vitafolultra.com/prescription-products/ (last visited June 17, 2021)); Vertical's OB Complete products (Vertical Pharm., LLC, *Products*, OB COMPLETE®, https://obcomplete.com/product/ (last visited June 17, 2021)); Vertical's Corvite Products (Vertical Pharm., LLC, *Corvite® Fe Iron Supplement Prescribing*

however, represent or designate their products as being FDA approved.[4]  As reflected on the product labels identified by Relator, Defendants all accurately market their products as "Dietary Supplement[s]," "Prenatal Supplement[s]," "multi-vitamin/multimineral" supplements, and "Prenatal Multi-vitamin[s]."  *Id.*[5]

### C.    Relator's Allegations.

Relator filed his original *qui tam* complaint under seal in February 2019, Dkt. 1, and in January 2021, the federal government and every State named in the complaint declined to intervene, Dkt. 17.  The case then was unsealed, Dkt. 15, and Relator amended his complaint.  Relator asserts one federal FCA claim, Am. Compl. ¶¶ 101–108, and tacks on thirty-seven state-

---

*Information* (rev. Aug. 2018), http://www.verticalpharma.com/wp-content/uploads/2019/01/Corvite-FE-PI.pdf); Mission's CitraNatal products (*Products*, MISSION PHARMACAL CO., https://missionpharmacal.com/our-products/ (last visited June 17, 2021)); Avion's Prenate products (Avion Pharm., LLC, PRENATE®, https://prenate.com/ (last visited June 18, 2021)).

[4] Prenatal vitamin manufacturers started selling their products as prescription products when a 1973 Federal Register notice from the FDA stated that prescriptions were required for products with over 800 micrograms of folic acid.  *See Folic Acid Preparations, Oral and Parenteral for Therapeutic Use*, 38 Fed. Reg. 20,750 (Aug. 2, 1973).  FDA also has the sole authority to enforce the FDCA and its regulations, 21 U.S.C. §§ 331, 337(a), and it has never asserted Defendants' product labels are false, misleading, or otherwise actionable, despite being fully aware of Defendants' practices.  Meanwhile, it is CMS's purview to dictate covered outpatient drugs, and CMS *requires* States to cover "prescription prenatal vitamins" regardless of their FDA approval status.

[5] Relator specifically alleges that Mission's CitraNatal prenatal products are "subject to FDA approval."  Am. Compl. ¶ 46 n.4 (citing warning letters issued to *other* manufacturers); *id.* ¶ 84 (citing 2018 guidance about CBD oil).  The Court should reject these extra allegations, since "[s]tatements of lower-level agency officials likewise do not rise to the level of final agency action-even when they are contained in warning letters or other official regulatory correspondence." *Genendo Pharm. N.V. v. Thompson*, 308 F. Supp. 2d 881, 885 (N.D. Ill. 2003) (Andersen, J.); *Schering-Plough Healthcare Prods., Inc. v. Schwarz Pharma, Inc.*, 586 F.3d 500, 508 (7th Cir. 2009) ("[L]etters from subordinate officials of the FDA . . . are not final agency action binding on the district court . . . ."); FDA, *Regulatory Procedures Manual* § 4-1-1 (Revision 08, June 2021), https://tinyurl.com/4frf82x5 ("A Warning Letter is informal and advisory.  It communicates the agency's position on a matter, but it does not commit FDA to taking enforcement action.  For these reasons, FDA does not consider Warning Letters to be final agency action on which it can be sued.").

law claims, *id.* ¶¶ 109–462. All of Relator's claims rest on the same theory: He claims that seeking reimbursement for Defendants' prescription prenatal vitamins is false and fraudulent under the FCA because those vitamins are not FDA approved. *E.g.*, *id.* ¶¶ 3, 35–37.

Relator's amended complaint challenges three categories of statements.

First, Relator challenges the products' labels. He asserts that Defendants cannot use "Prescription," "Prescription Only," or "Rx" markings because the products are not "drugs that have been approved as prescription only by the FDA." *Id.* ¶¶ 39–40. Likewise, Relator asserts that "[b]ecause Defendants' products are dietary supplements, not drugs, Defendants are not permitted to display an NDC [National Drug Code] on their products." *Id.* ¶ 50. But Relator does not (and cannot) allege that any of this information is included with any claim, or how any omission made any claim fraudulent. Nor does he allege that any of this information was not known by CMS when it has authorized payment.

Second, Relator identifies allegedly false representations to CMS. He contends that Defendants falsely report to CMS their products with the "Drug Type Indicator" of "1 = Rx." Am. Compl. ¶¶ 57–60. But CMS defines "Rx" as meaning "prescription," and says nothing to suggest that this code implies any representation about FDA approval-status. CMS, *Drug Product Data: Web File Structure and Definitions* at 2 (Aug. 2018), https://tinyurl.com/frt7m76a. And, CMS *separately* requires participants to designate their "Covered Outpatient Drug (COD) Status" and provides manufacturers the option of selecting "Prescription Pre-Natal Vitamin or Fluoride." *Id.* at 4. CMS is fully aware of all these statements.

Relator also asserts that Defendants have misrepresented an "NDC or monograph approval date," because "their products are not approved by the FDA." Am. Compl. ¶ 61. At the same time, he acknowledges that "*CMS instructed* prenatal vitamin manufacturers to use a proxy date

of September 30, 1990 for the FDA approval date," consistent with the understanding that prescription prenatal vitamins were never FDA-approved drugs.  *Id.* ¶ 61 n.5 (emphasis added).

Third, Relator alleges that Defendants made misstatements about their product status to private drug compendia companies.  Am. Compl. ¶¶ 65–69.  However, Relator does not explain how those designations are inconsistent with the federal guidance, or how they caused any false claim to the government, or how this in any way changed CMS's well-publicized knowledge of the facts underlying the statements.

Each of these allegedly false statements rest on the flawed premise that because the products are not FDA-approved drugs, Defendants cannot call them prescription prenatal vitamins.

## LEGAL STANDARD

A complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Additionally, it is well established that the FCA 'is an anti-fraud statute and claims under it are subject to the heightened pleading requirements of Rule 9(b).'"  *Gray*, 2018 WL 2933674, at *1 (Durkin, J.); Fed. R. Civ. P. 9(b).  "In adding flesh to the bones" of Rule 9(b), the Seventh Circuit requires a relator to "describe the 'who, what, when, where, and how' of the fraud."  *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011). "[C]onclusory allegations" that "shed no light on the nature or content of the individual forms" or "when any payments occurred," "do[] not satisfy" this requirement.  *United States ex rel. Gross v. AIDS Rsch. All.-Chi.*, 415 F.3d 601, 605 (7th Cir. 2005).

## ARGUMENT

### I.     The Public Disclosure Bar Forecloses Relator's Case.

Relator's claims are foreclosed by the FCA's public disclosure bar, 31 U.S.C. § 3730(e)(4); *Bellevue v. Universal Health Servs. of Hartgrove, Inc.*, 867 F.3d 712, 716–17 (7th Cir. 2017).  The

public disclosure bar requires that a "court shall dismiss an action or claim under this section . . . if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed," in, among other things, a "Federal report, hearing, audit, or investigation," or "from the news media." 31 U.S.C. § 3730(e)(4)(A)(ii)–(iii). Courts "engage in a three-step analysis" when analyzing potential public disclosures:  (1) whether the relator's allegations were publicly disclosed; (2) if so, whether the relator's claims are "'based upon,' *i.e.*, 'substantially similar to,' those publicly disclosed allegations" or transactions; and, (3) if they are, whether the relator qualifies as an "original source." *Cause of Action v. Chi. Transit Auth.*, 815 F.3d 267, 274 (7th Cir. 2016).

The public disclosure bar thus forecloses FCA actions when "the critical elements of [a relator's] allegations of fraud [are] in the public domain." *United States ex rel. Feingold v. AdminaStar Fed., Inc.*, 324 F.3d 492, 496 (7th Cir. 2003); *United States ex rel. Springfield Terminal Ry. v. Quinn*, 14 F.3d 645, 654–55 (D.C. Cir. 1994) (the critical elements need not be disclosed in one place). "[T]he Government's possession of the information exposing a fraud is *alone* sufficient to trigger the public-disclosure bar." *Cause of Action*, 815 F.3d at 275 (emphasis added).

"[C]onsistent with the generally broad scope of the FCA's public disclosure bar," a federal "report" is defined broadly as "'something that gives information' or a 'notification.'" *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 407–08 (2011).  CMS data files, FDA product listings, and federal government rulemakings and guidance all are federal reports under the public disclosure bar.  *See United States ex rel. Conrad v. Abbott Labs., Inc.*, No. 02-11738, 2013 WL 682740, at *4 (D. Mass. Feb. 25, 2013); *United States ex rel. Ambrosecchia v. Paddock*

*Labs., LLC*, No. 4:12CV2164, 2015 WL 5605281, at *4–6 (E.D. Mo. Sept. 23, 2015) (same), *aff'd*, 855 F.3d 949 (8th Cir. 2017); *Feingold*, 324 F.3d at 496 (same).

Under these standards, Relator's claims are barred for two key reasons.

First, all the material factual allegations underlying Relator's case have been disclosed in federal reports. The representations to CMS that Relator challenges were disclosed in the CMS Medicaid Drug Rebate Program data file, making them publicly available for years. CMS, *Drug Products in the Medicaid Drug Rebate Program*, https://tinyurl.com/64naazsz (last visited June 17, 2021) ("MDRP Data Files"). FDA's public website likewise includes allegedly false product labels (for a number of Defendants) and also indicates that prescription prenatal vitamins are not approved drugs. FDA, *National Drug Code Directory*, https://tinyurl.com/5avxw7h7 (last visited June 17, 2021); MDRP Data Files.[6]

Other federal reports similarly disclose this information. In 2013, FDA considered a citizen's petition to recognize prenatal vitamins as "generally recognized as safe and effective (GRAS/E) prescription drug products." FDA, Response to Petition at 1, Docket No. FDA-2009-P-0587 (Feb. 11, 2013), https://tinyurl.com/2x47svsd; *see Schindler*, 563 U.S. at 410–11. In doing so, FDA made clear that *no* prenatal vitamin (prescription or OTC) is FDA approved. In the ensuing years, CMS received comments acknowledging that "prescription prenatal vitamins without [FDA] approved applications meet the definition of a COD [covered outpatient drug]" and asked CMS to "explain why it may make determinations regarding the COD status of a product when other agencies may make differing statements." 81 Fed. Reg. at 5188. Against the backdrop of this public discourse, CMS concluded that "prescription prenatal vitamins . . . qualify as CODs,

---

[6] This can be found by searching by company name under "Labeler," which will show their respective product listings, and by searching each defendant's company name in the MDRP Data Files.

[and] states may not restrict or exclude [them] from coverage." *Id.* CMS further added that "other agencies' statements regarding the term [covered outpatient drug, as it applies to prescription prenatal vitamins] may not be relevant to the [Medicaid] program." *Id.*; *see Conrad*, 2013 WL 682740, at *4–5 (information in Federal Register qualifies as a source of public disclosure). Thus, the federal government has known all the facts underlying Relator's claims for years.

Second, Relator's allegations can all be found in "news media" which has a "broad[] sweep" under the public disclosure bar. *Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 290 (2010), *superseded by statute on other grounds*, 31 U.S.C. § 3730(e)(4)(A) (Supp. I 2012). Courts "have construed [the public disclosure bar] to include readily accessible websites," *United States ex rel. Green v. Serv. Contract Educ. & Training Tr. Fund*, 843 F. Supp. 2d 20, 32 (D.D.C. 2012) (collecting cases), including, for example, defendants' "publicly available websites, which are intended to disseminate information about [their] programs," *United States ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 813–14 (11th Cir. 2015) (involving health clinics). Here, Defendants make clear on their respective products' websites (and labels posted with the FDA) that the prenatal vitamins require a prescription, despite the well-publicized fact that they are not FDA-approved drugs.[7] *See, e.g.*, Am. Compl. ¶¶ 44, 46.

The only way Relator could avoid the public disclosure bar is if he were an "original source"—and he is not. To be an original source, Relator must have "disclosed to the Government the information on which" his claims are based "prior to a public disclosure," or have "knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions." 31 U.S.C. § 3730(e)(4)(B). Relator cannot allege that he made any such disclosure to the government, since every alleged fact has been in the public domain for many years before Relator

---

[7] *See* footnote 3, *supra*.

filed this action in 2019. And Realtor does not "materially add[]" to any of this well-documented information. Indeed, Defendants' longstanding practice of selling their prenatal vitamins as prescription only, in the absence of FDA approval, is "common knowledge." *United States ex rel. Bogina v. Medline Indus., Inc.*, 809 F.3d 365, 370 (7th Cir. 2016).

Relator's case is "not allowed to proceed . . . if he merely 'adds details' to what is already known in outline," *id.*, and, at most, that is all Relator has done. Relator has only taken public facts, "styled them as a complaint," and plugged in "references to the statutes and regulations that support" his own subjective view of the legal consequences of these public facts. *Cause of Action*, 815 F.3d at 282. That fails the public disclosure bar. "[B]ecause [Relator's] allegations are substantially similar"—in fact, identical—to the information in these public disclosures, he "has not 'materially add[ed]' to the public disclosure[s]." *Id.* at 283 (third alteration in original).[8]

"Once a public disclosure is made, the value of a *qui tam* action is lost as the government is aware of the potential of a false claim and can take responsive action itself." *United States ex rel. McGee v. IBM Corp.*, 81 F. Supp. 3d 643, 657 (N.D. Ill. 2015) (Durkin, J.). That is the case here. The amended complaint should be dismissed with prejudice under the public disclosure bar.

---

[8] Relator's references to his former roles as an Assistant Attorney General in New York and as an employee of First Databank add nothing. Am. Compl. ¶¶ 2, 15. He does not point to any relevant inside knowledge that he gained through these roles. For example, Relator's assertions about "pressure[]" from "Defendants" to get "First Databank to reverse course" after that company changed its classification for prenatal vitamins (*id.* ¶ 71) was through a *public* lawsuit (*id.* ¶ 71 n.7), which also revealed that "Mr. Lupinetti" had "concern[s] that the FDA is not adequately regulating manufacturers' claims." *Exeltis USA Inc. v. First Databank, Inc.*, No. 17-cv-04810, 2021 WL 616377, at *9 (N.D. Cal. Feb. 17, 2021). Relator's "subjective disagreement with" FDA (and CMS) on the treatment of prenatal vitamins "is not a sufficient basis for a fraud claim," and has nothing to do with the relevant legal analysis. *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 780–81 (7th Cir. 2016). Nor does it make him an original source.

## II.    Relator Does Not Plausibly Plead The Necessary Elements Under The False Claims Act.

Relator's complaint also fails to state a claim on the merits.  Under the FCA, a relator "must allege that (1) [defendant] made a statement in order to receive money from the government; (2) the statement was false; (3) [defendant] knew the statement was false; and (4) the false statement was material to the government's decision to pay or approve the false claim."  *Gray*, 2018 WL 2933674, at *4 (Durkin, J.).  Relator fails to establish each element as a matter of law, because the federal government has clearly and consistently maintained that "prescription prenatal vitamins" may be sold and "must [be] cover[ed]" by Medicaid "regardless of their FDA approval status."  *E.g.*, OIG Rep. at 1 n.2.  In addition, the amended complaint fails to meet Rule 9(b)'s heightened pleading standard because it relies on group pleading.

### A.    Relator Fails to Allege Defendants Caused the Submission of Any False Claims.

Relator alleges that Defendants violated the FCA by: (1) "us[ing] the 'Rx' or 'Rx Only' marking on their products, websites, and other marketing material"; (2) "us[ing] [NDCs]" on their products; (3) providing the "'Drug Type' indicator" of 1 for "Rx," as well as an "approval date" for their products in rebate agreements with CMS; and (4) providing unspecified information to drug compendia companies "so that their products would be identified as 'prescription' products." Am. Compl. ¶¶ 36, 59–61, 68–69.  These allegations fail because (1) Relator has not alleged that these statements are connected to any claim for payment, and (2) even if they were, the statements cannot be false because they are consistent with the federal regulatory regime for prenatal vitamins.

#### 1.    Relator Fails to Plead the Existence of Any Claim Made to the Government.

Even though "[t]he *sine qua non* of an FCA claim is the submission of a claim that is actually false," *United States ex rel. Lisitza v. Par Pharm. Cos.*, 276 F. Supp. 3d 779, 791 (N.D.

Ill. 2017) (Tharp, J.), none of the allegedly false statements in this case constitute a "*claim for payment or approval*," 31 U.S.C. § 3729(a)(1)(A)–(B) (emphasis added).

Relator does not and cannot allege that Defendants' mere labeling or its designations with drug compendia are claims for payment. Relator also does not allege that the statements to CMS for product listing have been associated with any actual claim. Thus, even if the statements were false, they are not actionable under the FCA. *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2003 (2016) ("The [FCA] is not 'an all-purpose antifraud statute,' or a vehicle for punishing garden-variety . . . regulatory violations." (citation omitted)).

To the extent Relator is attempting to pursue an implied certification theory, that would fail too. Relator seems to suggest that some unspecified claims were implicitly false because they may not have disclosed Defendants' alleged FDA regulatory violations. Am. Compl. ¶¶ 41–42, 44, 53, 73. But the Seventh Circuit has explained that, to sustain an FCA action, "it is not enough to allege, or even prove, that [a defendant] engaged in a practice that violated a federal regulation." *United States ex rel. Grenadyor v. Ukrainian Vill. Pharm., Inc.*, 772 F.3d 1102, 1107 (7th Cir. 2014). "Violating a regulation is not synonymous with filing a false claim." *Id.*; *Lisitza*, 276 F. Supp. 3d at 802 ("[T]he FCA is not a blunderbuss to assure the enforcement of regulations"). Even if the regulation "directly affects payment" of a claim, it is still insufficient. *Lisitza*, 276 F. Supp. 3d at 791. Courts therefore routinely have dismissed FCA suits where relators have alleged a defendant "violated FDA regulations . . . which in turn caused the Government to make 'payments for claims that otherwise would not have been allowed.'" *United States ex rel. Thornton v. Pfizer Inc.*, No. 16-cv-7142, 2019 WL 1200753, at *6–7 (N.D. Ill. Mar. 14, 2019) (Blakey, J.); *see also United States ex rel. Crews v. NCS Healthcare of Ill., Inc.*, 460 F.3d 853, 858 (7th Cir. 2006) (a claim for payment could "not turn into a false claim under the FCA just because [defendant] stored

or handled the drugs improperly"); *Walgreen Co.*, 417 F. Supp. 3d at 1087 (Blakey, J.) (finding theory that a claim was false because the defendant "violated Medicaid regulations by fulfilling the prescription in the first place—cannot withstand scrutiny").

To state a claim for relief, Relator needed to plead any claims for payment that made specific representations about the drugs that were "render[ed] . . . misleading" by the "fail[ure] to disclose the defendant's noncompliance with a statutory, regulatory, or contractual requirement." *United States ex rel. Sheet Metal Workers Int'l Ass'n, Loc. Union 20 v. Horning Invs., LLC*, 828 F.3d 587, 592–93 (7th Cir. 2016). Relator never does so. And Relator cannot do so—no claim for prescription prenatal vitamins could conceivably mislead CMS into thinking that they were FDA approved, because CMS knows these products are not FDA approved and expressly covers them anyway. *See supra* p. 4–8.

Relator's final theory—that the claims were rendered false because they should not have been submitted at all—fares no better. *See* Am. Compl. ¶¶ 73–79. It "is well-settled in the Seventh Circuit that 'a simple demand for payment does not constitute a specific representation about the goods and services provided'" and cannot form the basis of an FCA claim. *Thornton*, 2019 WL 1200753, at *6–7 (dismissing FCA claim when the purported "falsity" was based on a simple request for payment with no allegations regarding the content of any claim); *United States v. Sanford-Brown, Ltd.*, 840 F.3d 445, 447 (7th Cir. 2016) (finding no falsity when relator offered no evidence of "any representations at all in connection with . . . claims for payment, much less false or misleading representations"); *Lisitza*, 276 F. Supp. 3d at 801 (rejecting relator's theory that a claim was false because "the claim itself misrepresents that the [requestor] is legally entitled to payment," not because there was "anything on the claim form that is false expressly or by implication").

### 2.     The Amended Complaint Alleges No False Statement.

Relator's complaint also should be dismissed because none of the challenged statements was false under the federal regulatory regime governing prenatal vitamins.  Relator's theory is that Defendants' statements (in labeling, to CMS, and to drug compendia) that its products are prescription prenatal vitamins were false because the products are not FDA-approved drugs.  Am. Compl. ¶ 35.  All of the labeling identified in the amended complaint and in each defendant's product list (*see id.* ¶ 46 & Ex. B) are true; and, none of the labels challenged says the prenatal vitamins are FDA approved.  Moreover, federal law and regulation make clear that even non-FDA-approved drugs can be accurately described as prescription prenatal vitamins and must be covered by Medicaid.  Relator's falsity allegations fail.

First, the Medicaid Act *requires* States to cover prescription prenatal vitamins.  42 U.S.C. § 1396r–8(d)(2) (States may "exclude[] from coverage or otherwise restrict" "[p]rescription vitamins and mineral products, except prenatal vitamins").  No prenatal vitamins are FDA approved.  For Congress's mandate to have any force, it must permit reimbursement for prescription prenatal vitamins that are not FDA approved.  It is therefore no surprise that CMS has correctly interpreted and applied that mandate to cover "prescription [prenatal] vitamins . . .  regardless of their FDA approval status."  *See* OIG Rep., App. B at 2; 81 Fed. Reg. at 5188.

Second, Relator does not allege there is anything actually false about labeling the products as Rx or telling CMS they are prescription products.  Relator does not allege that Defendants' products at issue are sold "over the counter" or that they can be purchased without a prescription.  Thus, identifying the products as prescription products is both true and consistent with CMS's express differentiation between covered "<u>prescription</u> prenatal vitamins" and non-covered "non-prescription (OTC) prenatal vitamins."  CMS Notice at 2; *United States ex rel. Suarez v. AbbVie*

*Inc.*, No. 15 C 8928, 2019 WL 4749967, at *6–10 (N.D. Ill. Sept. 30, 2019) (Pallmeyer, J.) (dismissing FCA claims premised on purported illegal kickbacks because conduct described in complaint complied with administrative guidance).

Moreover, none of the product labels at issue in the amended complaint, *see* Am. Compl., Ex. B, identify the products as "prescription only *drugs*." Rather, they are accurately labeled and marketed as a prescription "Prenatal Supplement," "Prenatal Multivitamin," "Multi-vitamin/Mineral Supplement," or "Dietary Supplement." *Id.* ¶ 46. Nor does Relator allege that any Defendant falsely represented its products as "FDA-approved" drugs. The use of NDC identifiers and an "approval date" in the CMS database was prompted by CMS, despite knowing these products are not FDA approved. CMS Notice at 2; Am. Compl. ¶ 61 n.5 (recognizing that CMS directed manufacturers to use a proxy approval date).[9] In short, the allegedly false statements underpinning Relator's entire case are true and consistent with express federal policy. *See AbbVie Inc.*, 2019 WL 4749967, at *6–10.

> **B.** **The Alleged False Statements Are Not Material Because CMS Has Stated that Prescription Prenatal Vitamins Must Be Covered Regardless of Their FDA Approval Status.**

Relator also cannot satisfy the FCA's "'rigorous' and 'demanding'" "materiality requirement." *Sanford-Brown*, 840 F.3d at 447. This "strict materiality standard" turns on the federal government's actual payment practices: a relator "must allege that the violations at issue 'are so central . . . that the [government] would not have paid these claims had it known of these violations.'" *Gray*, 2018 WL 2933674, at *5 (Durkin, J.) (omission and alteration in original). It is not enough "that the Government would have the option to decline to pay," or that the relator

---

[9] Relator does not even allege that Defendants Vertical and Avion use "NDC" in connection with their product identifying numbers. *See* Am. Compl. ¶ 47 & Ex. B.

can point to "garden-variety . . . regulatory violations." *Escobar*, 136 S. Ct. at 2003. Rather, if the federal government pays "a particular claim," or "a particular type of claim," despite knowing "that certain requirements were violated, and has signaled no change in position, that is strong evidence that the requirements are not material." *Id.* at 2003–04. Following this precedent, courts routinely dismiss cases at this stage for lack of materiality. *See, e.g.*, *Gray*, 2018 WL 2933674, at *5; *United States ex rel. Prose v. Molina Healthcare of Ill., Inc.*, No. 17 C 6638, 2020 WL 3050342, at *7–8 (N.D. Ill. June 8, 2020) (Kendall, J.), *appeal docketed*, No. 20-2243 (7th Cir. July 9, 2020); *Thornton*, 2019 WL 1200753, at *8 (Blakey, J.).

This case should be dismissed for lack of materiality because CMS has expressly stated that it intends to pay for prescription prenatal vitamins, and that States may not exclude them from coverage, regardless of their FDA-approval status. *See Gray*, 2018 WL 2933674, at *5–6 (no materiality where "CMS has approved the use of in-home examinations" and "has stated that it will not exclude [them], for payment purposes" "despite the drawbacks [relator] recognize[d] in his complaint"). In fact, CMS said it "*expect[s]* that not all drugs that receive[] Medicaid reimbursement" are "FDA approved," including "prenatal vitamins." OIG Rep., App. B at 1 (emphasis added). CMS has gone so far as to mandate that "States must cover prescription prenatal vitamins . . . *regardless of their FDA approval status*." *Id.* at 1 n.1, 4 n.16 (emphasis added). In this context, it is irrelevant to CMS whether "other agencies"—such as FDA—would consider a product a "covered outpatient drug." 81 Fed. Reg. at 5188 (responding to comment that CMS "should not be bound by FDA's recommendations"). Thus, a product's approval and regulation as a prescription drug by FDA is not "a condition of payment," and CMS "pays [this] particular type of claim"—*i.e.*, for *prescription* prenatal vitamins—"in full despite actual knowledge that they are not FDA approved. *Escobar*, 136 S. Ct. at 2003–04.

What is more, CMS, "the subsidizing agency," has "already examined" its own reimbursement practices "and concluded that . . . termination" of prescription prenatal vitamins from Medicaid was not "warranted." *Sanford-Brown*, 840 F.3d at 447. During a review of prenatal vitamin products in 2011, the agency "delet[ed]" "non-prescription (OTC) prenatal vitamins" from the Medicaid Drug Rebate Program, but did not delete prescription prenatal vitamins, and instead confirmed that "prescription prenatal vitamins continue to meet the definition of a covered outpatient drug and are rebate-eligible." CMS Notice at 2. "[T]he government's actual conduct" shows that any "allegedly false statements were immaterial." *See United States ex rel. Marshall v. Woodward, Inc.*, 812 F.3d 556, 563–64 (7th Cir. 2015). Relator "cannot bring a False Claims Act complaint simply because he finds fault with CMS's decision." *Gray*, 2018 WL 2933674, at *6.[10]

Finally, Relator makes the irrelevant allegation that "the government paid substantially more" for Defendants' products "than comparable OTC prenatal vitamins." Am. Compl. ¶ 88. But courts in this Circuit have repeatedly rejected the theory that "anything that inflates the reimbursement amount, causing unnecessary overpayment, is actionable as a 'false claim.'" *See,*

---

[10] To the extent FDA is relevant, Relator has also not alleged "any regulatory action taken by the FDA" against prenatal vitamin manufacturers. *Thornton*, 2019 WL 1200753, at *8. Instead, he points to an inapposite statement about "cannabis and cannabis-derived compounds," and "food containing added CBD or THC"—not prenatal vitamins. *See* FDA, *Statement from FDA Commissioner Scott Gottlieb, M.D., on Signing of the Agriculture Improvement Act and the Agency's Regulation of Products Containing Cannabis and Cannabis-Derived Compounds* (Dec. 20, 2018), https://www.fda.gov/news-events/press-announcements/statement-fda-commissioner-scott-gottlieb-md-signing-agriculture-improvement-act-and-agencys, cited in Am. Compl. ¶ 84 & n.8. Moreover, Relator's allegation that a third-party company's actions (First Databank's) are supportive of materiality are meritless. Relator's pleading is just as devoid of allegations about how Defendants' drug compendia designations were material to the government as they are with respect to how they impacted any actual clam. In any event, "the materiality analysis begins *after* a claim has been submitted," so "it is the Government's materiality decision" that controls, not a third-party company's. *See United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 492 (3d Cir. 2017) (emphasis added).

19

*e.g.*, *Lisitza*, 276 F. Supp. 3d at 793 (Tharp, J.). In any event, because CMS controls and agrees to the reimbursement rates for covered outpatient drugs, *see* 42 C.F.R. §§ 423.100, 447.512(b), even if Defendants' products are priced higher than OTC options, that could not be material to the payment decision. Because the alleged false statements are not material, the amended complaint should be dismissed.

### C. Relator Fails Plausibly to Plead Scienter and Impermissibly Lumps All Defendants Together.

The FCA's scienter element is "rigorous," *Escobar*, 136 S. Ct. at 2002, and should be "strict[ly] enforce[d]." *United States ex rel. Schagrin v. LDR Indus., LLC*, No. 14 C 9125, 2018 WL 6064699, at *6 (N.D. Ill. Nov. 20, 2018) (Durkin, J.) (alterations in original). It requires at least "deliberate ignorance" or "reckless disregard," 31 U.S.C. § 3729(b)(1)(A)(ii)–(iii), "of the truth or falsity of the information [defendants] provided to the government," *United States ex rel. Berkowitz v. Automation Aids*, 896 F.3d 834, 843 (7th Cir. 2018). Although under Rule 9(b) "knowledge may be pled generally," courts have emphasized that "*fraud* . . . must be pled with particularity," and "*facts*—not conclusions—must be pled from which [knowledge] can be plausibly inferred." *United States ex rel. Berkowitz v. Automation Aids*, No. 13 C 08185, 2017 WL 4570827, at *6 (N.D. Ill. July 12, 2017) (Chang, J.), *aff'd*, 896 F.3d 834 (7th Cir. 2018). And a relator must "provide[] the grounds for [his] suspicions." *Pirelli*, 631 F.3d at 443. Relator fails to meet these standards for three reasons.

First, Defendants have done exactly what the agency charged with administering Medicaid (CMS) and Congress told them to do: seek reimbursement for prescription prenatal vitamins, regardless of their status with FDA. *See* 81 Fed. Reg. at 5188; CMS Notice at 2; OIG Rep. at 1 n.1, 4 n.16; 42 U.S.C. § 1396r–8(d)(2). "Consistent with the need for a knowing violation, the FCA does not reach an innocent, good-faith mistake about the meaning of an applicable rule or

regulation. Nor does it reach those claims made based on reasonable but erroneous interpretations of a defendant's legal obligations." *United States ex rel. Purcell v. MWI Corp.*, 807 F.3d 281, 287–88 (D.C. Cir. 2015) (citation omitted). At the very least, Defendants' interpretation that their products are fairly characterized as prescription prenatal vitamins and are eligible for reimbursement is reasonable *because even CMS agrees with it*.

While the applicable statutory and CMS guidance is clear, Relator's theory reflects, at most, "differences in interpretation growing out of a disputed legal question," which are not actionable under the FCA. *See United States ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013, 1018 (7th Cir. 1999). In reality, Relator "simply ha[s] a subjective disagreement with the other part[ies]"—including Congress and CMS—"on the most prudent course of action" for prescription prenatal vitamins. *See Presser*, 836 F.3d at 780–81. But his subjective disagreement is not actionable. *Id.*; *Lamers*, 169 F.3d at 1018.

Second, Relator's barebones, conclusory allegations regarding scienter are insufficient. He alleges that "Defendants have deliberately misrepresented" their products "to gain a financial advantage," solely to receive "reimbursement from government healthcare programs," and that "Defendants' bottom line," "not . . . law or science," drives this conduct. Am. Compl. ¶¶ 94–98. These allegations are entirely conclusory, and devoid of the "grounds for [his] suspicions" of this allegedly industry-wide intent, rendering them wholly insufficient to plead a claim. *Pirelli*, 631 F.3d at 443. "And profit motive is a *minimum* requirement to plausibly infer a fraud, and does not otherwise fill the factual void in the complaint." *Berkowitz*, 2017 WL 4570827, at *6 & n.19 (rejecting the argument that "a financial motive can support the inference that defendant's actions were not innocent mistakes"); *United States ex rel. Gudur v. Deloitte Consulting LLP*, 512 F. Supp. 2d 920, 954 (S.D. Tex. 2007) ("[E]vidence of profit motive alone is insufficient to demonstrate

21

FCA liability."), *aff'd per curiam sub nom. United States ex rel. Gudur v. Deloitte & Touche*, No. 07-20414, 2008 WL 3244000 (5th Cir. Aug. 7, 2008). If profit motive alone were enough, the element of scienter would be met in *every* FCA action.

Nor is it sufficient for Relator to allege that "Defendants are sophisticated pharmaceutical companies with knowledge of the regulations governing prenatal vitamins." Am. Compl. ¶ 95. Simply alleging that "the falsity of [Defendants'] claims would be 'obvious' to persons 'in the industry,'" is not enough to plead scienter (particularly in light of CMS's statements about prescription prenatal vitamins). *See Schagrin*, 2018 WL 6064699, at *6; *Illinois ex rel. Strakusek v. Omnicare, Inc.*, No. 19 C 7247, 2021 WL 308887, at *14 (N.D. Ill. Jan. 29, 2021) (Pallmeyer, J.) (no scienter where "Relator has not alleged any basis for Defendants' knowledge other than 'obviousness'"). And, if falsity were so "obvious" here, Relator fails to explain why CMS has never denied payment for Defendants' prescription prenatal vitamins (or why FDA has never objected to CMS's regime).

Third, the amended complaint fails Rule 9(b) because of group pleading. *See United States ex rel. Hubert v. Bd. of Educ. of Chi.*, No. 16 C 4336, 2018 WL 6248827, at *7 (N.D. Ill. Nov. 29, 2018) (Leinenweber, J.). Nowhere does the complaint "inform each defendant of the nature of [its] alleged participation in the fraud." *Walgreen*, 417 F. Supp. 3d at 1092–93 (Blakey, J.). Here, Defendants each have different products, with different labels, different prices, different ingredients, and different reasons for selling their products as prescription-only. They cannot all be lumped together. Relator provides no factual allegations to support his unfounded suspicion that each individual defendant company had the same motivations, intent, or knowledge. *See Hubert*, 2018 WL 6248827, at *7 (relator did not plead "any specific facts demonstrating what occurred at the individualized transactional level for each Vendor"). Indeed, when it comes to

trying to add "flesh to the bones" of these generalized assertions, *Pirelli*, 631 F.3d at 441–42, Relator simply refers to "'Defendants' as an undefined group," *United States ex rel. Ailabouni v. Advoc. Health & Hosps. Corp.*, No. 13-CV-1826, 2017 WL 4310640, at *7 (N.D. Ill. Sept. 28, 2017) (Blakey, J.), which "necessarily fails to satisfy Rule 9(b)," *Hubert*, 2018 WL 6248827, at *7.

## III. The Court Should Dismiss This Case With Prejudice.

For the reasons stated above, Relator's legal theory is not viable.[11] The amended complaint's defects are not mere pleading failures, but rather fundamental legal and factual infirmities. A second amendment cannot cure these problems and dismissal with prejudice is thus appropriate on all counts. *See Bellevue*, 867 F.3d at 721 (dismissal with prejudice based on public disclosure bar); *United States ex rel. Bellevue v. Universal Health Servs. of Hartgrove Inc.*, No. 11 C 5314, 2015 WL 5873292, at *3–4 (N.D. Ill. Oct. 5, 2015) (Durkin, J.) (dismissing with prejudice where the theory of liability incorporated regulatory provisions that were "entirely unrelated to Medicaid payment conditions"), *aff'd*, 867 F.3d 712 (7th Cir. 2017); *Prose*, 2020 WL 3050342, at *8 (Kendall, J.) (dismissing amended complaint with prejudice for "fail[ing] to sufficiently allege materiality and/or scienter").

---

[11] Relator's tagalong state-law claims should also be dismissed because he does not say why they should be treated any differently than his federal FCA claims. *See United States ex rel. Petratos v. Genentech, Inc.*, 141 F. Supp. 3d 311, 322 (D.N.J. 2015) ("Because Plaintiff does not provide any allegations . . . differentiating the state claims from the FCA claims, they are dismissed as well.") (collecting cases), *aff'd*, 855 F.3d 481 (3d Cir. 2017); *Hubert*, 2018 WL 6248827, at *10 (dismissing both federal and state claims based on same Rule 9(b), falsity, materiality, and scienter issues). *See also* John T. Boese & Douglas W. Baruch, *Civil False Claims & Qui Tam Actions* § 6.01 (5th ed., 2021-2 Supp.) ("Most state false claims acts with *qui tam* provisions track the language of the federal provisions.").

## **CONCLUSION**

The Court should dismiss all counts in the amended complaint with prejudice.

June 18, 2021

Respectfully submitted,

*/s/ Daniel D. Rubinstein*
Daniel D. Rubinstein
drubinstein@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Tel:  (312) 835-7000
Fax:  (312) 853-7036

Mark D. Hopson, *pro hac vice forthcoming*
mhopson@sidley.com
Benjamin M. Mundel,
*pro hac vice forthcoming*
bmundel@sidley.com
Jillian Sheridan Stonecipher
jstonecipher@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
Tel:  (202) 736-8000
Fax: (202) 736-8000

*Counsel for Exeltis USA, Inc.*

Ryan A. Kurtz, *pro hac vice*
ryan.kurtz@millermartin.com
MILLER & MARTIN PLLC
1180 West Peachtree Street, NW
Regions Plaza Suite 2100
Atlanta, GA 30309
Tel:  (404) 962-6100

Richard C. Rose, *pro hac vice*
richard.rose@millermartin.com
MILLER & MARTIN PLLC
832 Georgia Ave.
Volunteer Building Suite 1200
Chattanooga, TN 37402-2289
Tel:  (423) 756-6600

*Counsel for Avion Pharmaceuticals, LLC*

Lisa M. Noller
lnoller@foley.com
Ryan James Lowry
rlowry@foley.com
FOLEY & LARDNER LLP
321 N. Clark St.
Chicago, IL 60654
Tel:  312-832-4500

John Andrew Tucker, *pro hac vice*
jtucker@foley.com
FOLEY & LARDNER LLP
1 Independent Drive
Suite 1300
Jacksonville, FL 32202
Tel:  (904) 359-2000

*Counsel for Mission Pharmacal Company*

Laura G. Hoey (#650643)
Laura.Hoey@ropesgray.com
Timothy R. Farrell (#6303276)
Timothy.Farrell@ropesgray.com
ROPES & GRAY LLP
191 North Wacker Drive, 32nd Floor
Chicago, IL 60606
Tel:  (312) 845-1200

Stefan P. Schropp, *pro hac vice*
Stefan.Schropp@ropesgray.com
ROPES & GRAY LLP
2099 Pennsylvania Ave., NW
Washington, DC 20003
Tel:  (202) 508-4600

*Counsel for Vertical Pharmaceuticals LLC*

S. Lloyd Smith
Lloyd.smith@bipc.com
BUCHANAN INGERSOLL & ROONEY PC
1737 King Street, Suite 500
Alexandria, VA 22314
Tel:  (703) 836-6620

*Counsel for Women's Choice*
*Pharmaceuticals, LLC*