# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

United States of America,
*ex rel.* Patrick Lupinetti,

Plaintiff,

v.

Exeltis USA, Inc., *et al.*,

Defendants.

No. 1:19-cv-00825
Judge Thomas M. Durkin

**Defendants' Joint Reply in Support of Their Motion to Dismiss
the First Amended Complaint**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................. ii

INTRODUCTION.............................................................................................. 1

ARGUMENT ..................................................................................................... 3

I.      The Public Disclosure Bar Forecloses Relator's Case. ................................. 3

II.     Relator Does Not Plausibly Plead The FCA's Elements.............................. 6

        A.     Relator Does Not Identify Any False Claim Made for Payment. ......... 6

        B.     Relator Fails to Plead Any False Statement........................................ 8

        C.     The Alleged False Statements Are Not Material............................... 11

        D.     Relator Fails to Plausibly Plead Scienter and Impermissibly Lumps All Defendants Together........................................................................ 13

III.    The Court Should Dismiss This Case With Prejudice.................................. 15

CONCLUSION................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*United States ex rel. Beauchamp v. Academi Training Ctr., LLC,*
    816 F.3d 37 (4th Cir. 2016) ................................................................... 3

*United States ex rel. Berkowitz v. Automation Aids,*
    No. 13 C 08185, 2017 WL 4570827 (N.D. Ill. July 12, 2017), *aff'd*, 896 F.3d
    834 (7th Cir. 2018) ................................................................... 14

*United States ex rel. Bogina v. Medline Indus., Inc.,*
    809 F.3d 365 (7th Cir. 2016) ................................................................... 5

*Cause of Action v. Chi. Transit Auth.,*
    815 F.3d 267 (7th Cir. 2016) ................................................................... 4, 5

*Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84,*
    133 F.3d 1054 (7th Cir. 1998) ................................................................... 15

*United States ex rel. Feingold v. AdminaStar Fed., Inc.,*
    324 F.3d 492 (7th Cir. 2003) ................................................................... 4

*United States ex rel. Gray v. UnitedHealthcare Ins. Co.,*
    No. 15-cv-7137, 2018 WL 2933674 (N.D. Ill. June 12, 2018) .................................... 11, 12

*United States ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.,*
    772 F.3d 1102 (7th Cir. 2014) ................................................................... 8, 9, 10

*United States ex rel. Heath v. Wis. Bell, Inc.,*
    760 F.3d 688 (7th Cir. 2014) ................................................................... 5

*United States ex rel. Kietzman v. Bethany Circle of King's Daughters of Madison,
    Ind., Inc.,*
    305 F. Supp. 3d 964 (S.D. Ind. 2018) ................................................................... 13

*United States ex rel. Lisitza v. Par Pharm. Cos.,*
    276 F. Supp. 3d 779 (N.D. Ill. 2017) ................................................................... 6, 8, 10

*United States ex rel. Marshall v. Woodward, Inc.,*
    812 F.3d 556 (7th Cir. 2015) ................................................................... 12

*United States ex rel. McCarthy v. Marathon Techs., Inc.,*
    No. 11-cv-7071, 2014 WL 4924445 (N.D. Ill. Sept. 30, 2014) .................................... 13

*Safeco Ins. Co. of Am. v. Burr,*
    551 U.S. 47 (2007) ................................................................... 13

*United States ex rel. Schutte v. Supervalu Inc.*,
No. 20-2241, 2021 WL 3560894 (7th Cir. Aug. 12, 2021).....................10, 13, 14

*Shmushkovich v. Home Bound Healthcare, Inc.*,
No. 12 C 2924, 2015 WL 7251934 (N.D. Ill. Nov. 17, 2015)...............................7

*Illinois ex rel. Strakusek v. Omnicare, Inc.*,
No. 19 C 7247, 2021 WL 308887 (N.D. Ill. Jan. 29, 2021)............................13, 14

*United States ex rel. Suarez v. AbbVie, Inc.*,
503 F. Supp. 3d 711 (N.D. Ill. 2020)........................................................... 3

*United States ex rel. Suarez v. AbbVie Inc.*,
No. 15 C 8928, 2019 WL 4749967 (N.D. Ill. Sept. 30, 2019)............................ 15

*United States ex rel. Thornton v. Pfizer Inc.*,
No. 16-cv-7142, 2019 WL 1200753 (N.D. Ill. Mar. 14, 2019) ........................... 8

*United States ex rel. Osheroff v. Tenet Healthcare Corp.*,
No. 09-22253-CIV, 2012 WL 2871264 (S.D. Fla. July 12, 2012)........................ 5

*United States v. Sanford-Brown, Ltd.*,
840 F.3d 445 (7th Cir. 2016) ...................................................................... 11

*United States v. Walgreen Co.*,
417 F. Supp. 3d 1068 (N.D. Ill. 2019).......................................................... 15

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
136 S. Ct. 1989 (2016).............................................................................7, 11

## Statutes and Regulation

31 U.S.C. § 3729(a)(1)(A)–(B) ....................................................................... 6

31 U.S.C. § 3730(e)(4)(A)(ii)–(iii) ................................................................... 3

42 U.S.C. § 1396r–8(d)(2) ............................................................................ 9

81 Fed. Reg. 5170 (Feb. 1, 2016) ................................................................... 9

## Other Authorities

CMS, Release No. 159, *Medicaid Drug Rebate Program Notice* (Dec. 28, 2011),
https://tinyurl.com/7w7b48dc.................................................................10, 12

FDA, *National Drug Code Directory*, https://tinyurl.com/5avxw7h7 (last visited
Aug. 23, 2021)......................................................................................... 4

Off. of Inspector Gen., U.S. Dep't of Health & Hum. Servs., *One Percent of Drugs with Medicaid Reimbursement Were Not FDA-Approved* (May 2019), https://tinyurl.com/OIGRep ............................................................................8, 11

**INTRODUCTION**

Relator's opposition brief confirms his False Claims Act (FCA) case should be dismissed with prejudice. As Defendants explained in their motion to dismiss, Relator's case seeks to overrule the considered judgment of Congress, the Centers for Medicare and Medicaid Services (CMS), and the Food and Drug Administration (FDA).

Ignoring the fatal flaws in his complaint, Relator nonetheless argues that Defendants caused the submission of false claims because they labeled their prenatal vitamins as "prescription" even though federal law does not require them to be sold by prescription given they are not FDA approved drugs. *See* Opp'n 1 ("Only drugs that have been approved as prescription only by the Food and Drug Administration ('FDA') or that are not safe for use except under a physician's supervision, legally require a prescription to be dispensed."). This argument does not pass muster.

First, every material fact alleged in this lawsuit was publicly disclosed by the Defendants and the federal government for decades. Defendants have openly displayed on their labels, in their filings with the FDA and CMS, and on their websites that their prenatal vitamins are sold by "prescription." CMS and FDA have long known what products Defendants are selling and that Defendants are reimbursed for these products. Indeed, CMS has expressly acknowledged that *only* "prescription prenatal vitamins" (as opposed to over-the-counter prenatal vitamins) qualify as Medicaid covered outpatient drugs and, to this day, CMS continues to reimburse for these birth-defect-preventing products. Relator's allegation and opposition arguments bring nothing new or different to the above facts known publicly for years, other than his erroneous opinion that Defendants' conduct is unlawful.

Second, there is nothing false, fraudulent, or material about Defendants labeling the products as "prescription prenatal vitamins." As Relator concedes, Defendants do in fact sell their products only when a patient presents a prescription from a healthcare provider. Thus, the product

labels are true. If it were false (or unlawful) to label a prenatal vitamin as prescription based on the decision to sell it that way, there would not be a single lawful prescription prenatal vitamin on the market, even though Congress and CMS have both said "prescription prenatal vitamins" are a lawful category of products that must be reimbursed. No prenatal vitamin could meet Relator's definition of "prescription" because there is no such thing as a prenatal vitamin that is approved by the FDA as a drug. To the contrary, the FDA has publicly *declined* a citizen's petition requesting the FDA to require prenatal vitamins to go through the FDA's drug approval process.

In addition, the federal government has made clear it is lawful to submit claims for prenatal vitamins identified as prescription, even if they are not *required* by federal law to be sold as prescription. Not only have Defendants done exactly what Congress and CMS have allowed them to do (sell prescription prenatal vitamins eligible for Medicaid coverage), they have done so openly for decades. Defendants advertise their products as prescription dietary or prenatal supplements and multivitamins (not "prescription only drugs"). Am. Compl. ¶¶ 45–46 & Ex. B. These labels are accurate.

Relator thus fails to meet the FCA elements of falsity, materiality, and scienter. If Relator's theory prevailed, then no prescription prenatal vitamins would be covered under Medicaid, and many women would lose access to these doctor-prescribed vitamins that prevent serious birth defects in infants and other birth complications. Relator's only response—that over-the-counter prenatal vitamins still would be reimbursed, if they are prescribed by a physician—is contrary to the statute and CMS's own guidance that requires only "prescription prenatal vitamins" be covered for reimbursement, while over-the-counter prenatal vitamins may not even be listed in the Medicaid drug data file. Relator's tortured FCA theory simply fails.

## ARGUMENT

### I.  The Public Disclosure Bar Forecloses Relator's Case.

Relator's opposition confirms his claims are foreclosed by the FCA's public disclosure bar, which requires that a "court shall dismiss an action or claim . . . if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed," in, *inter alia*, a "[f]ederal report, hearing, audit, or investigation," or "from the news media." 31 U.S.C. § 3730(e)(4)(A)(ii)–(iii). The public disclosure bar is designed to preclude claims like this one where a relator seeks to benefit from information already known to the government (and here explicitly approved by Congress, CMS, and the FDA).

As Defendants demonstrated in their motion to dismiss, all of the material allegations underlying Relator's complaint have been disclosed in "federal reports" and "news media," including that Defendants: (1) label their products as prescription prenatal vitamins; (2) seek reimbursement for the products; and (3) have not obtained FDA approval for them as drugs. Defs.' Br. 8–12.[1] Relator does not, and cannot, dispute that all of the material allegations are in the public domain. Yet Relator insists there was no public disclosure because: (1) "'critical elements' of the alleged fraud were not publicly disclosed," and (2) Relator's allegations were based on his own independent investigation, not the public disclosure. Opp'n 21–26 (capitalization altered). Both arguments fail.

First, while Relator admits Defendants' statements on their labels that the products are "Rx" or "prescription" were publicly disclosed, he argues Defendants never disclosed that the

---

[1] Relator does not dispute that the sources cited by Defendants are federal reports or news media for purposes of the public disclosure bar. *See* Opp'n 22–26; *see also United States ex rel. Suarez v. AbbVie, Inc.*, 503 F. Supp. 3d 711, 737 (N.D. Ill. 2020); *United States ex rel. Beauchamp v. Academi Training Ctr., LLC*, 816 F.3d 37, 43 n.6 (4th Cir. 2016) ("Courts have unanimously construed the term 'public disclosure' to include websites and online articles.").

"products should not have been labeled 'Rx' or 'Rx Only.'" Opp'n 24 (emphasis omitted). But the public disclosure bar does not require "fraud" itself to be disclosed, only that "the critical elements of [the] allegations of fraud" must have been publicly disclosed. *United States ex rel. Feingold v. AdminaStar Fed., Inc.*, 324 F.3d 492, 496 (7th Cir. 2003). Here, the critical elements for Relator's alleged fraud were absolutely disclosed: Relator asserts Defendants' prenatal vitamins cannot be labeled as "prescription" because they are dietary supplements, not approved drugs. Am. Compl. ¶¶ 39–44. But the fact that they are dietary supplements and not approved drugs is included on Defendants' product labels and FDA listings; it is also plain from the ingredient list. *Id.* Ex. B; FDA, *National Drug Code Directory*, https://tinyurl.com/5avxw7h7 (last visited Aug. 23, 2021). All of the facts necessary to know of the supposed "fraud" were widely and publicly disclosed for decades.

Second, Relator misunderstands the "based on" requirement of the public disclosure bar. He asserts his claims are not barred because they are "based on [his] independent investigation and insider experience at First DataBank," and not "based upon" the public disclosures. Opp'n 21, 24–25. These claims are demonstrably false. Relator's complaint is replete with citations to Defendants' public disclosures about the prescription status of their products (labels, websites, and FDA listings) as well as public disclosure about their reimbursable status (CMS listing and contracting). Am. Compl. ¶¶ 44–46, 52, 57–62 & Ex. B. Relator does not and cannot point to any material facts he identified that were not first in the public domain. Thus, in all events, how Relator personally "discovered" publicly available facts is irrelevant. The "based on" requirement is satisfied if allegations in a complaint are "'substantially similar to' those publicly disclosed allegations," regardless of their origin. *Cause of Action v. Chi. Transit Auth.*, 815 F.3d 267, 274

4

(7th Cir. 2016).[2]

Finally, Relator is not an original source. As Relator concedes, he is only an original source if he has "knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and [] has voluntarily provided the information to the Government" before filing an FCA action. Opp'n 26 (citing 31 U.S.C. § 3730(e)(4)(B)). Relator does not meet this standard for three reasons.

First, in his entire opposition brief, Relator never identifies a single "new" material fact he provided that was not already in the public domain. While Relator asserts generally that he had conversations with certain Defendants and the government, and conducted research while at First Databank, Opp'n 27, he does not allege anywhere that he uncovered a specific new fact from these efforts that was not already publicly available. *See* Am. Compl. ¶¶ 3, 11–12, 70–71. Certainly, he never identifies anything he uncovered that "materially add[s]" to the dozens of public disclosures about Defendants' sale of prescription prenatal vitamins. *United States ex rel. Bogina v. Medline Indus., Inc.*, 809 F.3d 365, 370 (7th Cir. 2016). Describing a well-known practice and calling it an independently-uncovered fraud does not clear the public disclosure bar. *Id.*; *Cause of Action*, 815 F.3d at 282–83.

Second, Relator is wrong to assert that the fact that Defendants' products do not have a federal legal prescription requirement was "hidden in plain sight." Opp'n 24–25. As identified above, Defendants hid nothing: Defendants identify their products as dietary supplements, not

---

[2] The two cases cited by Relator do not say otherwise. *United States ex rel. Heath v. Wisconsin Bell, Inc.*, 760 F.3d 688, 691 (7th Cir. 2014) was not barred because a publicly disclosed contract was insufficient to establish that any fraud occurred, and private information about other prices and contracts was required; and *United States ex rel. Osheroff v. Tenet Healthcare Corp.*, No. 09-22253-CIV, 2012 WL 2871264, at *3 (S.D. Fla. July 12, 2012) proceeded because the case was based on "independently extrapolated allegations of fraud only after performing an extensive degree of synthesis and analysis," none of which is alleged here.

approved prescription drugs, and as Relator contends, this exposed the alleged fraud because only approved prescription drugs can have a legal prescription requirement. Opp'n 1.

Third, CMS and FDA have been well aware of Defendants' labeling and reimbursement practices for decades. Defs.' Br. 4–6, 8–12. There was and is more than enough information in the public domain for the government to take responsive action if it believed anything Defendants did was false or fraudulent. But to this very day, the government has done the opposite: it continues to reimburse for Defendants' prescription prenatal vitamins because that is what Congress and CMS intended and because Defendants are committing no fraud. Given that all of the facts underlying the alleged fraud have been in the public domain for decades, and Relator has added nothing new, this case should be dismissed based on the public disclosure bar.

## II. Relator Does Not Plausibly Plead The FCA's Elements.

### A. Relator Does Not Identify Any False Claim Made for Payment.

"The *sine qua non* of an FCA claim is the submission of a claim that is actually false." *United States ex rel. Lisitza v. Par Pharm. Cos.*, 276 F. Supp. 3d 779, 791 (N.D. Ill. 2017) (Tharp, J.). But Relator does not identify a single allegedly false "claim for payment or approval," 31 U.S.C. § 3729(a)(1)(A)–(B). Relator's opposition identifies three things he argues are claims. None qualifies.

First, Relator argues that because Defendants' products were labeled as "Rx" or "Rx only," pharmacies kept the products behind the counter. Opp'n 11–12. But a label is not a claim for payment. Nor is the location where a pharmacist keeps a product. Relator cites nothing to suggest that product placement is a claim because no authority supports that view.

Second, Relator argues that submissions to drug compendia companies (which keep data-bases of drug information and can be used by insurance) are false claims. Opp'n 12. But as Relator himself recognizes, statements to compendia are completely separate from any claim for payment,

6

because they are about products generally and are not part of any claim for payment. Am. Compl. ¶¶ 66–67. Again, Relator does not cite a single case that holds that a statement to a compendia constitutes a claim for payment.

Third and finally, Relator argues Defendants caused submissions of false claims because they labeled their products as "Rx." Opp'n 12. But again, Relator does not identify any actual claim for payment or any statement on a claim for payment based on an allegedly false label. "The [FCA] is not 'an all-purpose antifraud statute,' or a vehicle for punishing garden-variety . . . regulatory violations." *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2003 (2016) (citation omitted). Relator must actually allege Defendants submitted (or caused to be submitted) specifically identified claims for payment that were false, and he has not. *Id.* [3]

Relator argues that he is not required to provide the "billing minutia" under Rule 9(b). Opp'n 13 (citing *Shmushkovich v. Home Bound Healthcare, Inc.*, No. 12 C 2924, 2015 WL 7251934, at *6 (N.D. Ill. Nov. 17, 2015) (Durkin, J.)). But as *Shmushkovich* recognizes, the relator must allege that false statements to the government caused the submission of false claims. In that case, the relator alleged the defendants submitted claims for reimbursement for: (1) individuals not eligible for reimbursement; (2) for services which were not rendered; and (3) for services that were not reimbursable. 2015 WL 7251934, at *2; *see also id.* at *6 (relator "provided the names of the patients involved, the nurses who are the sources of their information, and the four month time period during which the alleged false claims occurred"). Here, by contrast, Relator does not identify any specific claim submitted to the government, let alone how such claim was false.

---

[3] For this reason, Relator's assertion that Defendants lied to patients is not only categorically false, but also not germane to the FCA inquiry. Relator does not claim that Defendants lied to the government, which is a necessary requirement for any FCA claim.

All Relator has done is allege a supposed regulatory violation about the use of "Rx" on product labeling. Even assuming *arguendo* that "Rx" is prohibited by regulation, this Circuit has explained that "it is not enough to allege, or even prove, that [a defendant] engaged in a practice that violated a federal regulation." *United States ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1107 (7th Cir. 2014). This is so even if the alleged violation "directly affects payment" of a claim as Relator alleges the "Rx" labeling affects Medicaid reimbursement. *Lisitza*, 276 F. Supp. 3d at 791; *United States ex rel. Thornton v. Pfizer Inc.*, No. 16-cv-7142, 2019 WL 1200753, at *6–7 (N.D. Ill. Mar. 14, 2019) (Blakey, J.) (dismissing suit alleging violations "FDA regulations . . . which in turn caused the Government to make 'payments for claims that otherwise would not have been allowed'").

Finally, Relator's argument that all Medicaid claims were false because they should not have been submitted at all, *see* Am. Compl. ¶¶ 73–79, ignores the fact that a request for payment by itself is not a false statement. *Lisitza*, 276 F. Supp. 3d at 801 (rejecting relator's theory that a claim was false because "the claim itself misrepresents that the [requestor] is legally entitled to payment"). In this case, no claim could be false because CMS has *expressly stated* that it will pay claims for prescription prenatal vitamins even if they are not FDA approved drugs. Off. of Inspector Gen., U.S. Dep't of Health & Hum. Servs., *One Percent of Drugs with Medicaid Reimbursement Were Not FDA-Approved* 1 n.2, 4 n.16 (May 2019), https://tinyurl.com/OIGRep.

### B. Relator Fails to Plead Any False Statement.

Relator also has not plausibly alleged that Defendants made any false statements in connection with a claim for payment. As Defendants demonstrated, none of the challenged statements—in labeling, to CMS, and to drug compendia companies—are false. Defs.' Br. 16–17.

Relator's opposition primarily focuses on Defendants' statements that their products are sold as "Rx" or "prescription." But it is indisputably true that Defendants only sell these products

8

to patients who obtain a valid prescription from a healthcare provider. Am. Compl. ¶¶ 76–79. Relator nowhere alleges that Defendants' products are sold "over the counter" or that they can be purchased without a prescription. Thus, the "Rx" and "prescription" descriptions on the product labels are true.[4]

Moreover, Realtor's entire theory of falsity fails because it is inconsistent with Congress's and CMS's statements regarding prescription prenatal vitamins. Indeed, under Relator's theory, *no* prenatal vitamins whatsoever could be described as "prescription" or "Rx" because federal law does not require that the prenatal vitamin be sold by prescription. But the Medicaid Act contains a carve-out that expressly requires that *prescription* prenatal vitamins be covered for payment reimbursement, and CMS has repeatedly reaffirmed the same. 42 U.S.C. § 1396r–8(d)(2); *see, e.g.*, 81 Fed. Reg. 5170, 5188 (Feb. 1, 2016).

To avoid the disastrous consequence of denying coverage of prenatal vitamins for women on Medicaid, Relator asserts in his opposition that any prenatal vitamin that is prescribed must be covered by Medicaid. Opp'n 3. While this does not accurately describe the regulatory regime, Defendants' products are prescribed by physicians, and therefore according to the Relator, there is nothing false or fraudulent about seeking reimbursement for them.

Relator further tries to overcome these truthful labels by citing off-label cases, arguing that FDA regulations prohibit Defendants from labeling prenatal vitamins as Rx or prescription. They do not. Moreover, an alleged regulatory violation does not equate to falsity. This Circuit has explained that, to sustain an FCA action, "it is not enough to allege, or even prove, that [a defendant] engaged in a practice that violated a federal regulation." *Grenadyor*, 772 F.3d at 1107.

---

[4] While Relator posits that it may be false to use an "Rx" label on an aspirin if the aspirin manufacturer does not in fact sell the product only to patients with valid prescriptions, Opp'n 3, Relator does not and cannot make this allegation about Defendants' prenatal vitamins.

"Violating a regulation is not synonymous with filing a false claim." *Id.*; *Lisitza*, 276 F. Supp. 3d at 802 ("[T]he FCA is not a blunderbuss to assure the enforcement of regulations . . . ."); *see United States ex rel. Schutte v. Supervalu Inc.*, No. 20-2241, 2021 WL 3560894, at *9 (7th Cir. Aug. 12, 2021) (FCA's scienter requirement depends on "whether the defendant has a permissible interpretation of the relevant provision and whether authoritative guidance nevertheless warned it away from that reading.").

Next, Relator argues that Defendants "misrepresented their products' prescription status to CMS, state healthcare programs, and to First Databank and other drug compendia companies," Opp'n 9, because the products do not require a prescription to be dispensed under federal law. This argument also fails because Relator never alleges any of the Defendants claimed there was a legal requirement to sell their products by prescription. Instead, he alleges only that Defendants label and identify their products as prescription and proceed to accurately sell them that way. Am. Compl. ¶¶ 76–79 & Ex. B. These statements are not false.

Finally, Relator alleges that some Defendants' use of the National Drug Code (NDC) is false,[5] because Defendants' products are dietary supplements, and the use of the NDC supposedly misrepresents them as drugs. Am. Compl. ¶ 36. This allegation is again nothing more than another alleged regulatory violation, and not an actionable false statement. Further, there is no regulatory violation because, as Relator admits, CMS specifically refers to prenatal vitamins' NDCs in its communications with state Medicaid agencies. CMS, Release No. 159, *Medicaid Drug Rebate Program Notice* at 2 (Dec. 28, 2011), https://tinyurl.com/7w7b48dc ("CMS Notice"); Am. Compl. ¶ 61 n.5.

---

[5] Relator does not even allege that Defendants Vertical and Avion use "NDC" in connection with their product identifying numbers. *See* Am. Compl. ¶ 47 & Ex. B.

10

### C. The Alleged False Statements Are Not Material.

Relator also fails to show that the alleged false statements meet the FCA's "demanding" materiality requirement, which requires the misrepresentation to be "material to the Government's payment decision," *Escobar*, 136 S. Ct. at 2002. Because Relator fails to "allege that the violations at issue 'are so central . . . that the [government] would not have paid these claims had it known of these violations,'" they are not material. *United States ex rel. Gray v. UnitedHealthcare Ins. Co.*, No. 15-cv-7137, 2018 WL 2933674, at *5 (N.D. Ill. June 12, 2018) (Durkin, J.) (alteration and omission in original).

Relator's opposition has no answer to the fact that the alleged false statements are not material because the paying agency—CMS—has expressly stated it intends to pay for prescription prenatal vitamins regardless of their FDA approval status. *See id.* at *5–6 (no materiality where "CMS has approved the use of in-home examinations" and "has stated that it will not exclude [them], for payment purposes" "despite the drawbacks [relator] recognize[d] in his complaint"). As Defendants explained in their motion to dismiss, CMS has said it "expect[s] that not all drugs that receive[] Medicaid reimbursement" are "FDA approved," including "prenatal vitamins." Off. of Inspector Gen., U.S. Dep't of Health & Hum. Servs., *One Percent of Drugs with Medicaid Reimbursement Were Not FDA-Approved*, App. B at 1 (May 2019), https://tinyurl.com/OIGRep. CMS has even gone so far as to mandate that "States must cover prescription prenatal vitamins . . . regardless of their FDA approval status." *Id.* at 1 n.2, 4 n.16. These statements make clear that it is immaterial whether Defendants' products may be legally dispensed without a prescription.

What is more, CMS, "the subsidizing agency," has "already examined" its own reimbursement practices "and concluded that . . . termination" of prescription prenatal vitamins from Medicaid was not "warranted." *United States v. Sanford-Brown, Ltd.*, 840 F.3d 445, 447 (7th Cir. 2016). During a review of prenatal vitamin products in 2011, the agency "delet[ed]"

11

"non-prescription (OTC) prenatal vitamins" from the Medicaid Drug Rebate Program, but did not delete prescription prenatal vitamins. CMS Notice at 2. Instead, CMS confirmed that "prescription prenatal vitamins continue to meet the definition of a covered outpatient drug and are rebate-eligible." *Id.* Each of Defendants' products remained reimbursable after CMS's review. Having specifically evaluated Defendants' labeling and Rx status, and leaving it untouched, "the government's actual conduct" shows that any "allegedly false statements were immaterial." *United States ex rel. Marshall v. Woodward, Inc.*, 812 F.3d 556, 563–64 (7th Cir. 2015).

In his opposition, Relator argues: (1) the "Rx" labeling is material because Medicaid reimbursement requires a prescription; and (2) the "Rx" labeling is material because Relator plead examples of the FDA reacting to "similar violations." Opp'n 15–16. Neither of these theories can meet the materiality requirement, for three reasons.

First, based on Relator's own allegations, the "Rx" labeling is not material to the government's payment decision. Relator asserts any prenatal vitamin must be reimbursed "if [it is] prescribed from an authorized prescriber"; thus, it is the act of prescribing, not the label, that is decisive to CMS's payment decision. Opp'n 1. Under Relator's allegations, then, the federal government does not even consider Defendants' labels when making reimbursement decisions, so Relator's allegations cannot show the government "would not have paid these claims had it known of these violations." *Gray*, 2018 WL 2933674, at *5 (Durkin, J.).

Second, Relator's allegations that the FDA has taken action in cases about mislabeling, Am. Compl. ¶¶ 43, 83–84, do not support materiality here. While the FDA does take action when companies misbrand their products, the FDA has *never* taken any action against any prenatal vitamin company on grounds Relator suggests. Relator's argument underscores that when a

12

government agency elects not to pursue a regulatory violation, that conduct is not material to any payment decision.

Finally, Relator's suggestion that "it would be premature to decide materiality," and that it should be left "for the trier of fact after discovery" (citing only the Restatement (Second) of Torts and out-of-circuit case law) is unpersuasive. Opp'n 16. In this Circuit, courts recognize materiality "is a 'familiar and rigorous' standard to be enforced as necessary on a motion to dismiss," and they routinely do so. *See, e.g.*, *United States ex rel. Kietzman v. Bethany Circle of King's Daughters of Madison, Ind., Inc.*, 305 F. Supp. 3d 964, 976 (S.D. Ind. 2018) (dismissing on the basis of materiality); *see, e.g.*, *Illinois ex rel. Strakusek v. Omnicare, Inc.*, No. 19 C 7247, 2021 WL 308887, at *14 (N.D. Ill. Jan. 29, 2021) (same); *United States ex rel. McCarthy v. Marathon Techs., Inc.*, No. 11-cv-7071, 2014 WL 4924445, at *3 (N.D. Ill. Sept. 30, 2014) (same). Relator's complaint should be dismissed for failure to adequately allege materiality.

> **D.** **Relator Fails to Plausibly Plead Scienter and Impermissibly Lumps All Defendants Together.**

Relator's argument that he has plead the FCA's scienter requirement and the heightened pleading standard under Rule 9(b) still fails. Defs.' Br. 20–23. This Circuit recently clarified that the Supreme Court's interpretation of the scienter provision in the context of the Fair Credit Reporting Act in *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47 (2007) applies to the FCA's scienter requirement. *Schutte*, 2021 WL 3560894. Courts must assess scienter through an objectively reasonable inquiry involving "two distinct questions—whether the defendant has a permissible interpretation of the relevant provision and whether authoritative guidance nevertheless warned it away from that reading." *Id.* at *9.

Here, neither inquiry can be resolved in Relator's favor because, as discussed *supra*, both the Medicaid statute and CMS's guidance in fact *support* the lawfulness of Defendants' products,

labeling, and statements. Thus, not only do Defendants have a "permissible interpretation" of the relevant provision, but authoritative guidance, far from "warn[ing] away from that reading," has confirmed it is permissible to sell prescription prenatal vitamins. *Id.*; *see also id.* at *11 (looking to CMS statements as guidance). As in *Schutte*, "[b]ecause [Defendants] had an objectively reasonable understanding . . . and no authoritative guidance placed it on notice of its error, the Relators have not shown that [Defendants] acted knowingly." *Id.* at *12. Realtor cannot show otherwise.

First, Relator points to a handful of allegations saying Defendants knew that by labeling their products as prescription, they would be reimbursed. Opp'n 19 ("Defendants know, a product labeled 'Rx Only' will trigger computerized and automated claims processing systems . . . ." (citing Am. Compl. ¶¶ 74, 96)); *id.* ("Defendants' salespeople touted Defendants' products to healthcare providers to encourage the prescribing . . . ." (citing Am. Compl. ¶¶ 76–78)). Neither of these allegations support an inference that any Defendant actually believed it was false or fraudulent to label its products as prescription, let alone that its truthful label would cause the submission of a false claim.

Nor can the allegation that Defendants "are sophisticated pharmaceutical companies with knowledge of the regulations governing prenatal vitamins," Am. Compl. ¶ 95, or Defendants' "clear profit motive in guaranteeing that its products obtain Medicaid reimbursement," Opp'n 19 (citing Am. Compl. ¶ 96), show scienter. Neither allegation can overcome Relator's failure to allege Defendants were not operating under a permissive interpretation of the regulatory regime for prenatal vitamins. And in any case, Relator cannot be correct, because if sophistication and profit motive sufficed, every pharmaceutical company in every FCA case would be imputed scienter. *Strakusek*, 2021 WL 308887, at *14; *United States ex rel. Berkowitz v. Automation Aids*,

14

No. 13 C 08185, 2017 WL 4570827, at *6 & n.19 (N.D. Ill. July 12, 2017), *aff'd*, 896 F.3d 834 (7th Cir. 2018).

As a last-ditch effort, Relator insists that "knowledge is a question of fact and is not properly resolved at the pleading stage (or even summary judgment stage) of litigation." Opp'n 20. This argument suggests that every FCA case must proceed to trial because scienter cannot be assessed before then. That is wrong. *See United States ex rel. Suarez v. AbbVie Inc.*, No. 15 C 8928, 2019 WL 4749967, at *13 (N.D. Ill. Sept. 30, 2019) (Relator failed to sufficiently allege scienter); *United States v. Walgreen Co.*, 417 F. Supp. 3d 1068, 1085 (N.D. Ill. 2019) (same).

Lastly, Relator's only response to the group pleading issue under Rule 9(b) is that there are "common fact[s]" and that Relator has identified distinct products and false statements for each individual Defendant. Opp'n 21. But Relator entirely ignores the relevant issue of *scienter*. Relator provides no factual allegations that each individual Defendant company had the same knowledge or intent. Thus, the Amended Complaint fails to "inform each defendant of the nature of [its] alleged participation in the fraud." *Walgreen*, 417 F. Supp. 3d at 1092–93.

## III. The Court Should Dismiss This Case With Prejudice.

Finally, Relator asks that if the Court does dismiss the case, that it do so without prejudice so the Relator can amend his complaint for a second time. But Relator has not identified any way to cure the many deficiencies in his complaint, which go to the viability of his entire legal theory. Because Relator has not shown that "the proposed complaint" can "cure the deficiencies of the original pleading" or "survive a motion to dismiss," the Court should deny leave to amend. *Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1057 n.4 (7th Cir. 1998).

## <u>CONCLUSION</u>

The Court should dismiss the amended complaint with prejudice.

15

August 23, 2021

Respectfully submitted,

/s/Daniel D. Rubinstein
Daniel D. Rubinstein
drubinstein@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Tel: (312) 835-7000
Fax: (312) 853-7036

Mark D. Hopson, *pro hac vice*
mhopson@sidley.com
Benjamin M. Mundel,
*pro hac vice*
bmundel@sidley.com
Jillian Sheridan Stonecipher
jstonecipher@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
Tel: (202) 736-8000
Fax: (202) 736-8000

*Counsel for Exeltis USA, Inc.*

Ryan A. Kurtz, *pro hac vice*
ryan.kurtz@millermartin.com
MILLER & MARTIN PLLC
1180 West Peachtree Street, NW
Regions Plaza Suite 2100
Atlanta, GA 30309
Tel: (404) 962-6100

Richard C. Rose, *pro hac vice*
richard.rose@millermartin.com
MILLER & MARTIN PLLC
832 Georgia Ave.
Volunteer Building Suite 1200
Chattanooga, TN 37402-2289
Tel: (423) 756-6600

*Counsel for Avion Pharmaceuticals, LLC*

16

Lisa M. Noller
lnoller@foley.com
Ryan James Lowry
rlowry@foley.com
FOLEY & LARDNER LLP
321 N. Clark St.
Chicago, IL 60654
Tel:  312-832-4500

John Andrew Tucker, *pro hac vice*
jtucker@foley.com
FOLEY & LARDNER LLP
1 Independent Drive
Suite 1300
Jacksonville, FL 32202
Tel:  (904) 359-2000

*Counsel for Mission Pharmacal Company*

Laura G. Hoey (#650643)
Laura.Hoey@ropesgray.com
Timothy R. Farrell (#6303276)
Timothy.Farrell@ropesgray.com
ROPES & GRAY LLP
191 North Wacker Drive, 32nd Floor
Chicago, IL 60606
Tel:  (312) 845-1200

Stefan P. Schropp, *pro hac vice*
Stefan.Schropp@ropesgray.com
ROPES & GRAY LLP
2099 Pennsylvania Ave., NW
Washington, DC 20003
Tel:  (202) 508-4600

*Counsel for Vertical Pharmaceuticals LLC*

S. Lloyd Smith
Lloyd.smith@bipc.com
BUCHANAN INGERSOLL & ROONEY PC
1737 King Street, Suite 500
Alexandria, VA 22314
Tel:  (703) 836-6620

*Counsel for Women's Choice*
*Pharmaceuticals, LLC*

17