UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* PATRICK LUPINETTI, *et al*. <br><br> Plaintiffs, <br><br> v. <br><br> EXELTIS USA, INC., *et al.,* <br><br> Defendants. | Case No. 19-cv-00825 <br><br><br> HON. THOMAS M. DURKIN |

**RELATOR'S SURREPLY**
**IN OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS**

This surreply addresses two issues: (1) the limited applicability of the Seventh Circuit's decision in *United States ex rel. Schutte v. Supervalu Inc.*, No. 20-2241, 2021 WL 3560894 (7th Cir. Aug. 12, 2021) ("*SuperValu*"), and (2) the Government's Statement of Interest ("SOI") on the framework for Medicaid reimbursement of prenatal vitamins.

**1. FCA Knowledge and the *SuperValu* Case**

At the core of this case is a simple lie: Defendants falsely identify their products as "Prescription Only" and improperly use "Rx" markings on their labels to make it appear as if their products legally require a prescription to be dispensed. The question of knowledge boils down to whether Defendants know these misrepresentations are false.

The Seventh Circuit's *SuperValu* case has limited applicability in this context. That case holds that an "objectively reasonable interpretation" of a "complex regulatory scheme" may preclude FCA knowledge, unless "authoritative guidance" warned defendant away from that reading. *See U.S. v. Supervalu Inc.*, at *1, 9, 11.

Here, there is no "objectively reasonable interpretation" of any statute or regulation that would permit Defendants to misrepresent their prescription status. The regulations concerning "Rx Only" state that if a drug is approved as prescription only or is safe for use only under physician supervision, the drug *must* bear the "Rx Only" marking. 21 U.S.C. § 353(b)(4)(A). Conversely, any drug that *does not* require the "Rx Only" marking—like Defendants' prenatal vitamins—shall not bear the "Rx Only" marking and is "deemed to be misbranded if at any time prior to dispensing the label of the drug bears the symbol." 21 U.S.C. § 353(b)(4)(B). Unlike the "complex regulatory scheme" in *SuperValu*, these regulations articulate a clear standard.

Nor have the Defendants offered an objectively reasonable interpretation that would permit Defendants to use the "Rx Only" marking for their prenatal vitamins. Defendants suggest that vitamin manufacturers may use the "Rx" marking on their product if "in fact they sell their products only when a patient presents a prescription from a healthcare provider." Defs. Reply (Dkt. 53), at 1, 8-9. According to Defendants, the decision to label a product "Rx Only" is up to the manufacturer: If the manufacturer says its product is prescription only, and the pharmacy treats it as prescription only, then "the 'Rx' and 'prescription' descriptions on the product labels are true." *Id*. at 9. This interpretation (i.e., it is prescription because we say it is prescription) cannot be the standard to apply the "Rx Only" marking. It has no foundation in the controlling regulations and is not objectively reasonable.

The use of the "Rx" marking is legally defined for a reason. As Defendants know, the terms "Rx" and "prescription only" have clinical and practical consequences. Pharmacy regulations strictly govern "Rx" products for safety. Third-party payers make reimbursement decisions based on "prescription" status. Yet Defendants act as if the laws governing the use of "Rx" and prescription only products do not apply to prenatal vitamin manufacturers.

Because Defendants have failed to offer an "objectively reasonable interpretation" of the controlling regulations that would permit Defendants to misrepresent their prescription status, the *Supervalu* decision is not applicable.

Defendants also disregard the existence of "authoritative guidance" warning against the improper use of the "Rx only" marking. As described in *SuperValu*, the "test does not shield bad faith defendants that turn a blind eye to guidance indicating that their practices are likely wrong." *U.S. v. Supervalu Inc.*, at *8. As alleged, the government has issued such guidance:

> Under the act, a drug to which the prescription provisions of the act do not apply (i.e., an OTC drug) shall be deemed to be misbranded if at any time prior to dispensing the label of the product bears the "Rx only" symbol. Because the PEG 3350 generic drug products are labeled as Rx only, they are misbranded and may not be legally marketed.

Am. Comp ¶ 43, *quoting* Docket No. FDA-2008-N-0549.

Defendants argue that this guidance does not apply because the FDA has not specifically targeted prenatal vitamin manufacturers. Defs. Reply at 12. Even if this argument were relevant, which it is not, it makes no difference to the *SuperValu* analysis. It is authoritative guidance that clearly warns Defendants away from their improper use of the "Rx only" marking.

Finally, the *SuperValu* case was decided on summary judgment, after the parties conducted discovery on the facts relating to the defendant's knowledge. There has been no such discovery here. Whether the Defendants had a permissible interpretation of the controlling regulations and whether authoritative guidance nevertheless warned them away are questions of fact to be addressed in discovery, not on a motion to dismiss. *See United States ex rel. Banigan v. Organon USA, Inc.*, 2013 WL 4786323, at *8 (S.D. Tex. Sept. 6, 2013) ("The majority of courts have held that it is inappropriate to decide a scienter issue, e.g. whether [the defendant] had a good faith interpretation of the statute that would negate the intent necessary for an FCA violation, at the pleading stage of the litigation.").

3

At this stage, Plaintiff has sufficiently alleged FCA knowledge under Federal Rule of Civil Procedure 9(b). *SuperValu* does not change the 9(b) analysis and has only limited applicability. Defendants have not provided an "objectively reasonable interpretation" of the controlling statute, and Defendants ignore the existence of authoritative guidance warning Defendants away from their purported interpretation.

### 2. The Government's Statement of Interest on the Framework for Medicaid Reimbursement for Prenatal Vitamins

The Government's Statement of Interest highlights four important points that read together, support Relator's case. As described above, this case is fundamentally about whether Defendants can knowingly misrepresent their products as "Rx Only" to guarantee Medicaid reimbursement. This case does not dispute the governments' ability to pay for products that are non-FDA approved. The four key points from the Government's SOI are as follows:

- <u>Prescription prenatal vitamins must be covered</u>. State Medicaid programs may exclude prescription vitamins from coverage, but not prenatal vitamins. SOI at 2, *citing* 42 U.S.C. § 1396r-8(d)(2)(E).

- <u>"Prescription" must mean something</u>. CMS Guidance distinguishes between "non-prescription" over the-counter prenatal vitamins and "prescription" prenatal vitamins. SOI at 3, *citing* CMS, Release No. 159 (Dec. 28, 2011).

- <u>FDA approval is not required</u>. CMS may cover prenatal vitamins that have not gone through the FDA approval process. *See* SOI 4, *citing* HHS Office of Inspector General, "One Percent of Drugs with Medicaid Reimbursement Were Not FDA Approved," Letter from Seema Verma, at 1.

- <u>Manufacturers must pay a Medicaid drug rebate</u>. For a prenatal vitamin to be eligible for reimbursement under the Medicaid program, the vitamin manufacturer must enter into a qualifying national rebate agreement with the Centers for Medicare & Medicaid Services ("CMS"). SOI at 2.

It stands to reason that if the government distinguishes between "prescription" and "non-prescription" prenatal vitamins, then that distinction means something. If it means something, then Defendants should not be permitted to lie about their prescription status, as they have been doing.

4

And it is not only the government that relies on the terms "prescription" and "Rx Only." Pharmacists, physicians, patients, and drug compendia companies all understand these terms to have specific importance and technical meaning in the practice of pharmacy. For pharmacists, these terms establish their legal capacity to dispense a product. There is no basis in the practice of pharmacy – or in the framework for Medicaid reimbursement for prenatal vitamins – that would permit Defendants to falsely identify their products as "Rx Only."

Finally, it is not just *whether* Defendants' products are covered, it is also *how much* the government pays for Defendants' products. Defendants demand reimbursement rates up to a hundred times greater than comparable OTC prenatal vitamins simply because they claim to be "Rx Only." This type of deception and bilking of public funds is the reason the False Claims Act exists.

**Conclusion**

For these reasons and the reasons contained in Plaintiff's opposition brief, the Court should deny Defendants' motion to dismiss.

August 31, 2021                      Respectfully submitted,

                                              BEHN & WYETZNER, CHARTERED

                                              /s/ Linda Wyetzner
                                              Linda Wyetzner
                                              lwyetzner@behnwyetzner.com
                                              Daniel Hergott
                                              dhergott@behnwyetzner.com
                                              10 N. Dearborn Street
                                              6th Floor
                                              Chicago, IL 60602
                                              Tel/Fax: (312) 629-0000

THE TERRY LAW FIRM, LTD.

/s/ Tim Terry
Tim Terry
tim@theterrylawfirm.com
170 Reiten Drive
Ashland, OR 97520
Tel: (775) 291-9071

HOWARD LAW, LLC

/s/ Bruce Howard
Bruce Howard
bhoward@howardlaw.llc
10 N. Dearborn Street
6th Floor
Chicago, IL 60602
Tel: (312) 236-0000
Fax: (312) 878-1342

*Counsel for Relator Patrick Lupinetti*

**Certificate of Service**

I, Dan Hergott, hereby certify that on August 31, 2021, a true and accurate copy of Relator's Surreply in Opposition to Defendants' Joint Motion to Dismiss was e-filed and electronically served to counsel of record via CM/ECF electronic notification. In addition, the following counsel for the government have been served by email:

NIGEL B. COONEY
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-1996
nigel.cooney@usdoj.gov

NATALIE A. WAITES
Attorneys, Civil Division
U.S. Department of Justice
175 N Street N.E., Rm. 10.222
Washington, D.C. 20002
(202) 616-2964
natalie.a.waites@usdoj.gov


Dated: August 31, 2021                  /s/ Dan Hergott

                                        *Counsel for Relator Patrick Lupinetti*