IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| United States of America, *ex rel.* Patrick Lupinetti, <br><br> Plaintiff, <br><br> v. <br><br> Exeltis USA, Inc., *et al.*, <br><br> Defendants. | No. 1:19-cv-00825 <br> Judge Thomas M. Durkin |

**Defendants' Joint Response to Plaintiff's Surreply
in Support of Their Motion to Dismiss the First Amended Complaint**

The Government's Statement of Interest ("Government Statement") (ECF No. 55) and the Seventh Circuit's decision in *United States ex rel. Schutte v. SuperValu Inc.*, No. 20-2241, 2021 WL 3560894 (7th Cir. Aug. 12, 2021) each independently confirms that Relator has no viable False Claims Act claims.

**1. The Government Statement Confirms This Case Should Be Dismissed.**

The Government Statement confirms the fundamental points emphasized in Defendants' briefing: namely, statements about Defendants' products being "prescription" prenatal vitamins are *not* false, *not* material, and *not* made with scienter. This is because, as the Government Statement explains, "CMS is the agency charged with determining whether prescription prenatal vitamins are covered under the MDRP," and CMS's decisions to "cover[] and pay[] for prescription prenatal vitamins are separate from decisions made by other agencies, including the FDA, about the approval and classification of prenatal vitamins." Government Statement at 4.

The Government Statement goes on to detail "how [CMS] has interpreted and applied Congress's requirement that Medicaid provide coverage for 'prescription prenatal vitamins,'" explaining that CMS has clearly distinguished "between non-prescription over-the-counter prenatal vitamins, which are not subject to coverage under the MDRP, and prescription prenatal vitamins, which are." Government Statement at 3. The Government Statement also reiterates how CMS has established a specific code—"Code 7"—"which signifies that a product is a prescription prenatal vitamin or fluoride." *Id.* Relator's Surreply itself acknowledges this clear guidance establishes that "'Prescription' must mean something," given the undisputed fact that prenatal vitamins are not FDA approved and need not be FDA approved to be covered by CMS. Surreply at 4 (ECF No 59). Defendants agree. CMS has clearly approved the sale of "prescription prenatal vitamins," which are expressly accepted as a Covered Outpatient Drugs ("COD") by CMS, given the appropriate CMS-approved code, and designated as such in manufacturers' rebate agreements with CMS.[1] Whereas Defendants' statements at issue in this case are entirely consistent with CMS's regulatory framework and guidance, Relator's theory would have CMS's approval of "prescription prenatal vitamins" mean nothing.[2]

The Government Statement confirms this case should be dismissed with prejudice.

---

[1] The Government Statement further explains that the factors necessary for payment are all separate from FDCA prescription status. "[F]or payment to be available for CODs, drug manufacturers must enter into a qualifying national rebate agreement with CMS" and "[w]hen requesting a rebate agreement . . . a manufacturer must identify information for the specific products that will be subject to the agreement, including the COD status." Government Statement at 2, 3. Each of the Defendants has signed national rebate agreements with CMS, thus CMS accepted that their products qualify as Covered Outpatient Drugs.

[2] Realtor also states that other entities—besides the government—rely on Defendants' statements about their products. Surreply at 5. But the FCA is limited to false statements that lead to claims for payment *from the government*. Plaintiff has alleged nothing to suggest that any statements to third parties resulted in any false claims to the government, nor could Relator make that allegation in light of CMS's clear regulatory framework outlined in the Government Statement and Defendants' briefing.

**2. Relator Has Not Plausibly Plead Scienter As Required by *Schutte*.**

The Seventh Circuit's decision in *Schutte* also confirms that Relator has not sufficiently pled scienter. Defendants' motion (pages 4-7, 10 and fns. 4 and 5) identifies the objectively reasonable basis for Defendants sales and labelling practices. As the Government's Statement affirms, there is clear, continued, and authoritative guidance from the paying agency that Defendants may sell their prescription prenatal vitamins for Medicaid reimbursement. *See* Government Statement ; *accord* Motion to Dismiss at 4-7, 10 (ECF No. 47). This case thus falls squarely within *Schutte*'s holding: not only did Defendants have an "objectively reasonable understanding," but CMS's authoritative guidance also *confirmed* Defendants' understanding of the law. *Schutte*, 2021 WL 3560894. at *12.

Relator nonetheless argues that *Schutte* "has limited applicability in this context" because the labeling regulations require the "Rx Only" marking for prescription drugs, and there was "'authoritative guidance' warning against the improper use of the 'Rx only' marking," citing an unrelated FDA docket. Surreply 1–3. But Relator never rebuts the CMS (and FDA) historical guidance and treatment of Defendants' products, nor cites a single CMS regulation that even suggests this issue is relevant to the payment decision (and the Government's Statement confirms the opposite). Thus, Relator does not allege that any Defendant had the scienter needed in an FCA case—scienter to submit a false claim for payment.[3]

## CONCLUSION

The Court should dismiss the amended complaint with prejudice.

---

[3] Finally, Relator attempts to distinguish *Schutte* because it was decided on summary judgment. Surreply 3. But *Schutte* established that "the scienter standard articulated in *Safeco* applies to the FCA," 2021 WL 3560894, at *1, and this standard applies regardless of the stage of litigation. Def. Reply 15. The fact that discovery occurred in *Schutte* does not mean discovery is needed here, where Relator's complaint itself fails to meet the legal standard for scienter established by *Schutte*.

3

September 7, 2021                    Respectfully submitted,

/s/ Daniel D. Rubinstein
Daniel D. Rubinstein
drubinstein@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Tel: (312) 835-7000
Fax: (312) 853-7036

Mark D. Hopson, *pro hac vice*
mhopson@sidley.com
Benjamin M. Mundel,
*pro hac vice*
bmundel@sidley.com
Jillian Sheridan Stonecipher
jstonecipher@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, DC 20005
Tel: (202) 736-8000
Fax: (202) 736-8000

*Counsel for Exeltis USA, Inc.*

Ryan A. Kurtz, *pro hac vice*
ryan.kurtz@millermartin.com
MILLER & MARTIN PLLC
1180 West Peachtree Street, NW
Regions Plaza Suite 2100
Atlanta, GA 30309
Tel: (404) 962-6100

Richard C. Rose, *pro hac vice*
richard.rose@millermartin.com
MILLER & MARTIN PLLC
832 Georgia Ave.
Volunteer Building Suite 1200
Chattanooga, TN 37402-2289
Tel: (423) 756-6600

*Counsel for Avion Pharmaceuticals, LLC*

Lisa M. Noller
lnoller@foley.com

106694685_1

Ryan James Lowry
rlowry@foley.com
FOLEY & LARDNER LLP
321 N. Clark St.
Chicago, IL 60654
Tel: 312-832-4500

John Andrew Tucker, *pro hac vice*
jtucker@foley.com
FOLEY & LARDNER LLP
1 Independent Drive
Suite 1300
Jacksonville, FL 32202
Tel: (904) 359-2000

*Counsel for Mission Pharmacal Company*

Laura G. Hoey (#650643)
Laura.Hoey@ropesgray.com
Timothy R. Farrell (#6303276)
Timothy.Farrell@ropesgray.com
ROPES & GRAY LLP
191 North Wacker Drive, 32nd Floor
Chicago, IL 60606
Tel: (312) 845-1200

Stefan P. Schropp, *pro hac vice*
Stefan.Schropp@ropesgray.com
ROPES & GRAY LLP
2099 Pennsylvania Ave., NW
Washington, DC 20003
Tel: (202) 508-4600

*Counsel for Vertical Pharmaceuticals LLC*

S. Lloyd Smith
Lloyd.smith@bipc.com
BUCHANAN INGERSOLL & ROONEY PC
1737 King Street, Suite 500
Alexandria, VA 22314
Tel: (703) 836-6620

*Counsel for Women's Choice Pharmaceuticals, LLC*

5

106694685_1